1   Paul S. Grewal (CSB# 196539)
    DAY CASEBEER MADRID & BATCHELDER LLP
2   20300 Stevens Creek Blvd., Suite 400
    Cupertino, CA 95014
3   Tel.: (408) 873-0110
    Fax: (408) 873-0220
4   Email: pgrewal@daycasebeer.com

5
    Attorneys for Plaintiff
6   SYMANTEC CORPORATION

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  **SYMANTEC CORPORATION**                    Case No. C07 04731 JW

13                Plaintiff,            **SYMANTEC CORPORATION'S OPPOSITION TO
                                        DEFENDANT'S MOTION TO DISMISS OR, IN
14  v.                                  THE ALTERNATIVE, TO TRANSFER THE
                                        ACTION**
15  **STORAGECRAFT TECHNOLOGY
    CORPORATION,**                      **Date:**      December 4, 2007
16                                      **Time:**      10:00 a.m.
                  Defendant.           **Courtroom:** 2
17                                      **Judge:**     Honorable James Ware

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

1   I.      INTRODUCTION ..................................................................................................1

2   II.     BACKGROUND ...................................................................................................2

3   III.    ARGUMENT..........................................................................................................4

4           A.    Venue for this action is proper in the Northern District of California
5                 under 28 U.S.C. § 1391........................................................................................4

6                 1.    Venue is proper in the Northern District because a substantial
                        part of the events or omissions giving rise to Symantec's claims
7                       for trade secret misappropriation and unfair competition occurred
                        in this judicial district. ...........................................................................5

8
                  2.    Because Symantec is not bound by the "forum selection clause"
9                       in the employee agreements relied upon by StorageCraft, the
                        clause is irrelevant to the proper venue for litigation between
10                      Symantec and StorageCraft. ...................................................................7

11          B.    Transfer of this action to Utah is unwarranted, because the relevant
                  factors governing transfer favor moving forward in the Northern District
12                of California...........................................................................................................10

13                1.    Most of the relevant convenience factors favor denial of transfer. ........11

14
                  2.    The factors relied upon by StorageCraft as favoring transfer
15                      either in fact do not favor transfer, or should be accorded little
                        weight.........................................................................................................12

16   IV.    CONCLUSION.......................................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO            i            CASE NO. C07 04731 JW
DISMISS OR TO TRANSFER THE ACTION

# TABLE OF AUTHORITIES

Page

1 | **Cases**

2 | *Alltrade, Inc. v. Uniweld Prods., Inc.,*
   946 F.2d 622 (9th Cir. 1991) .................................................................................... 12
3 |

4 | *Arriaga v. Cross Country Bank,*
   163 F. Supp. 2d 1189 (S.D. Cal. 2001) ..................................................................... 9

5 | *Carolina Cas. Co. v. Data Broad. Corp.,*
   158 F. Supp. 2d 1044 (N.D. Cal 2001) ................................................................. 5, 14
6 |

7 | *Dayhoff Inc. v. H.J. Heinz,*
   86. F.3d 1287 (3rd Cir. 1996) .................................................................................. 10
8 |

9 | *Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986) ............................................................................. 11, 14

10 | *E. & J. Gallo Winery v. F. & P. S.p.A.,*
    899 F. Supp. 465 (E.D. Cal. 1994) ......................................................................... 14
11 |

12 | *First Options of Chicago, Inc. v. Kaplan,*
    115 S. Ct. 1920 (1995)............................................................................................ 10

13 | *Graham Technology Solutions, Inc., v. Thinking Pictures, Inc.,*
    949 F. Supp. 1427 (N.D. Cal. 1997) ....................................................................... 10
14 |

15 | *Gray v. Conseco, Inc.,*
    No. SA CV 00-322DOC(EEX), 2000 WL 1480273(C.D. Cal. Sep. 29, 2000)............. 9
16 |

17 | *Healthtrac Corp. v. Caterpillar, Inc.,*
    No. CIV S-05-0853, 2005 U.S. Dist. LEXIS 25272 (N.D. Cal. Oct. 26, 2005)........... 11

18 | *Hospah Coal Co. v. Chaco Energy Co.,*
    673 F.2d 1161 (10th Cir. 1982) ............................................................................... 12
19 |

20 | *In Re Marlin Oil,*
    83 B.R. 50 (D. Colo. 1988)..................................................................................... 12
21 |

22 | *Indymac Mortgage Holdings, Inc. v. Reyad,*
    167 F. Supp. 2d 222 (D. Conn. 2001)....................................................................... 9

23 | *Integral Development Corp. v. Weissenbach,*
    99 Cal. App. 4th 576 (2002) ................................................................................... 12
24 |

25 | *Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) ............................................................................ 10, 11

26 | *Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) .................................................................................. 11
27 |

28 |

TABLE OF AUTHORITIES (CONT.)

Page

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) ............................................................................ 7, 8, 10

*Medoil Corp. v. Citicorp*,
   729 F. Supp. 1456 (S.D.N.Y. 1990) ........................................................................... 9

*Ming Hsu v. VTEX Energy, Inc.*,
   C 06-07688, 2007 U.S. Dist. LEXIS 33806 (N.D. Cal. Apr. 26, 2007) ................... 11, 14

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2003) .................................................................................... 5

*S.E.C. v. Beacon Hill*,
   No. 02 Civ. 8855, 2005 WL 2874793 (S.D.N.Y. Nov. 2, 2005) ............................... 12

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005)..................................................................... 14

*Silverman v. Carvel Corp.*,
   192 F. Supp. 2d 1 (W.D.N.Y. 2001)........................................................................... 9

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)..................................................................................................... 10

**Statutes**

28 U.S.C. § 1391 ................................................................................................................ 5

I.      **INTRODUCTION**

This is an action brought by a Cupertino, California-based company for unfair competition and misappropriation of trade secrets developed and utilized in Cupertino—approximately ten miles from this Court.  Symantec Corporation ("Symantec") brought this action against StorageCraft Technology Corporation ("StorageCraft"), a direct competitor that was originally formed as StorageCraft Incorporated, a California corporation headquartered in Palomar Mountain, California. StorageCraft continues to conduct its business throughout California, including participating in trade shows in Los Angeles and Irvine, and maintaining business partnerships within the Northern District of California.  Indeed, StorageCraft's web site repeatedly promotes its numerous strategic business partnerships with companies based in the Northern District of California, including HP (Palo Alto, California), VMware (Palo, Alto, California), and Seagate (Scotts Valley, California).

Notwithstanding the close nexus between this judicial district and not just one but both parties, as well as the stolen trade secrets at the heart of this case, StorageCraft seeks to turn on its head this Court's traditional deference to a plaintiff's decision to sue in its home forum by transferring this action to the defendant's current home forum—the District of Utah.  Tellingly, StorageCraft's motion is dependent upon a series of factual misrepresentations, mischaracterizations and unsupported speculation, such as:

- *"The Complaint concerns alleged trade secrets of Symantec's predecessor-in-interest, PowerQuest, a Utah company."*[1]  In fact, as recited in the complaint, the key trade secret misappropriated by StorageCraft—the Employee Data List used to manage the integration of PowerQuest employees into Symantec—is the trade secret of Symantec, a California-based corporation, and has never been the property of PowerQuest.

- *"The Complaint does not identify any trade secret that was developed in California."*[2]  Not so.  The trade secret Employee Data List that has been misappropriated by StorageCraft was in fact developed with the support of Symantec employees who work in Cupertino, and Symantec first discovered StorageCraft's theft during a deposition in Cupertino attended by StorageCraft and its counsel.

- *"The only tie that this action has to the State of California is the location of Symantec."*[3]  In fact, not only does the confidential information at the heart of Symantec's trade secret

---

[1] StorageCraft's Memorandum of Points & Authorities in Support of Motion to Dismiss or Transfer this Action ("StorageCraft Memo.") at 1.

[2] *Id.* at 1.

[3] *Id.* at 5.

1    misappropriation and unfair competition claims derive directly from the work of a California-
2    based company conducted in the Northern District of California, StorageCraft itself conducts
     significant business in this very judicial district.

3    •   ***"Notably, the Employment Agreements include a forum selection clause which provides***
         ***that for 'any litigation related to this Agreement' Utah shall be the exclusive venue."***[4]
4        Even if Symantec's claims were sufficiently related to the employment agreements at issue—
         which they are not—the actual language of those agreements makes clear that the forum
5        selection clauses bind only the signatory employee—but not PowerQuest or Symantec—to
         venue in Utah.
6
         When these faulty premises are laid bare, what is left is the truth:  venue in the Northern
7
     District of California is proper, and there is no basis to transfer this action to Utah under the
8
     appropriate analysis of the relevant factors.  Because the bare preference of a defendant for a
9
     different forum is insufficient to support transfer or dismissal of an action, StorageCraft's motion
10
     should be denied.
11
## II.    BACKGROUND
12
         The present dispute between Symantec and StorageCraft concerning StorageCraft's theft of
13
     Symantec's trade secrets is inextricably linked to the Northern District of California.
14
         Symantec maintains its worldwide headquarters in Cupertino, California and employs more
15
     than 2,500 people within the Northern District of California.[5]  Symantec develops and distributes
16
     pioneering computer security, storage and infrastructure technologies, including Norton Antivirus,
17
     Norton Internet Security, and Norton 360 that protect against the scourge of malicious software,
18
     spam email, online attacks and system crashes.[6]  Symantec develops and distributes its technologies
19
     from various locations in the Northern District of California, including not only Cupertino, but also
20
     Mountain View and San Francisco.[7]
21
         StorageCraft is presently organized under the laws of the State of Utah and maintains its
22

23

24   _____

25   [4] *Id.* at 1-2.

     [5] 11/12/07 Declaration of Kerre Slayton in Support of Symantec Corporation's Opposition to Motion
26   to Dismiss or, in the Alternative, to Transfer ("Slayton Decl.") ¶5.

     [6] 11/13/07 Declaration of Paul Grewal in Support of Symantec Corporation's Opposition to Motion
27   to Dismiss or, in the Alternative, to Transfer ("Grewal Decl.") Ex. A ¶2.

28   [7] Slayton Decl. ¶3.

1   worldwide headquarters in Draper, Utah.[8]  StorageCraft was originally formed, however, as

2   StorageCraft Incorporated under the laws of the State of California with its worldwide headquarters

3   in Palomar Mountain, California.[9]  Since then, StorageCraft has maintained and continues to conduct

4   significant business operations not only in California but in this very judicial district.  On its current

5   website, StorageCraft prominently promotes its "strategic partnerships" with several corporations

6   that utilize its "core technology at the heart of their products," including HP, VMware and Seagate,

7   each of which is headquartered in the Northern District of California.[10]

8        On July 23, 2007, Symantec was served with a subpoena issued by the Superior Court of

9   California, County of Santa Clara as part of a dispute pending in Utah between StorageCraft and

10  another party, NetJapan Holdings, Inc. ("NetJapan").  The subpoena required that Symantec tender

11  documents and deposition testimony at 10050 S. De Anza Boulevard in Cupertino.[11]  On August 23,

12  2007, Symantec appeared for the deposition at the Cupertino offices of its counsel at 20300 Stevens

13  Creek Boulevard.[12]

14       During the deposition, Symantec was presented with documents showing that StorageCraft

15  had illegally acquired and used a confidential series of Microsoft Excel worksheets prepared by

16  Symantec to memorialize key strategic decisions surrounding Symantec's late 2003 acquisition of

17  PowerQuest Corporation for $150 million.[13]  The worksheets—collectively referred to as the

18  "Employee Data List"—set forth key data and planning information used by Symantec to determine:

19  which of the over 270 PowerQuest employees would stay with Symantec and which would go; the

20  proposed salary package for each employee, including base pay, bonus and stock options; and the

21  proposed new job title and position in the new organizational structure for each employee.[14]

22

23  _____

[8] Grewal Decl., Ex. B.

24  [9] *Id.*, Ex. C.

25  [10] *Id.*, Ex. D.

26  [11] *Id.*, Ex. E.

[12] *Id.*, ¶5.

27  [13] *Id.*, ¶6-7.

28  [14] Slayton Decl. ¶8.

1    The Employee Data List was created by Symantec employees, organized by Symantec
2    employees, and updated by Symantec employees.[15]  At all times the Employee Data List remained
3    the property of Symantec Corporation.  The Symantec employees who developed and relied upon
4    the Employee Data List included key Symantec personnel from Symantec's finance, human
5    resources, business development, and IT departments.  These departments are all based in
6    Symantec's Cupertino headquarters.[16]

7    The Cupertino deposition also revealed that StorageCraft stole these trade secrets in
8    coordination with several former PowerQuest employees who declined offers to stay with Symantec
9    after the acquisition, and who now comprise StorageCraft's senior management.  In particular,
10   StorageCraft Vice President Brandon Nordquist, a former PowerQuest employee, electronically
11   transmitted the Employee Data List to Michael Kunz, another former PowerQuest employee and
12   current StorageCraft executive.  The file name of the document was altered from "Master_emp_list"
13   to "Kid's Pics" in a transparent attempt to cover up the theft, and Mr. Nordquist's one-line cover
14   email further instructed Mr. Kunz in no uncertain terms:  "Keep this under control."[17]  Various
15   StorageCraft executives, including StorageCraft CEO Thomas J. Shreeve, attended the Cupertino
16   deposition by telephone.[18]

17   Confronted with irrefutable proof that its trade secrets had been stolen by a direct competitor
18   in close coordination with several former employees of its acquisition, Symantec filed this suit to
19   address StorageCraft's trade secret misappropriation and acts of unfair competition.

20   **III.    ARGUMENT**

21
22          **A.    Venue for this action is proper in the Northern District of California under 28
                    U.S.C. § 1391**

23   Although styled as a motion to "Dismiss Or, In the Alternative, to Transfer" this action,

24
25   _____

26   [15] *Id.* ¶5.

27   [16] *Id.* ¶6.

     [17] Grewal Decl., Ex. A ¶30.

28   [18] Grewal Decl. ¶5.

1  StorageCraft barely argues that venue in the Northern District of California is improper, apart from

2  pointing the Court to a contractual forum selection clause that does not bind Symantec.

3  StorageCraft's light treatment of this issue is understandable, because, on the facts, the Northern

4  District of California is undeniably a proper venue for this dispute.

5       1.     **Venue is proper in the Northern District because a substantial part of the**
               **events or omissions giving rise to Symantec's claims for trade secret**
6              **misappropriation and unfair competition occurred in this judicial**
               **district.**
7

8       Under 28 U.S.C. § 1391, venue is proper in "a judicial district in which a substantial part of

9  the events or omissions giving rise to the claim occurred, or a substantial part of the property that is

10  the subject of the action is situated."[19]  As the moving party, StorageCraft bears the burden of

11  proving that a substantial part of the events did not occur in this district.[20]  Because a venue motion

12  has a dramatic effect on a plaintiff's forum choices, the Court must "draw all reasonable inferences

13  in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving

14  party."[21]

15       Even apart from the reasonable inferences that must be drawn in favor of Symantec,

16  StorageCraft has completely failed to meet its burden.  Instead, StorageCraft has offered only a

17  string of unsupported assertions to suggest that the trade secret information it misappropriated relates

18  solely to the State of Utah, such as: "[t]he Complaint concerns alleged trade secrets of Symantec's

19  predecessor-in-interest, PowerQuest, a Utah company";[22]  "[t]he Complaint does not identify any

20  trade secret that was developed in California or any alleged wrongful act which occurred in

21  California";[23] and "[t]he only tie that this action has to the State of California is the location of

22  Symantec."[24]

23  ───────────────

24  [19] 28 U.S.C. § 1391(a)(2).

25  [20] *See Carolina Cas. Co. v. Data Broad. Corp.,* 158 F. Supp. 2d 1044, 1047 (N.D. Cal 2001).

26  [21] *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1138-39 (9th Cir. 2003) (citing 5A Charles Allen
    Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (Supp. 2003)).

27  [22] StorageCraft Memo. at 1.

    [23] *Id.*

28  [24] *Id.* at 5.

1      In fact, as Symantec's complaint and the declaration of Kerre Slayton accompanying this

2  opposition make clear, none of these assertions are true.  First, the Employee Data List, the key

3  misappropriated trade secret identified in Symantec's complaint, has always been the property of

4  California-based Symantec, not of PowerQuest.[25]  While the Employee Data List quite clearly

5  contains data associated with PowerQuest personnel, Symantec—not PowerQuest—personnel

6  created and maintained this document to aid in Symantec's integration of the acquired PowerQuest

7  organization.[26]  Symantec—not PowerQuest— personnel were and are the custodians of this

8  document.[27]  As a consequence, the document contains **Symantec's** trade secret information,

9  including the proposed new title, salary, bonuses, and salary information for the new Symantec

10  personnel.[28]  As such, it is simply false that Symantec's "Complaint concerns alleged trade secrets of

11  Symantec's predecessor-in-interest, PowerQuest, a Utah company"—the complaint principally

12  concerns trade secrets owned by, and misappropriated from, Symantec, a California-based company

13  resident in this judicial district.

14      It is equally false that Symantec's "Complaint does not identify any trade secret that was

15  developed in California."  As the Declaration of Kerre Slayton makes clear, those responsible for

16  developing the Employee Data List identified in Symantec's complaint include Symantec personnel

17  from Symantec's finance, human resources, business development, and IT departments.  These

18  departments are all based in Symantec's Cupertino headquarters.[29]

19      Finally, StorageCraft's misappropriation of Symantec's trade secrets came to light in this

20  judicial district, during the course of a deposition of a Symantec employee in connection with

21  ongoing litigation between StorageCraft and NetJapan Holdings, Inc.  During that deposition, which

22

23

[25] *See, e.g.,* Symantec's Complaint for Unfair Competition and Misappropriation of Trade Secrets,
¶ 3 ("Specifically, Symantec has discovered that StorageCraft has unlawfully misappropriated
confidential **Symantec** strategic planning documents concerning the integration of the PowerQuest
Corporation and its system imaging software product line into Symantec.") (emphasis added).

[26] Slayton Decl. ¶5.

[27] *Id.* ¶8.

[28] *Id.* ¶5-8.

[29] *Id.* ¶6.

1  StorageCraft and its principals participated directly in, the Employee Data List was used as an

2  exhibit, revealing StorageCraft's production of that document in the course of discovery without any

3  notice to Symantec whatsoever.[30]  In light of these facts, it is certainly not the case, as StorageCraft

4  asserts, that the "only tie that this action has to the State of California is the location of Symantec."

5      In sum, the key trade secret document that will be at the heart of this case is owned by a

6  California-based company that resides in this district, and that document was developed and has

7  been maintained by that California-based company's employees.  Moreover, the theft of that trade

8  secret was discovered in this district.  These facts more than demonstrate that "a substantial part of

9  the events or omissions giving rise to the claim occurred" in this district, as required by 28 U.S.C. §

10  1391.

11              2.      **Because Symantec is not bound by the "forum selection clause" in the
                        employee agreements relied upon by StorageCraft, the clause is irrelevant
12                      to the proper venue for this litigation.**

13      StorageCraft's motion places great weight on the existence of a forum selection clause in the

14  employment agreements of certain former PowerQuest employees who are now employed by

15  StorageCraft.  Such reliance, however, is utterly misplaced for a simple reason.  While the explicit

16  language of those agreements restricts the former employees to litigating related disputes in Utah,

17  the agreements impose no such restriction on Symantec as PowerQuest's successor-in-interest.

18      StorageCraft does not dispute that it is not a party to the employment agreements that call for

19  litigation "related" to those agreements to be conducted in Utah.  StorageCraft also does not dispute

20  that the former PowerQuest (and now StorageCraft) employees who did sign the employment

21  agreements are not named defendants in this action.  Nor does StorageCraft dispute that it is not an

22  assignee of any rights under the PowerQuest employment agreements.

23      Undeterred by these facts, StorageCraft relies on the Ninth Circuit's decision in *Manetti-*

24  *Farrow, Inc. v. Gucci America, Inc.*[31] to suggest that it is nevertheless entitled to take advantage of

25  the forum selection clause in agreements it has not signed and to which it is not a successor-in-

26  _____

27  [30] Grewal Decl. ¶6-7.

28  [31] 858 F.2d 509 (9th Cir. 1988).

1  interest. In *Manetti-Farrow,* multiple named defendants sought to take advantage of a forum

2  selection clause in an agreement signed by only one of them. Significantly, the clause

3  unambiguously bound all parties to the contract: "For any controversy regarding interpretation or

4  fulfillment of the present contract, the Court of Florence has sole jurisdiction."[32] In that context, the

5  district court stated, and the Ninth Circuit agreed, that the "alleged conduct of the non-parties is so

6  closely related to the contractual relationship that the forum selection clause applies to all

7  defendants."[33]

8         In this case, however, the parties to the agreement—PowerQuest and each of the

9  employees—unambiguously bound only the employees to a particular venue. In particular,

10  paragraph 29 of the employment agreement cited in StorageCraft's motion provides that

11            "***YOU consent*** to the personal jurisdiction of the state and federal
             courts located in the state of Utah for any litigation related to this
12           agreement ***and agree*** that the exclusive venue for any such litigation
             shall be in such courts located in the state of Utah."[34]
13

14  This language does not, as StorageCraft suggests, provide any similar consent and agreement to

15  exclusive venue by PowerQuest and Symantec—it binds only the employees. The employment

16  agreements carefully delineate between the rights and obligations assigned to the employee—

17  defined in the agreement as "***You,*** the undersigned employee" and consistently implemented by

18  recitation of "***You*** agree," "***You*** consent," and similar language—in contrast to those assigned to

19  "PowerQuest." Where the agreement binds both parties, as in the choice of law provision, the

20  agreement makes this clear: "This agreement shall be governed . . . by the laws of the state of

21  Utah."[35] Consistent with this practice, the employment agreement explicitly binds the employee to

22  exclusive venue in Utah ("***You*** consent . . . and agree"), but preserves for PowerQuest the option to

23

24

25  _____

26  [32] *Id.* at 511.

27  [33] *Id.* at 514 n.5 (emphasis added).

   [34] Declaration of Thomas Russell Shreeve, Ex. A, p. 5 (emphasis added).

28  [35] *Id.*

1    bring suit in the forum of its choosing.  StorageCraft's proposed interpretation of this plain language

2    would render these carefully constructed differences meaningless.

3            The agreements' careful reservation to PowerQuest and Symantec—but not the employees—

4    of the right to select a forum of its choosing must be respected.  Contract provisions binding one

5    party alone to a particular forum for dispute resolution are routinely upheld.  For example, in

6    *Silverman v. Carvel Corp.*,[36] the court held that "[i]t is clear, then, that 'the nonmutality of the

7    forum-selection clause does not render it invalid.'"  Similarly, in *Arriaga v. Cross Country Bank*, the

8    court observed that "numerous courts have upheld even non-mutual arbitration clauses against

9    unconscionability defenses.  Thus, even when one party alone has the option of compelling

10   arbitration, courts have not found the arbitration clause to be unconscionable."[37]  Although

11   StorageCraft may wish that the PowerQuest employees had agreed to different, mutually binding

12   language, it should not now be permitted to rewrite terms of a contract it did not sign in order to suit

13   its preference for venue.

14           Perhaps the most telling demonstration that *Manetti-Farrow* is inapplicable here are the

15   unintended and frankly illogical results that its application would engender.  First, depriving

16   Symantec of its chosen forum for litigating trade secret misappropriation and unfair competition

17   claims against a competitor such as StorageCraft would entitle that competitor to the benefit of

18   agreements designed precisely to obtain the opposite result.  Second, because the former employees

19   may not themselves bind Symantec to venue in Utah, depriving Symantec of its chosen forum on the

20   basis of a forum selection clause that StorageCraft did not even sign would place StorageCraft in a

21

22   _____

23   [36] 192 F. Supp. 2d 1, 5 (W.D.N.Y. 2001) (quoting *Medoil Corp. v. Citicorp*, 729 F. Supp. 1456, 1459
24   (S.D.N.Y. 1990)).

     [37] 163 F. Supp. 2d 1189, 1195 (S.D. Cal. 2001) (citations omitted) (overruled with respect to
25   nonmutual class action arbitration); *cf. Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d
     222, 245 & n.27 (D. Conn. 2001) (noting that a forum selection clause providing that "the Seller
26   hereby agrees" to resolve disputes only in Los Angeles court "suggests that only the [Seller]
     defendants may be bound the agreement[,]" not the Buyer); *cf. Gray v. Conseco, Inc.*, No. SA CV
27   00-322DOC(EEX), 2000 WL 1480273, at *4 (C.D. Cal. Sep. 29, 2000) (noting that several courts
     have held that the lack of mutuality arising from the fact that Defendants may go to court while
28   Plaintiffs must arbitrate does not render the clause unconscionable").

1    position **superior** to the employees who actually signed the agreement.  As one court observed in

2    declining to apply *Manetti-Farrow* to require arbitration of a dispute between a signatory to an

3    arbitration agreement and a nonsignatory, entitling StorageCraft to the benefit of the forum selection

4    clause it did not contract for would create the incongruous result that the non-signatory is given "the

5    option to accept or reject the arbitration and forum selection clauses," while the signatory is

6    compelled to accede to the non-signatories' wishes.[38]  As the court stated, "[t]he very fact that [a

7    non-signatory] would have such a choice belies the existence of an agreement . . . an agreement that

8    purportedly lies at the basis of [the non-signatory's] argument."[39]

9         **B.     Transfer of this action to Utah is unwarranted, because the relevant factors
              governing transfer favor moving forward in the Northern District of California**

10

11        The Ninth Circuit has characterized motions to transfer under Section 1404(a) as calling for

12   an "individualized, case-by-case consideration of convenience and fairness."[40]  In undertaking this

13   analysis, courts may consider a wide variety of "convenience factors," such as: the plaintiff's choice

14   of forum; the state that is most familiar with the governing law; the respective parties' contacts with

15   the forum; the contacts relating to the plaintiff's cause of action in the chosen forum; any relevant

16

17   ───────────────

18   [38] *Dayhoff Inc. v. H.J. Heinz Co.*, 86. F.3d 1287, 1296 (3rd Cir. 1996).  Moreover, the *Dayhoff* court
     suggested that the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 115 S. Ct.
19   1920 (1995), which declined to force a non-signatory to an arbitration agreement into arbitration
     with a signatory to such an agreement, is "controlling precedent" which effectively overrules
20   *Manetti-Farrow. Id.*

21   [39] *Id.*  In any event, even under the *Manetti-Farrow* analysis, there is no basis for transfer or
     dismissal of this action, because Symantec's claims are not "closely related" to the contractual
22   relationship containing the forum selection clause, as required.  The employment agreements
     between PowerQuest and its employees have only a minimal relationship to the acts of unfair
23   competition and trade secret misappropriation of which StorageCraft is accused.  Symantec's claims
     do not arise out of these agreements, nor do they arise out of any business relationship that is defined
24   by these agreements.  They are thus far afield from the close relationship between the claims and the
     contract in *Manetti-Farrow,* where the court found that each of the claims "cannot be adjudicated
25   without analyzing whether the parties were in compliance with the contract."  *Manetti-Farrow*, 858
     F.2d at 514.  *See also Graham Technology Solutions, Inc., v. Thinking Pictures, Inc.*, 949 F. Supp.
26   1427, 1433 (N.D. Cal. 1997) (binding non-signatory plaintiff in copyright case to forum selection
     clause because resolution of the copyright claims  required the interpretation of the personal services
27   agreement.).

     [40] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000), *cert. denied*, 531 U.S. 928,
28   121 (2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

1  public policy of the forum state; and so on.[41]

2       While the analysis is a flexible one, two critical components of that analysis are fixed and

3  unalterable.  First, as the moving party, StorageCraft "bears the burden of showing that the balance

4  of the convenience and justice factors *strongly* weighs in its favor."[42]  Second, the law imposes "a

5  strong presumption in favor of plaintiff's choice of forum," in particular when, as is the case here,

6  "the chosen forum is plaintiff's place of residence."[43]  As a resident of this judicial district,

7  Symantec's decision to litigate these claims here is entitled to that strong presumption that transfer is

8  inappropriate.  Particularly in light of the heavy burden StorageCraft's motion must carry under

9  these facts, StorageCraft has failed to show that transfer is appropriate—and indeed, most of the

10  relevant "convenience factors" favor denial of transfer.

11            1.       **Most of the relevant convenience factors favor denial of transfer.**

12       Symantec's choice of forum is not the only factor favoring denial of transfer.  Its

13  protestations to the contrary, StorageCraft has substantial contacts with this forum.  StorageCraft is a

14  licensor of Symantec, which resides in this district.[44]  Moreover, StorageCraft works with multiple

15  "strategic partners" which utilize its "core technology at the heart of their products" which reside in

16  this judicial district, including Hewlett-Packard, VMWare, and Seagate.[45]  Moreover, the events at

17  issue in this litigation have substantial contact with the Northern District of California.  As discussed

18  *supra,* the trade secret Employee Data List is the property of Symantec, a resident in this district.

19  That trade secret was substantially developed within this district.  StorageCraft's misappropriation of

20  that trade secret came to light in a deposition that took place in this district—a deposition in which

21

22

23  [41] *Id.*

24  [42] *Healthtrac Corp. v. Caterpillar, Inc.,* No. CIV S-05-0853, 2005 U.S. Dist. LEXIS 25272, *7 (N.D. Cal. Oct. 26, 2005) (Grewal Decl., Ex. F), (emphasis added) (citing *Decker Coal Co. v.*
25  *Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986)).

  [43] *Id.* at *9 (citing *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987), cert. denied, 485 U.S. 993,
26  108 S. Ct. 1302, 99 L. Ed. 2d 512 (1988)); *see also Ming Hsu v. VTEX Energy, Inc.,* No. C 06-07688, 2007 U.S. Dist. LEXIS 33806 *6 (N.D. Cal. Apr. 26, 2007) (Grewal Decl., Ex. G).

27  [44] StorageCraft Memo. at 3.

28  [45] Grewal Decl., Ex. D.

837298_5.doc   OPPOSITION TO DEFENDANT'S MOTION TO        11        CASE NO. C07 04731 JW
         DISMISS OR TO TRANSFER THE ACTION

1  StorageCraft's principals participated.[46] The extensive contacts between this district and both

2  StorageCraft and the events in dispute in this case favors denial of transfer.[47]

3        This Court's familiarity with the applicable California law regarding trade secret

4  misappropriation and California's Unfair Competition Law also favors denial of transfer, as does

5  California's strong public policy interest in addressing acts of unfair competition and trade secret

6  misappropriation, particularly when directed against the residents of the state.[48] These factors alone

7  call for denial of StorageCraft's transfer motion, particularly in light of the strong showing of

8  inconvenience StorageCraft is required to make.

9              **2.    The factors relied upon by StorageCraft as favoring transfer either in
                   fact do not favor transfer, or should be accorded little weight.**

10

---

11  [46] *Id.* ¶5-7.

12  [47] StorageCraft appears to suggest that its later filing of a separate lawsuit against Symantec in
    federal court in Utah strengthens its position that this suit should also proceed in that venue. Memo
13  at 3. Not so. StorageCraft concedes that the threshold factors for the first-to-file rule have been met,
    StorageCraft Memo. at 6, and in the Ninth Circuit, the first-to-file rule "should not be disregarded
14  lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Instead,
    StorageCraft urges this Court to exercise its discretion not to apply the rule. But "[t]he
15  circumstances under which an exception to the first-to-file rule typically will be made include bad
    faith, anticipatory filing and forum shopping," *id.*, and StorageCraft has made no showing
16  whatsoever that any of these exceptions apply in this case.

17  Moreover, to the extent that StorageCraft relies upon a forum selection clause to establish venue in
    Utah for this later-filed suit, the Tenth Circuit (in which the District of Utah sits) has held that that
18  "[t]he existence of a venue selection clause does not impose an absolute duty nor does it endow a
    party with an absolute right to have every dispute between the parties litigated in the named forum."
19  *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).

20  Finally, StorageCraft's Utah suit appears to be in contempt of a court order in the Utah state
    litigation between StorageCraft and NetJapan that required StorageCraft to provide advance notice
21  of any activities outside the ordinary course of business, such as the initiation of litigation. Grewal
    Decl., Ex. H. *See, e.g., S.E.C. v. Beacon Hill*, No. 02 Civ. 8855, 2005 WL 2874793 *1 (S.D.N.Y.
22  Nov. 2, 2005) ("Paying for the cost of affirmative litigation plainly falls into" the category of actions
    falling "outside of the ordinary course of business" which require prior court approval); *In Re Marlin
23  Oil*, 83 B.R. 50, 51 (D. Colo. 1988) (holding that experts in case initiated by debtor in receivership
    could not be paid without the court's prior approval because "[c]learly [the experts arguing for
24  payment] cannot say it was in the ordinary course of business for the Debtor to hire them because the
    Debtor was not in the business of litigation. It was in the oil and gas business.").

25  From a review of the public record in that case, it does not appear that any such notice was ever
    provided.

26  [48] *See Integral Development Corp. v. Weissenbach*, 99 Cal. App. 4th 576, 591-592 (2002)
    ("California has a manifest interest in providing a local forum for its residents to redress injuries
27  inflicted by out-of-state defendants. The enactment of the Uniform Trade Secrets Act in California
    indicates a strong legislative intent to protect California residents against the misappropriation of
28  their trade secrets.") (citations omitted).

1    StorageCraft argues that its tally of the "convenience factors" supports transfer of this action

2    to Utah. StorageCraft is wrong. Some of the factors it relies most heavily upon, such as the

3    purported forum selection clause, provide no support at all. Others in fact support denial of transfer.

4    Still others should be given little weight, in light of the facts.

5    First, as explained *supra,* although StorageCraft places great weight on a purported forum

6    selection clause binding the parties to litigate in Utah, that clause has no relevance to proper venue

7    for this dispute. Not only is StorageCraft not a party to the agreements which contain such a clause,

8    or an assignee of any such party—but the plain language of the contract does not bind Symantec to

9    exclusive venue in Utah in any event.

10    With respect to the contacts between StorageCraft and this district, and between the events

11    alleged in Symantec's complaint and this district, StorageCraft proposes that transfer is

12    unambiguously warranted. But as discussed, the premises underlying that argument—that "[t]he

13    Complaint concerns alleged trade secrets of Symantec's predecessor-in-interest, PowerQuest, a Utah

14    company;"[49] that "[t]he Complaint does not identify any trade secret that was developed in

15    California or any alleged wrongful act which occurred in California;"[50] and that "[t]he only tie that

16    this action has to the State of California is the location of Symantec"[51]—are demonstrably wrong.

17    While there may be sufficient contacts with Utah to support venue there, there are also more than

18    sufficient contacts with the Northern District of California to support venue here.

19    StorageCraft also relies on the assertion that "all of StorageCraft's business records" and

20    other evidence is located in Utah to support transfer.[52] That assertion may be true, but it is equally

21    true, based on its litigation with NetJapan, that StorageCraft will make an electronic production of

22    documents in this case; as such, it makes little difference in terms of convenience whether that

23    production is directed to California or Utah. Moreover, StorageCraft's assertion that "most or all of

24

25    _____

26    [49] StorageCraft Memo. at 1.

     [50] *Id.*

27    [51] *Id.* at 5.

28    [52] *Id.* at 4.

1    Symantec's witnesses and evidence will likely be located in Utah" is simply untrue. Much of the

2    evidence (and many of the witnesses) concerning Symantec's creation and use of its trade secret

3    information is located at Symantec's headquarters in Cupertino, California.[53]

4            StorageCraft also places great emphasis on its general assertion that there are various party

5    and nonparty witnesses who might testify in this case who are not resident in the Northern District of

6    California; it further provides an exemplary list of such witnesses.[54] With respect to StorageCraft's

7    own witnesses, StorageCraft's cries of burden ring particularly hollow, in light of StorageCraft's

8    promotion of its executives' appearance at numerous events outside Utah, including trade shows

9    here in California.[55] With respect to nonparty witnesses, StorageCraft has done little more than list a

10   series of individuals whom it characterizes as potential witnesses.[56] This amounts to mere

11   speculation, and should be accorded no weight.[57] In addition, it is equally true, in light of the facts

12   surrounding Symantec's ownership, development, and use of the Employee Data List in Cupertino,

13   that a substantial number of Symantec's witnesses are located within this district. As such,

14   StorageCraft's transfer motion would not alleviate the issue of witness inconvenience, but merely

15   shift those inconveniences from StorageCraft to Symantec. Such a shifting of inconvenience from

16   one party to another cannot support transfer.[58]

---

[53] Slayton Decl. ¶3.

[54] StorageCraft Memo. at 3.

[55] Grewal Decl. Ex. J.

[56] StorageCraft Memo. at 2-3.

[57] *See, e.g., E. & J. Gallo Winery v. F. & P. S.p.A.,* 899 F. Supp. 465, 466 (E.D. Cal. 1994); *Saleh v. Titan Corp.,* 361 F. Supp. 2d 1152, 1165 (S.D. Cal. 2005); *Carolina Cas. Co.,* 158 F. Supp. 2d at 1049; *Ming Hsu,* 2007 U.S. Dist. LEXIS 33806 at *8.

[58] *See, e.g., Decker Coal Co.,* 805 F.2d at 843 (finding transfer "would merely shift rather than eliminate the inconvenience" to witnesses).

1   IV.     **CONCLUSION**

2           StorageCraft's motion to dismiss or transfer this action to Utah is ultimately premised on

3   nothing more than a wish for this dispute to be litigated in Utah.  For all of the reasons stated above,

4   there is no support in the law for that mere preference, and StorageCraft's motion should be denied.

5

6
    Dated:  November 13, 2007
7

8

9                                           By:  ___Paul  S.  Grewal___
                                                 Paul S. Grewal (CSB# 196539)
10                                               Day Casebeer Madrid & Batchelder LLP
                                                 20300 Stevens Creek Blvd., Suite 400
11                                               Cupertino, CA  95014
                                                 Tel:  (408) 873-0110
12                                               Fax: (408) 873-0220

13                                               *Attorneys for Plaintiff Symantec Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CIV 5-5(b). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CIV 5-5(b). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CIV 5-5, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U. S. First Class Mail.

Dated: November 13, 2007

Paul S. Grewal