Kimberly A. Donovan (CA Bar No. 160729)
**GCA LAW PARTNERS LLP**
1891 Landings Drive
Mountain View, Ca 94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901
E-mail: kdonovan@gcalaw.com

H. Dickson Burton (UT Bar No. 4004) (*pro hac vice)*
Edgar R. Cataxinos (UT Bar No.7162) (*pro hac vice)*
**TRASKBRITT, P.C.**
230 South 500 East
Suite 300
P.O. Box 2550
Salt Lake City, Utah 84110-2550
Telephone: (801) 532-1922
Facsimile: (801) 531-9168
E-Mail: hdburton@traskbritt.com

Attorneys for Defendant
STORAGECRAFT TECHNOLOGY CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SYMANTEC CORP.

Plaintiff,

v.

STORAGECRAFT TECHNOLOGY CORPORATION.

Defendant.

Case No. CV07-4731 HLR

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS THE ACTION**

Date: Tues., December 4, 2007
Time: 10:00 a.m.
Place: Courtroom 2

DOCUMENT PREPARED ON RECYCLED PAPER

Defendant StorageCraft Technology Corporation (hereinafter referred to as "StorageCraft") respectfully submits the following Reply Memorandum in support of its Motion to Transfer, or in the Alternative, To Dismiss.

## I. INTRODUCTION

This is a case brought by a multi-billion dollar corporation, Symantec, with over 17,500 employees against a small, start-up competitor, StorageCraft, with less than 10 employees where all or almost all of the facts and circumstances supporting Symantec's complaint occurred in Utah, and all or substantially all of the witnesses reside in Utah. Second Declaration of Thomas Russell Shreeve, November 20, 2007 ("2nd Shreeve Decl."), ¶¶'s 8 and 9. Keeping the case in California would be an unfair burden to StorageCraft and a tremendous inconvenience not only to StorageCraft, but also to all or substantially all witnesses who may be called – including Symantec employees.

In its opposition to StorageCraft's motion, Symantec Corporation (hereinafter referred to as "Symantec") has attempted to recast its case as a California dispute by shifting the focus of its complaint and claims against StorageCraft, and by misstating the facts concerning StorageCraft's contacts with California. Symantec now argues that because a single "employee data list" was allegedly created in California and allegedly misappropriated by a StorageCraft employee, this case should be litigated in California. Nevertheless, even if this case is limited to the "employee data list" (and the complaint is not so limited), this case concerns employees and witnesses who reside almost exclusively in Utah, not California, and concerns data and information relating to Utah, not California.

Symantec glosses over the fact that the employee data list concerns only employees of its predecessor PowerQuest, all of whom reside in and were employed in Utah. The employee data list existed on computers of PowerQuest employees located in Utah and was allegedly misappropriated by a Utah PowerQuest employee, who is now a Utah StorageCraft employee. Declaration of Brandon Nordquist, November 20, 2007 ("Nordquist Decl.") ¶ 3. All StorageCraft employees reside in Utah and all PowerQuest employees who would likely be witnesses in this

case reside in Utah and did reside in Utah at all material times. First Declaration of Thomas Russell Shreeve, October 30, 2007 ("1rst Shreeve Decl."), ¶¶ 8.

The original list of PowerQuest employees also appears to have been created originally in Utah, not California, by the manager of Human Resources of PowerQuest, not Symantec. Declaration of H. Dickson Burton ("Burton Decl.") ¶ 2; 2nd Shreeve Decl. ¶ 12. Other than possibly adding compensation and related information to this list, Symantec has failed to identify any evidence of the creation of any trade secret in California. Furthermore, Symantec has failed to identify any other trade secrets that may have been created in California, and it has not identified any other facts, circumstances, or witnesses in California that would bear any relationship to this litigation.

Symantec also glosses over the fact that the other major allegation of its complaint (though not supported by a single specific allegation of fact) is that "[u]pon information and belief, StorageCraft's ShadowProtect line of products, which compete with Symantec's Backup Exec System Recovery products, have been developed, marketed, and sold by and through StorageCraft's act of unfair competition and misappropriation of trade secrets." Symantec Complaint, ¶ 34. Litigation concerning this unsupported allegation would likely involve evidence and witnesses entirely from the State of Utah, since StorageCraft's ShadowProtect line of products were developed in Utah, and Symantec's Backup Exec System Recovery products were also developed in Utah. 1rst Shreeve Decl. ¶ 8.

StorageCraft has identified specific evidence and witnesses likely to be involved in this litigation, all of which are located in Utah. Symantec has not even attempted to rebut this assertion. This case should be transferred to Utah or dismissed.

## II. TRANSFER OF THIS ACTION TO THE DISTRICT OF UTAH IS WARRANTED

### A. The Case Should Be Transferred For Convenience Of The Parties and Witnesses And In The Interests Of Justice

StorageCraft would be substantially burdened if forced to litigate this case in California. Unlike Symantec, a multi-national corporation with offices throughout the United States and

thousands of employees, StorageCraft has a small management team and less than 10 employees. 2nd Shreeve Decl. ¶¶'s 10 and 11. Requiring StorageCraft's managers and employees to travel to California and miss work for hearings and other court proceedings would bring about a severe hardship for StorageCraft. 1rst Shreeve Decl. ¶ 9. Alternatively, because Symantec continues to operate at least a significant portion of former PowerQuest business in Utah and maintains multiple offices in Utah with hundreds of employees, any disadvantage on Symantec would clearly be less extreme than that forced on StorageCraft, should this suit remain in California. In fact, it is likely that any or all Symantec witnesses in this case still reside in Utah (making the case more convenient in Utah for Symantec witnesses as well). 1rst Shreeve Decl. ¶ 8.

In its reply brief, Symantec has argued, without support, that many of the likely witnesses in this litigation are located in California. Symantec Opposition, p. 14. However, other than Kerre Slayton, Symantec has not identified any specific witnesses who are likely to testify in this matter. Slayton's affidavit states only that Symantec employs approximately 25,000 people in San Francisco, California.

On the other hand, Symantec argues that the identification of likely witnesses provided by StorageCraft should be accorded no weight. Symantec is wrong. To demonstrate inconvenience, the moving party should produce information regarding the identity and location of the witnesses. *A.J. Industries, Inc. v. United States District Court*, 503 F.2d 384 (9th Cir.1974). In a venue analysis, this Court will consider the number of witnesses located in the respective districts. *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357 (N.D.Cal. 2007) (citing *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2D (BNA) 1468, 1470 (C.D.Cal.1996)). StorageCraft has met its burden of specifically identifying witnesses likely to testify in this litigation. Symantec has failed to even rebut StorageCraft's showing.

**B. The Employment Agreements' Forum Selection Clause Is Binding On Symantec**

**1. Symantec Is Bound By The Provisions Of The Employment Agreements**

Symantec argues that the Employment Agreements between Symantec and the four former employees of PowerQuest bind only the employees. This assertion is blatantly false and is contrary to the allegations of its own Complaint, which are that "the [employment] agreements explicitly assign the benefit of [the confidentiality obligations] to PowerQuest's successors-in-interest. Symantec is the successor-in-interest . . . ." *See*, Complaint, ¶19.

Paragraph 27 of the Employment Agreement provides:

> 27. This agreement shall be binding upon and continue to the benefit of successors and assigns of PowerQuest, such as by way of merger, consolidation, operation of law, purchase, or acquisition of substantially all the assets of business of PowerQuest.

(Employment Agreement, page 5, paragraph 29).

As unambiguously stated, any successor of PowerQuest by way of purchase is bound by the Employment Agreements and, therefore, the Employment Agreements are binding on Symantec.

**2. The Forum Selection Clause Is Binding Upon Both The Employees And Symantec**

Symantec also argues that only the employees are bound by the venue clause of paragraph 29 of the Employment Agreement, which provides:

> 29. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Utah, without giving effect to principles of conflicts of law. You consent to the personal jurisdiction of the state and federal courts located in the state of Utah for any litigation related to this Agreement and **agree that the exclusive venue for any such litigation shall be in such courts located in the state of Utah**.

(Employment Agreement – page 5, paragraph 29, emphasis supplied).

Symantec is wrong. It is clear from the plain language of paragraph 29 that the parties have consented to the personal jurisdiction of the state and federal courts in Utah. The phrase "agree that the exclusive venue for any such litigation shall be in such courts located in the state of Utah," creates an agreement between PowerQuest and the employees that the exclusive venue for "any litigation related to this agreement" shall be in Utah courts. Indeed, Symantec's

proposed interpretation of contract language - which its predecessor-in-interest drafted - is contrary to the plain language of the agreement itself and strains credulity.

The agreement states that the employee "agrees" that the "exclusive venue" for "any litigation" shall be in Utah courts. The only entity with which the employee could be agreeing is the employer, Symantec's predecessor-in-interest. In other words, the employee "agrees" *with the employer*, that "*any litigation related to this agreement*" shall be exclusively brought in Utah. Necessarily, the employer is *agreeing* as well. If not, there is no meeting of the minds and no agreement at all.[1]

The agreement – between both parties - does not provide that the employer has the right to choose or opt out of this agreement, nor does it limit "any litigation" to litigation brought only by the employee. "Any litigation" cannot be interpreted to mean any litigation except litigation brought by the employer. Thus, what the employee "agreed" to is a provision that "the exclusive venue" for "any litigation related to this Agreement" shall be in Utah courts. Symantec cannot add limitations to this forum selection clause that are simply not there.[2]

**3. This Litigation Is "Related" To The Employment Agreements And Is Subject To The Forum Selection Clause**

1 Symantec seems to argue that the prior clause in paragraph 29, where the employee ("you") consents to personal jurisdiction of Utah courts, implies that the employee is also merely *consenting* to venue in Utah. That is not what the agreement says. Rather, it says that the employee "*consents*" to personal jurisdiction, but "*agrees*" that "the exclusive venue for any such litigation" shall be in Utah, meaning necessarily, that the *parties* to the agreement *agree* to the exclusive venue.

2 In support of its argument that the forum selection clause of the Employment Agreement only binds the employees, Symantec relies on *Silverman v. Carvel Corp.*, 192 F. Supp 2d 1 (W.D.N.Y. 2001). The forum selection clause in *Silverman*, however, is clearly distinguishable from the forum selection clause in this case. Specifically, the forum selection clause in *Silverman* provides that the Licensee Silverman "waives any claims of forum non conveniens to an action brought against Licensee by the defendant, Carvel. *Id.* at 2. The Employment Agreement in this case clearly lacks any similar waiver. Moreover, in *Silverman*, the forum selection clause provides that "any legal action that *Licensee may bring* against defendant Carvel…shall only be brought in the United States District Court for the Southern District of New York and that such court shall be deemed to be the court of sole and exclusive venue for bringing of such action." *Id.*, *emphasis supplied*. Again, this is clearly distinguishable from paragraph 29 of the Employment Agreement in this case which does not limit the applicability of the clause to actions brought by the employee. Rather, it provides that "the exclusive venue for such litigation [referring to "any litigation related to this Agreement"] shall be in such courts located in the state of Utah." If the venue provision in the Employment Agreement were meant to apply to only the employees and not the employer, it would have included a limitation such as that found in the forum selection clause in *Silverman.*

Symantec also argues that the Employment Agreement between PowerQuest and the employees has only a minimal relationship to the acts of unfair competition and trade secret misappropriation of which StorageCraft is accused. Again, Symantec is wrong. Its allegations rest entirely on the employee-employer relationship between PowerQuest and its former employees who are now employees of StorageCraft. *See*, for example, ¶¶'s18-24, and 32-34 of Symantec's Complaint. Virtually *all* of Symantec's allegations and claims rest on the prior relationship between the present StorageCraft employees and their former employer PowerQuest, and on their alleged misuse and/or disclosure of alleged trade secret information obtained from PowerQuest as employees. Indeed, in paragraph 19 of its complaint, Symantec explicitly describes the contractual duties of these individuals, claims that the duties are ongoing, and that "Symantec is the successor-in-interest" of the obligations provided in the employment agreements. Thus, Symantec has specifically pleaded the duties and obligation of the agreements as a basis for its claims. This litigation indisputably "relates" to the agreements, which necessarily implicates the forum selection clause.

In a transparent but failed attempt to avoid the forum selection clause, Symantec did not name the former employees as defendants. But Symantec's claims are plainly not about the actions of StorageCraft; rather, they concern the alleged conduct of the former employees in allegedly violating their duties to their former employer. No other wrongful conduct is specifically alleged.

Symantec places great emphasis in its opposition on the alleged misappropriation of the employee data list. Symantec has claimed that the employee data list was "stolen," but fails to make any allegation in its Complaint as to how or even whether it was "stolen." Symantec has also not made any allegation of how, or even *if*, the information contained within the employee data lists was used or disclosed, other than transmission of the file via email from one employee to another employee. No other disclosure, use or damage is identified. Most importantly for purposes of this motion, Symantec has made no allegation that the employee data list was "stolen" by *StorageCraft*, nor has it asserted any allegation that would support a claim that *StorageCraft* directed that theft, knew about it, or used any of the information contained in the

list. Clearly, this alleged wrongful conduct concerns an alleged breach of the Employment Agreements by the former employees of PowerQuest.

**4. Utah Law Should Govern This Case**

The Employment Agreement unambiguously states "[t]his agreement shall be governed by and interpreted in accordance with the laws of the state of Utah." (Employment Agreement, page 5, paragraph 29). As a result, Symantec's assertion that California law is applicable is clearly erroneous. Furthermore, in its reply, Symantec concedes that the choice of law provision in paragraph 29 is binding on litigation related to the agreements. Symantec Opposition, p. 8. Additionally, because both Utah and California have adopted the Uniform Trade Secrets Act, Symantec can claim no substantial difference between applicable California and Utah trade secret law. Symantec's assertion that transfer should be denied due to this Court's familiarity with California law regarding trade secrets should be disregarded.

**C. The First To File Rule Should Be Given Little Deference In This Case**

Symantec has acknowledged that the first to file rule will be given little deference when the circumstances point to forum shopping by the filing party. *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir.1991). It is clear that this case involves alleged misconduct that took place in Utah, concerning Utah companies and Utah residents. Furthermore, the merits of this case are to be decided under Utah law. It would be more convenient even for Symantec to litigate this case in Utah as the vast majority of its own employees who would be involved as witnesses in this case reside in and are employed in Utah. Thus, this Court should conclude that Symantc's primary motive in filing this case in the Northern District of California was for strategic purposes; namely to inconvenience StorageCraft, a small Utah company for which litigating in California would be a great inconvenience and financial burden. Thus, Symantec has participated in forum shopping and the first to file rule should be given little deference.

Furthermore, the first to file rule should be given little weight when, as here, the convenience of the parties and witnesses favor transfer. Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 269 (C.D. Cal. 1998). (citing *Alltrade*, 946 F.2d at 628).

**D. The Events Giving Rise To Symantec's Claims Occurred Substantially In Utah**

In an attempt to convince this Court that a substantial part of the events giving rise to its claims occurred in California, Symantec argues that the alleged trade secret misappropriation came to light in California during a deposition between StorageCraft and NetJapan Holdings, Inc. ("NetJapan"). Symantec advertently fails to inform the Court that the deposition involved Utah litigation concerning a Utah company (StorageCraft) and a Japanese company. Additionally, the individual being deposed, Don Kleinschnitz, is a Utah resident working for Symantec in Utah. In fact, the only non-Utah resident who attended the deposition was Symantec's attorney. Finally, the principals of StorageCraft attended the deposition only remotely from Utah, via *telephone*, not in person, and then were excluded from essentially the entire deposition. 2nd Shreeve Decl. ¶ 8.

Although Symantec has argued that the employee data list was created in California, the employee data list and the information contained therein originated at PowerQuest, in Utah.[3] Symantec simply modified the list by adding information to a list obtained from PowerQuest, located in Utah, concerning PowerQuest employees, also located in Utah. Furthermore, all the core data within the employee data list concerned a Utah corporation and Utah residents. Additionally, Kerre Slayton's declaration concedes the fact that PowerQuest employees assisted in providing fundamental information for the employee data list. Declaration of Kerre Slayton, November 12, 2007, provided by Plaintiff Symantec ("Kerre Decl."), ¶ 9.

Symantec attempts to persuade this Court that at all times the employee data list remained property of Symantec and was never property of PowerQuest. This is also not true. Not only was the list likely originally created by PowerQuest, the employee data list was widely disseminated throughout PowerQuest and was electronically stored on PowerQuest employee computers prior

[3] The employee data list appears to have been originally created in the Human Resource Department of PowerQuest, in Utah. Burton Decl, ¶ 2, Ex. A; 2nd Shreeve Decl. ¶ 12.

to Symantec's acquisition of PowerQuest. Nordquist Decl. ¶ 3. Brandon Nordquist, the former PowerQuest employee who Symantec alleges had possession of the employee data list, terminated his employment with PowerQuest upon the acquisition, and received a copy of the list while he was a PowerQuest employee before the acquisition. Nordquist Decl. ¶¶'s 2 and 3. Therefore, Mr. Nordquist would have never had access to Symantec's files unless Symantec transmitted the employee data list, either physically or electronically, to Powerquest in Utah prior to the acquisition of PowerQuest and without sufficient protection.

**E. StorageCraft Has Limited Contacts With California**

Symantec's arguments regarding StorageCraft's contacts with California are misleading and without merit. StorageCraft does not conduct significant business activities in California, as erroneously claimed by Symantec. 2nd Shreeve Decl. ¶¶'s 2, 5, 6 and 7.

StorageCraft's attendance at two trade shows in California is de minimis and unrelated to the facts and circumstances of this litigation. StorageCraft attended the two trade shows to explore technology and opportunities throughout the world and not to promote relationships in California. 2nd Shreeve Decl. ¶ 5.

Symantec also incorrectly states that StorageCraft was originally formed as StorageCraft, Inc., a California corporation. In actuality, StorageCraft was originally formed as a Utah corporation as part of a merger between StorageCraft, Inc., and ShadowStor, Inc., also a Utah corporation. 2nd Shreeve Decl. ¶¶'s 3 and 4.

Symantec also points to StorageCraft's business dealings with HP, VMWare, and Seagate. However, Symantec fails to understand that the agreements with HP and Seagate were executed by StorageCraft, Inc. (the California entity), and not StorageCraft (the Utah entity), and there has been no business activity between StorageCraft and HP or Seagate since StorageCraft was formed. The actions with VMWare have been minimal and have not involved any significant presence in California. 2nd Shreeve Decl. ¶ 6.

Although StorageCraft was, until March 2005, a licensor of Symantec, it was only as a successor to StorageCraft, Inc. Moreover, StorageCraft, Inc. negotiated and executed the license

agreement with PowerQuest, a Utah corporation, before PowerQuest was acquired by Symantec. Symantec's breach of that license agreement is now the subject of litigation between StorageCraft and Symantec in U.S. District Court for the District of Utah.[4]

## III. CONCLUSION

For the reasons stated herein, the Court should dismiss this matter for lack of proper venue. In the alternative, the Court should transfer the above-entitled action to the District of Utah.

Dated: November 20, 2007

TRASKBRITT, PC
H. Dickson Burton (4004)
Edgar R. Cataxinos (7162)

___/S/ H. Dickson Burton______
H. Dickson Burton (4004)

[4] A copy of the complaint in that action,filed on November 5, 2007, is attached to the Declaration of H. Dickson Burton as Ex. B. Symantec alleged that by filing the lawsuit in Utah against Symantec, StorageCraft may be in contempt of a Utah state court order. Symantec not only lacks standing to make such an assertion, it is simply wrong. See, Declaration of Thomas R. Karrenberg, including ¶ 7.