Kimberly A. Donovan (CA Bar No. 160729)
**GCA LAW PARTNERS LLP**
1891 Landings Drive
Mountain View, Ca 94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901
E-mail: kdonovan@gcalaw.com

H. Dickson Burton (4004) (*pro hac vice*)
Edgar R. Cataxinos (7162) (*pro hac vice*)
**TRASKBRITT, P.C.**
230 South 500 East
Suite 300
P.O. Box 2550
Salt Lake City, Utah 84110-2550
Telephone:    (801) 532-1922
Facsimile:    (801) 531-9168
E-Mail:       hdburton@traskbritt.com

Attorneys for Defendant
STORAGECRAFT TECHNOLOGY CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYMANTEC CORP.<br><br>              Plaintiff,<br><br>v.<br><br><br>STORAGECRAFT TECHNOLOGY CORPORATION.<br>              Defendant. | Case No. CV07-4731 JW<br><br>**DECLARATION OF THOMAS RUSSELL SHREEVE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND IN SUPPORT OF ITS CROSS-MOTION FOR A STAY OF DISCOVERY**<br><br>Date:    February 4, 2008<br>Time:    9:00 a.m.<br>Place:   Courtroom 8 |

Case No. CV07-4731 JW

DECLARATION OF THOMAS RUSS SHREEVE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND IN SUPPORT OF ITS CROSS-MOTION FOR A STAY OF DISCOVERY

DOCUMENT PREPARED ON RECYCLED PAPER

I, Thomas Russell Shreeve, declare as follows:

1. I am Chief Operating Officer for Defendant StorageCraft Technology Corporation. (hereinafter "StorageCraft"). I am making this Declaration in support of Defendant's Opposition to Plaintiff's Motion for Expedited Discovery and in support of Defendant's cross-motion for a Stay of Discovery. The facts set forth herein are based upon my personal knowledge, and if called upon, I am competent to testify to such facts.

2. On September 14, 2007, Symantec filed an action alleging misappropriation of trade secrets, based on acts that allegedly occurred in or before March of 2004. This case is now captioned as *Symantec Corporation v. StorageCraft Technology Corporation*, Case. No CV07-4731.

3. Attached as Exhibits A, B, and C are true and correct copies of affidavits from myself, Brandon Nordquist, and Mike Kunz. These affidavits were provided to Symantec on September 13, 2007.

4. Attached as Exhibit D is a true and correct copy of a letter I received in December, 2004 from Symantec's Attorney Robert Rice.

I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed at Salt Lake City, Utah, on January 10, 2008.

Thomas Russell Shreeve

Case No. CV07-4731 JW                    - 1 -

DECLARATION OF THOMAS RUSSELL SHREEVE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND IN SUPPORT OF ITS CROSS-MOTION FOR A STAY OF DISCOVERY

*EXHIBIT A*

To whom it may concern:

I am the Chief Operating Officer of StorageCraft Technology Corporation ("STC"). I am also a former employee of PowerQuest.

I write in reference to Exhibit 142 to the August 23, 2007 deposition of Donald Kleinschnitz in the case of *NetJapan, Inc. et al. v. StorageCraft Technology Corporation, et al.* (Case No. 060920091). Exhibit 142 consists of a March 23, 2004 email and attachment (the "Spreadsheet") from Brandon Nordquist to Mike Kunz, both of whom are former PowerQuest employees.

It is my understanding that the existence of the Spreadsheet was widely known among PowerQuest employees at that time, and that it was circulated among the employees. When I was a PowerQuest employee, I was aware that the document existed, although no one provided it to me. It is also my belief that the management of PowerQuest was aware that the Spreadsheet was circulating among employees in the latter part of 2003, although PowerQuest management never advised me of this or warned me that my personal confidential information had been disclosed to other employees.

It is my understanding that the Spreadsheet was produced by STC to NetJapan in a document sweep to locate documents responsive to production requests in the above-referenced lawsuit. It is my further understanding that, as part of that process, the Spreadsheet was produced by Mike Kunz as part of his search for potentially relevant documents.

I was not aware that a copy of the Spreadsheet existed on any computer or server owned by STC. It is my understanding that the document was located and produced from Mr. Kunz's Microsoft Exchange mailbox, to which only Mr. Kunz has access. It is my understanding that the Spreadsheet was loaded into Mr. Kunz's mailbox after STC hired Mr. Kunz and he loaded old emails into his Exchange mailbox.

I have spoken to all STC employees and no one has a copy of the Spreadsheet. The only exception is the copy that was located in Mr. Kunz's Exchange mailbox. Based upon concerns expressed by Symantec's counsel, Paul S. Grewal, on September 11, 2007, that document has been transferred to a CD and deleted from the STC Exchange server. Produced herewith is that CD, which contains STC's only copy of the Spreadsheet. The only other copies of the Spreadsheet of which I am aware are in the possession of STC's counsel and NetJapan's counsel, as a result of document production in the above-referenced lawsuit. Because it was produced for purposes of the lawsuit, the document is subject to the agreed protective order in the lawsuit. STC has undertaken an investigation and verified to the best of its ability that no other copies of the Spreadsheet—either in paper or electronic form—exist at STC or among its agents, employees, or representatives.

As stated above, until the Kleinschnitz deposition, no officer or director of STC was aware that a copy of the Spreadsheet resided on any computer or server owned or controlled by STC. STC has never made any use—commercial or otherwise—of the Spreadsheet. Further, STC has never

disseminated the Spreadsheet, except by production in the above-referenced lawsuit.

September 13, 2007.

_____
Thomas Russ Shreeve

SUBSCRIBED AND SWORN to before me this 13th day of September, 2007.

_____
NOTARY PUBLIC

NOTARY PUBLIC
DEBRA WITHERS
15 W. So. Temple, Ste. 1200
Salt Lake City, Utah 84101
My Commission Expires
January 5, 2009
STATE OF UTAH

2

*EXHIBIT B*

To whom it may concern:

I write in reference to Exhibit 142 to the August 23, 2007 deposition of Donald Kleinschnitz in the case of *NetJapan, Inc. et al. v. StorageCraft Technology Corporation, et al.* (Case No. 060920091). Exhibit 142 consists of a March 23, 2004 email and attachment (the "Spreadsheet") that I forwarded to Mike Kunz, a former PowerQuest employee.

I originally received the Spreadsheet while I was an employee of PowerQuest, probably in October of November 2003, prior to the merger of PowerQuest and Symantec. I do not recall who sent the Spreadsheet to me, although I recall that it was someone employed in PowerQuest's IT group. It was sent to me unsolicited. It is my recollection and understanding that the existence of the Spreadsheet was widely known among PowerQuest employees at that time, and that it was circulated among employees.

When I received the Spreadsheet, it had been assigned the name "kidspics.xls" by someone who had received the email before I received it. I did not assign that name to the document.

I received the Spreadsheet on a personal email account, such as a Yahoo or MSN account. The account no longer exists. I do not have a copy of the Spreadsheet. I have not looked at the content of the Spreadsheet since I received it in late 2003.

To the best of my recollection, the only person to whom I forwarded the Spreadsheet was Mike Kunz. I never provided a copy of the Spreadsheet to any current or former employee of StorageCraft Technology Corporation, or the best of my recollection, to anyone else.

September 13, 2007.

_____
Brandon Nordquist

SUBSCRIBED AND SWORN to before me this 13 day of September, 2007.

KATHLEEN H. RICHINS
Notary Public
State of Utah
My Comm. Expires Aug 10, 2010
10625 S State St Sandy UT 84070

_____
NOTARY PUBLIC

*EXHIBIT C*

To whom it may concern:

I write in reference to Exhibit 142 to the August 23, 2007 deposition of Donald Kleinschnitz in the case of *NetJapan, Inc., et al. v. StorageCraft Technology Corporation, et al.* (Case No. 060920091). Exhibit 142 consists of a March 23, 2004 email and attachment (the "Spreadsheet") that I received from Brandon Nordquist, a former PowerQuest employee.

I am a former PowerQuest employee. It is my understanding that the existence of the Spreadsheet was widely known among PowerQuest employees at that time, and that it was circulated among employees.

When I received the email from Mr. Nordquist, the Spreadsheet had been assigned the name "kidspics.xls" by someone who had received the transmittal email before I received it. I did not assign that name to the document.

I have not looked at the content of the Spreadsheet since I received it in March 2004, when I reviewed it once. I never forwarded the transmittal email or provided a copy of the Spreadsheet to any one, including any current or former employee of StorageCraft Technology Corporation.

I had forgotten about the Spreadsheet until I learned that it had been raised as an issue in the Donald Kleinschnitz deposition. It is my understanding that the Spreadsheet was produced by StorageCraft Technology Corporation to NetJapan in a document sweep to locate documents responsive to production requests in the above-referenced lawsuit. The document was located and produced from my Microsoft Exchange Mailbox, to which no one else has access. At the time I received the Spreadsheet from Mr. Nordquist, I was not an employee of ShadowStor, Inc. or StorageCraft Technology Corporation. But I was subsequently hired by StorageCraft Technology Corporation, it acquired an Exchange server, and it allowed me to load old emails into my personal Exchange mailbox. The Spreadsheet must have been among the old emails that I loaded into the Exchange Mailbox. I am the only person with access to my Exchange mailbox.

Based upon concerns expressed by Symantec's counsel, Paul S. Grewal, on September 11, 2007, that document has been transferred to a CD and deleted from my Exchange mailbox and the STC Exchange server. I therefore no longer have a copy of the Spreadsheet.
September 13, 2007.

Mike Kunz

SUBSCRIBED AND SWORN to before me this 13 day of September, 2007.

KATHLEEN H. RICHINS
Notary Public
State of Utah
My Comm. Expires Aug 10, 2010
10625 S State St Sandy UT 84070

NOTARY PUBLIC

*EXHIBIT D*



December 23, 2004

VIA FACSIMILE & CERTIFIED MAIL

Thomas Shreeve, Registered Agent
StorageCraft Technology
2274 So. 1300 East, #G15-107
Salt Lake City, UT 84106-2882

    Re:    Scott Barnes, Curtis James, Brandon Norquist and Thomas "Russ" Shreeve

Dear Mr. Shreeve:

    Our firm has been retained by Symantec Corporation ("Symantec"), the successor to PowerQuest Corporation ("PowerQuest") to investigate the employment of Scott Barnes, Curtis James, Brandon Nordquist and Thomas "Russ" Shreeve (the "Employees") with StorageCraft Technology Corporation ("StorageCraft"). Each of these individuals entered into Employment Agreements with PowerQuest (the "Employment Agreements"). The Employment Agreements were subsequently assigned to Symantec on or about December 8, 2003 and thus, Symantec has succeeded to all rights available under the Agreements. We have enclosed copies of the Employment Agreements for your reference.

    The Employment Agreements each contain a one-year covenant not to compete provision that bars the Employees from accepting employment with or rendering any service to a direct competitor of PowerQuest or creating a competing business, in any market served by PowerQuest. Under the Employment Agreements, a direct competitor is defined as a business that quite clearly includes StorageCraft. Further, the Employment Agreements also contains provisions protecting Symantec's confidential and trade secret information. Finally, the Employment Agreements have language assigning work-place inventions and innovations to the employer.

    We have carefully analyzed the Employment Agreements and conducted a thorough investigation of the facts surrounding the Employees' employment at StorageCraft. Based on our investigation, it is difficult to come to any conclusion other than that the Employees violated one or more provisions of the Employment Agreements. A breach of the Employment Agreements creates liability for money damages and some courts have even extended covenants not to compete beyond the time restrictions set forth in the controlling agreement. We are also very concerned that the Employees' conduct may have put at risk Symantec's confidential and trade secret

SALT LAKE CITY OFFICE
PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 TEL
801 532-7543 FAX
www.rqn.com

PROVO OFFICE
101 North University Ave.
Suite 200
Provo, Utah
84601-2833

801 342-2400 TEL
801 375-8379 FAX

ATTORNEYS AT LAW
Clark P. Giles
Herschel J. Saperstein
Narvel E. Hall
Herbert C. Livsey
C. Jay Curtis
Gerald T. Snow
Alan A. Enke
Jonathan A. Dibble
Scott Hancock Clark
Steven H. Gunn
James S. Jardine
Allan T. Brinkerhoff
Janet Hugie Smith
Douglas Matsumori
Robert P. Hill
A. Robert Thorup
Annette W. Jarvis
Larry G. Moore
Bruce L. Olson
John A. Adams
Douglas M. Monson
Craig Carlile
Jeffrey W. Appel
Ellen J. D. Toscano
Kevin G. Glade
Lester K. Essig
Ira B. Rubinfeld
Steven T. Waterman
Stephen C. Tingey
John R. Madsen
Keith A. Kelly
Michael W. Spence
Scott A. Hagen
Mark M. Bettilyon
Rick L. Rose
Rick B. Hoggard
Lisa A. Yerkovich
Brent D. Wride
Michael E. Blue
Steven W. Call
Cameron M. Hancock
Elaine A. Monson
Mark A. Cotter
R. Gary Winger
Kelly J. Applegate
Justin T. Toth
Steven C. Strong
Robert O. Rice
Arthur B. Berger
Frederick R. Thaler, Jr.
John W. Mackay
McKay M. Pearson
Mark W. Pugsley
Gary L. Longmore
Michael D. Greer
Jennifer L. Crane
Samuel C. Straight
Paul C. Burke
Elaina M. Maragakis
D. Zachary Wiseman
Michael D. Mayfield
Scott B. Finlinson
Bryan K. Bassett
David E. Finkelson
Rod N. Andreason
N. Aaron Murdock
Kristine M. Larsen
Gregory S. Roberts
Christopher N. Nelson
Jacquelyn D. Rogers
Benjamin J. Kotter
Sarah M. Birkeland
Cecilia M. Romero
Richard H. Madsen, II

OF COUNSEL
Alonzo W. Watson, Jr.
Stephen B. Nebeker
Don B. Allen
Robert M. Graham
M. John Ashton
Katie A. Eccles
Melissa Herring Bailey
Karen L. Daines

StorageCraft Technology Corporation
December 23, 2004
Page 2

information and that they may have engaged in other conduct that has caused significant damage to Symantec. Of course, liability for the employees' conduct may attach to StorageCraft.

Although Symantec reserves the right to protect its legal rights in every way possible, Symantec has two basic areas of concerns regarding the Employees' employment with StorageCraft. First, our investigation has yielded information that the Employees have created a product designed to compete with Symantec's V2i Protector technology ("V2i"). We understand that StorageCraft intends to go to market with this new competing product as early as January, 2005. Producing a product to compete with V2i would constitute a clear violation of the covenant not to compete in the Employment Agreements and could create substantial liability. Further, depending upon how StorageCraft's new product was created, Symantec could be entitled to court-ordered relief barring the marketing of this new product.

The second area of concern for Symantec is StorageCraft's creation and marketing of its program called ColdSnap. We understand that one of the Employees, Scott Barnes, made a presentation to PowerQuest's Patent Committee regarding cold state storage technology. Under his Employment Agreement, Mr. Barnes assigned this cold-state technology to PowerQuest and could not claim it as his own. Based on Symantec's review of available information, it appears StorageCraft's ColdSnap is remarkably similar to the cold state technology Mr. Barnes assigned to PowerQuest.

Symantec is deeply troubled by the prospect of StorageCraft having produced a product to compete with V2i in violation of the Employment Agreements, and other applicable laws, and the similarities between ColdSnap and the cold state technology Mr. Barnes assigned to PowerQuest. Any unlawful conduct in these two areas could create extensive liability under Utah trade secret and unfair competition statutes, intellectual property law, and various common law theories protecting Symantec from tortuous conduct by former employees.

Symantec is committed to protecting its interests through any legal means necessary. However, our client would prefer to enter into a dialogue with StorageCraft to answer some important questions and, we hope, avoid additional action. To that end, we ask StorageCraft to supply us with certain assurances in the areas set forth below. We require a prompt answer and ask StorageCraft to be as forthcoming as possible; the response will determine how Symantec will act to protect its interests. With these parameters in mind, please respond to the following:

    1.    Symantec is concerned that its confidential and trade secret information may have been compromised in the Employees'

StorageCraft Technology Corporation
December 23, 2004
Page 3

          work on the new product that we understand would compete with V2i. Please assure us that this is not the case and explain how StorageCraft's new product was developed, what its capabilities are and when StorageCraft intends to release it to market.

2.     Likewise, we are concerned that ColdSnap represents technology that was within the scope of the proposal regarding cold state technology that Mr. Barnes assigned to PowerQuest. Please explain to us how ColdSnap was developed and who worked on developing the product.

3.     Please explain when each of the Employees went to work for StorageCraft, what projects they have worked on since beginning their employment there, what the Employees responsibilities have been at the company, and what those responsibilities are today.

4.     Finally, when the Employees worked for PowerQuest, each of them had access to a great deal of confidential information, including source code, now belonging to Symantec. We would like assurances that none of our confidential information has ever been used by StorageCraft for its own business purposes.

StorageCraft may respond to our questions in writing or by contacting us, or having its legal counsel contact us, over the telephone. At any rate, please contact us during the week of January 3, 2004 and certainly before StorageCraft releases any new product to market. We also hope that StorageCraft's response will be sufficient to address Symantec's concerns. Thank you for your cooperation and we look forward to hearing from you.

                            Sincerely,

                            RAY QUINNEY & NEBEKER

                            Robert O. Rice
                            D. Zachary Wiseman

799296