Kimberly A. Donovan (CA Bar No. 160729)
**GCA LAW PARTNERS LLP**
1891 Landings Drive
Mountain View, CA 94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901
E-mail: kdonovan@gcalaw.com

H. Dickson Burton (UT Bar. No. 4004) (*pro hac vice*)
Edgar R. Cataxinos (UT Bar No. 7162) (*pro hac vice*)
**TRASKBRITT, P.C.**
230 South 500 East
Suite 300
P.O. Box 2550
Salt Lake City, Utah 84110-2550
Telephone:    (801) 532-1922
Facsimile:    (801) 531-9168
E-Mail:       hdburton@traskbritt.com

Attorneys for Defendant
STORAGECRAFT TECHNOLOGY CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYMANTEC CORP.,<br><br>             Plaintiff,<br><br>        v.<br><br>STORAGECRAFT TECHNOLOGY CORPORATION.<br><br>             Defendant. | Case No.  CV07-4731 JW<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER RE: SUBPOENA TO BURBIDGE MITCHELL & GROSS**<br><br>Date:    March 17, 2008<br>Time:    9:00 a.m.<br>Place:   Courtroom 8<br>Judge:   Honorable James Ware |

## I. INTRODUCTION

Defendant StorageCraft Technology Corporation ("StorageCraft") seeks a protective order regarding a subpoena issued by counsel for Symantec Corp. ("Symantec") to third party Burbidge. Mitchell & Gross. StorageCraft seeks to quash the subpoena based on various timing issues and its overbreadth or to 1) have any production under this subpoena stayed until after the Court rules on the presently pending Motion to Dismiss and Motion to Stay; 2) have any production under this subpoena suspended until the Court enters a protective order covering confidential and highly confidential information produced during the course of discovery and disclosures in this case; 3) narrow the scope of this subpoena to only permit production of documents and things that are relevant to this action; and 4) exclude from the scope of this subpoena irrelevant material, source code and certain other highly confidential documents and things absent a particularized showing of need by Symantec.

## II. SUMMARY OF RELEVANT FACTS

On September 14, 2007, Symantec filed this action alleging misappropriation of trade secrets based on acts of misappropriation that allegedly occurred in or before March of 2004. [Docket No. 1, Complaint ¶5] After a two week extension of time to respond, StorageCraft filed a Motion to Dismiss or, in the Alternative, to Transfer ("Motion to Dismiss") on October 30, 2007 and a declination to proceed before the U.S. Magistrate. Thereafter, the case was reassigned to the Honorable Judge Ware and the hearing date on the Motion to Dismiss was reset for February 11, 2008.

Although at one point this Court had set the initial Case Management Conference ("CMC") on March 17, 2008, (see Docket No. 32, which then required the parties to engage in their conference under Rule 26(f) by February 25 and discovery to commence thereafter), by order dated January 4, 2008, the Court moved the CMC up to February 4, 2008, (*see* Docket No. 37) having the unintended (StorageCraft believes) impact of potentially mooting Symantec's then pending motion for expedited discovery, and requiring StorageCraft to file a Cross-Motion for a Stay of Discovery ("Motion to Stay") in

order to prevent discovery from taking place until after the Motion to Dismiss was decided. Based on meet and confer related to the Motion to Stay, StorageCraft's counsel understood that, although Symantec might propound discovery between January 14, 2008, when the Rule 26(f) conference was to occur, and February 4, 2008, when the Motion to Stay would be heard, StorageCraft did not believe that Symantec would propound any discovery that would require a response prior to the February 4, 2008, hearing. Declaration of H. Dickson Burton filed in support of Motion for Protective Order ("Burton Decl.") ¶2. Apparently there was a misunderstanding between counsel with respect to this.

The parties engaged in their Rule 26(f) conference on January 14, 2008, consistent with the January 4 order moving the CMC. The parties disagreed on whether discovery should proceed pending receipt of a decision on the Motion to Stay and the Motion to Dismiss, but agreed that the Rules did seem to permit discovery to commence. On that afternoon, Symantec served written discovery (both interrogatories and requests for production) via fax and overnight delivery. Burton Decl. ¶3.

On the next day, January 15, 2008, Symantec's counsel apparently issued and served a third party subpoena (the "Burbidge Subpoena") on the law firm of Burbidge, Mitchell & Gross (the "Burbridge Firm") in Salt Lake City, Utah. Burton Decl. ¶¶4 & 5 and Ex. A & B. The Burbidge Firm represents NetJapan Holdings, Inc. in litigation against StorageCraft that is presently pending in the Third Judicial District Court in and for Salt Lake County, Utah. StorageCraft's counsel was not initially served with a copy of the Burbidge Subpoena, nor did Symantec's counsel engage in meet and confer regarding the date set for the "deposition" as required under Local Rule 30-1. If meet and confer had occurred, StorageCraft's counsel would have indicated that the date for production needed to be after an order issued on StorageCraft's Motion to Stay. Burton Decl. ¶ 5. StorageCraft's counsel in this case received a copy of the Burbidge Subpoena as an attachment to a letter that was forwarded by StorageCraft's counsel in the NetJapan Action, who apparently received the subpoena from the Burbidge Firm. Burton Decl. ¶5 & Ex. B.

The Burbidge Subpoena requires the Burbidge Firm to produce copies of "all documents produced by StorageCraft in litigation with NetJapan Holdings, Inc., et al." and "all pleadings, deposition transcripts and hearing transcripts relating to *NetJapan Holdings, Inc., et al., v. StorageCraft Technology Corp.*"  See Burton Decl. Ex. 6. The production date on the subpoena is January 25, 2008, only ten days after the subpoena was issued and served on the Burbidge firm and just over a week after the subpoena was served on StorageCraft's counsel.  Burton Decl. ¶11.

The broad scope of documents and things sought by this subpoena includes extensive documents that have been designated as "Confidential" and "Highly Confidential" under a protective order in the *NetJapan Holdings, Inc., et al., v. StorageCraft Technology Corp.* action (the "NetJapan Case").  Declaration of Thomas Russell Shreeve in Support of Motion for Protective Order ("Shreeve PO Decl.") ¶ 5; Declaration of Christopher J. Martinez in Support of Defendant's Motion for a Protective Order ("Martinez Decl.") ¶¶ 7-11. Additionally, many of these documents are not in any manner relevant to Symantec or the litigation pending in this Court.  Martinez Decl. ¶ 12. Documents and things produced by StorageCraft in the NetJapan case include communications and agreements between StorageCraft and NetJapan, StorageCraft's customers, and StorageCraft's distributors (including agreements containing express confidentiality clauses); internal StorageCraft financial information; information regarding marketing, business plans and projections, and strategy; and internal product development, including portions of source code for StorageCraft's products.  Martinez Decl. ¶ 9. Additionally, NetJapan has taken 17 depositions in the NetJapan Action, including depositions of StorageCraft officers, employees, former employees, customers and distributors.  Much of this testimony was designated as confidential or highly confidential under the protective order in the NetJapan Action.  Martinez Decl. ¶ 10.

On January 16, 2008, promptly upon learning of the Burbidge Subpoena, StorageCraft's counsel contacted Symantec's counsel in order to discuss the subpoena. Counsel spoke on January 17, but Symantec's counsel would not agree to delay the third

party's response to the subpoena until after the February 4 hearing on StorageCraft's Motion to Stay, stipulate to an earlier hearing on the Motion to Stay, nor to limit the scope of the subpoena. Burton Decl. ¶9. StorageCraft has also contacted the Burbidge Firm but has not been able to obtain an agreement that they will delay compliance or limit the scope of any production. Burton Decl. ¶10 & Ex. C.

StorageCraft is a small start-up company that was founded in late 2003. The company is in the business of developing software and systems for backup, disaster recovery, protection and migration of computer systems. StorageCraft directly competes with Symantec, a market leader in this space, and several key StorageCraft employees were previously employed by a Utah company that was then acquired by Symantec. Shreeve PO Decl. ¶2.

Symantec, on the other hand, is a large, publicly traded, multinational corporation with operations in over 40 countries worldwide. It is also in the business of developing infrastructure software and systems for security, availability, compliance and performance of its customers' software and hardware. Symantec is perhaps best known for its Norton® line of products. In April 2007 it ranked 515 in the *Fortune 1000* and claims to do business with 99% of the *Fortune 1000* companies. Needless to say, Symantec has significant resources both for business and litigation purposes. Shreeve Decl. ¶3.

Many of the documents and things that are the subject of this subpoena constitute StorageCraft's highly confidential technical documents, source code, marketing information, strategic plans and financial documents. These documents are maintained confidentially within StorageCraft. They are only shared even within the small company with those employees who need to know or use the information, and each of those employees entered into a non-disclosure agreement prior to being given access to this information. Many of the technical documents and the source code took thousands of person-hours to create. The marketing and planning documents encompass the detailed thinking and strategic planning of key employees within StorageCraft, while the financial documents provide extensive details about StorageCraft's business. Shreeve PO Decl. ¶5.

It is through the confidentiality of this information and StorageCraft's code that StorageCraft gains a competitive advantage. If Symantec (or any other competitor of StorageCraft) were to acquire access to these highly confidential technical, marketing, business strategy and financial documents or access to StorageCraft's source code, it would be devastating to StorageCraft. Shreeve PO Decl. ¶6.

### III. LEGAL ARGUMENT

A party may move for a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. Rule 26(c). Protective orders that may be issued include orders forbidding or limiting discovery, or orders specifying the terms and conditions associated with discovery, including timing. Fed.R.Civ.P. Rule 26(c) & (d); *see also* Fed.R.Civ.P. Rule 30(d) & 45(c). A subpoena must be quashed or modified when it "requires disclosure of privileged or other protected material, if no exception or waiver applies" or where it would require disclosure of "a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. Rule 45(c)(3)(A)(iii) & 45(c)(3)(B)(i). Additionally, discovery is limited to matters relevant to any party's claim or defense in the case. Fed.R.Civ.P. Rule 26(b)(1). On its own or upon a motion, the court may appropriately limit discovery. Fed.R.Civ.P. Rule 26(b).

> **A. The Burbidge Subpoena Should be Quashed or the Production Date for This Subpoena Should be Moved to After a Ruling on StorageCraft's Motion for a Stay of Discovery and Motion to Dismiss**

The timing of this discovery is entirely inappropriate. At the time Symantec issued the Burbidge subpoena, Symantec's attorneys were well aware of the fact that StorageCraft had already filed a motion for a stay of discovery and that StorageCraft's counsel did not believe third party discovery or any responses to discovery should occur prior to the Court's decision on the pending Motion to Dismiss[1]. Symantec further proceeded to set

---

[1] StorageCraft's counsel specifically discussed their belief that no third party discovery should take place prior to the hearing on the Motion to Dismiss. StorageCraft's counsel believes that Symantec's counsel at least implied that, although Symantec might propound

Case No. CV07-4731 JW
Memo of Points & Auth in Support of Motion for
Protective Order Re: Burbidge Subpoena

-5-

the production date for January 25, ten days prior to the hearing on the Motion to Stay, only ten days after the Burbidge Subpoena was issued, and only five court days after StorageCraft's counsel was served with the subpoena.  As set forth in further detail in the Motion to Stay, StorageCraft maintains that discovery in this action should not proceed until the Court rules on the Motion to Dismiss.  If this action is dismissed or transferred to Utah, where another action is pending between the parties, then consolidated discovery can proceed there.  As with nearly all the discovery in this case, the Burbidge Subpoena seeks documents and things located in Utah from a witness located in Utah, further supporting venue in Utah.

Seemingly in order to decrease StorageCraft's time to object to the subpoena, meet and confer, and bring any motion for protective order, Symantec's counsel elected not to serve a copy of the subpoena on StorageCraft's counsel at the time the third party was served and in fact, served it at the close of business two days later when there was barely one week before production was due under the subpoena.[2]  Many courts consider ten days notice of a deposition or production under a subpoena as minimum reasonable notice.  Schwartzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (TRG 2007) ¶11:1436.  Here, where Symantec only provided five business days' notice before production, particularly where Symantec knew in advance that StorageCraft objected to any third party discovery during this period of time, the timing alone justifies quashing the subpoena or extending the time for response so that StorageCraft can evaluate exactly what should and should not be produced in response to this subpoena.

---

discovery prior to the February 4 hearing date, no actual discovery production or response dates would occur prior to the motion date.

[2] While third party subpoenas need not be served immediately upon opposing counsel and counsel may meet and confer regarding third party deposition dates after service of the deponent, these rules seem to be designed to avoid a chance that opposing counsel will encourage the third party to evade service of process.  Clearly that was not an issue here with the Burbidge Subpoena, since the Burbidge Firm is anxious to comply with the subpoena.

Case No. CV07-4731 JW
Memo of Points & Auth in Support of Motion for
Protective Order Re: Burbidge Subpoena

-6-

Additionally, there is no stipulated or other protective order in place in the present litigation in order to protect confidential documents or information. Symantec's counsel has not even sought to discuss such an order. Burton Decl. ¶ 12. While all counsel would expect that a protective order will be entered into in this case, StorageCraft believes that it is a waste of client resources (particularly in terms of attorneys' fees) to engage in that negotiation in this case at this time since it is likely the case will be transferred to Utah, where that negotiation, as well as all discovery and depositions, can take place once for the entire dispute between the parties. Burton Decl. ¶12.

Symantec has not stated any need for urgency regarding this subpoena or any of the discovery in this case. The alleged acts of misappropriation that form the basis for this claim took place back in 2004. Complaint ¶5. Nothing suggests there is any continuing activity or any particular acts taking place at this time that justify urgency in this discovery. With regard to the Burbidge Subpoena in particular, the documents and things sought are in the hands of the Burbidge Firm, who is serving as opposing counsel in other pending litigation against StorageCraft. There is no reason to believe that the responsive documents and things will be lost, destroyed, modified or otherwise unavailable if this discovery is delayed.

Considering the substantial basis for requiring additional time prior to production under this subpoena and the lack of need for urgency, the production date should be delayed until twenty days after the Court rules on the Motion to Dismiss and Motion to Stay and until after entry of a protective order in this case. This will allow the overall discovery issues to be decided and, thereafter, permit StorageCraft's counsel to further address issues regarding designation and disputes regarding production of any particular documents, as further discussed below.

  **B. The Burbidge Subpoena Should be Quashed or Limited As Overbroad, Intended to Cause Annoyance and Oppression, and Seeking Trade Secrets**

The Burbidge Subpoena requires the Burbidge Firm to produce copies of "all documents produced by StorageCraft in litigation with NetJapan Holdings, Inc., et al." and

1  "all pleadings, deposition transcripts and hearing transcripts relating to *NetJapan Holdings,*
2  *Inc., et al., v. StorageCraft Technology Corp.*" Burton Decl. Ex. A. The broad scope of
3  documents and things produced by StorageCraft in the fraud, misrepresentation, and breach
4  of contract litigation with NetJapan Holdings, Inc. includes communications and
5  agreements between StorageCraft and NetJapan, StorageCraft's customers, and
6  StorageCraft's distributors (including agreements containing express confidentiality
7  clauses); internal StorageCraft financial information; information regarding marketing,
8  business plans and projections, and strategy; and internal product development, including
9  portions of source code for StorageCraft's products. Martinez Decl. ¶ 9. Additionally,
10 NetJapan has numerous confidential deposition transcripts, as described above, that are
11 also sought. Martinez Decl. ¶ 10. Many of these documents and things are not in any way
12 relevant to the claims and defenses involved in the present case. Martinez Decl. ¶12.

13         In recent years the scope of permissive discovery has been narrowed due to
14 concerns about discovery abuse. *See* Advisory Committee Notes, 2000 Amendment, Rule
15 26(b)(1). Now, under the Rules, "[p]arties may obtain discovery regarding any non-
16 privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. Rule
17 26(b)(1). "Under the amended provisions, if there is an objection that discovery goes
18 beyond material relevant to the parties' claims or defenses, the court would become
19 involved to determine whether the discovery is relevant to the claims or defenses and, if
20 not, whether good cause exists for authorizing it so long as its relevant to the subject matter
21 of the action." Advisory Committee Notes, 2000 Amendment, Rule 26(b)(1). Here, the
22 discovery is not only not relevant to the claims or defenses, but is not relevant to the
23 subject matter. The discovery exceeds the bounds of discovery permitted under Rule
24 26(b)(1) and Symantec's counsel refuses to narrow the subpoena, requiring the Court's
25 intervention.

26         Additionally, a Stipulated Protective Order was entered in the NetJapan Case which
27 allows for designation of documents produced in that litigation as "Confidential" and
28 "Highly Confidential." Martinez Decl. Ex. B. Many of the approximately 100,000 pages

of documents and all of the source code that has been produced by StorageCraft in the NetJapan Case has been designated as either "Confidential" or "Highly Confidential." Martinez Decl. ¶8. These documents and things constitute highly confidential, trade secret information. Martinez Decl. ¶¶ 9-11; Shreeve PO Decl. ¶¶ 5-6.

The protective order in the NetJapan Case does not provide for production of designated material in response to court process. Martinez Decl. ¶ 14 & Ex. B. In fact, it seems to indicate that a receiving party cannot produce the designated material to anyone except the specified parties without a court order, yet NetJapan's counsel has indicated that it intends to comply with Symantec's subpoena "in the absence of an appropriate motion . . . precluding such compliance." Martinez Decl. Ex. B. Cleverly, Symantec's counsel seeks these documents and things from opposing counsel in another case involving StorageCraft. Opposing counsel in these two cases appear to be conspiring to share information in order to harm their mutual opponent, StorageCraft. Needless to say, the Burbidge Firm is motivated to immediately produce all documents and things in compliance with the subpoena, regardless of relevance, and without providing StorageCraft with an opportunity to evaluate documents and things for relevance or confidentiality concerns, as evidenced by the correspondence from NetJapan's counsel. Burton Decl. ¶5.

Allowing StorageCraft's confidential, trade secret information to be produced publicly or even to StorageCraft's major competitor, Symantec, without a protective order in place is inappropriate. Further, production of all documents and things produced in or generated in the course of other litigation in this litigation is sought here to annoy and harass. Symantec is a very large multinational corporation with an extensive litigation department and very aggressive counsel. They are pursuing this case against a very small start up company with limited resources based on alleged acts that took place almost four years ago. To expand the necessary litigation time, energy and costs by bringing in all discovery, pleadings, deposition transcripts, pleadings, etc., from another unrelated case, particularly at this point in the case, is not justified. There certainly has been no showing that these documents would be relevant to any claims or defenses in this case.

1  　　　If any production is to be permitted under the Burbidge Subpoena, the production
2  should only be of documents that are relevant to this action.  It is clear that NetJapan's
3  counsel cannot make that determination.  Rather, StorageCraft's counsel should be
4  permitted to filter the documents the Burbidge Firm intends to produce and then only
5  produce the documents and things that are relevant to the claims or defenses in the present
6  case, as required under Rule 26(b)(1).  Even that production should not take place until an
7  appropriate protective order for confidential information is in place and until the various
8  motions have been decided.

## IV. CONCLUSION

10 　　　The Burbidge Subpoena was issued and served in order to attempt to slip in
11 extraordinarily broad and oppressive third party discovery prior to the hearings on the
12 Motion to Dismiss and Motion to Stay.  This was done without even providing prompt
13 notice of the subpoena to opposing counsel.  This type of litigation cannot be condoned.
14 The Burbridge Subpoena should be quashed in its entirety with instructions allowing for
15 the subpoena to be re-issued after the Court issues its decisions on the Motion to Dismiss
16 and Motion to Stay and after a protective order for confidential information is entered in
17 this case.  StorageCraft further requests that, if the subpoena does re-issue, it should be
18 narrowed and StorageCraft's counsel should be permitted to review the documents the
19 Burbidge Firm intends to produce in response to the subpoena, designate appropriate
20 material in conformance with the protective order in this case, and remove from production
21 materials that StorageCraft's counsel does not believe to be relevant to the claims and
22 defenses in this case.

Dated:  January 18, 2008

　　　　　　　　　　　　　　　　　GCA LAW PARTNERS LLP
　　　　　　　　　　　　　　　　　Kimberly A. Donovan


　　　　　　　　　　　　　　　　　　/S/ Kimberly A. Donovan_____
　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　STORAGECRAFT TECHNOLOGY CORP.