1   Paul S. Grewal (CSB# 196539)
    pgrewal@daycasebeer.com
2   William P. Nelson (CSB# 196091)
    wnelson@daycasebeer.com
3   DAY CASEBEER MADRID & BATCHELDER LLP
    20300 Stevens Creek Blvd., Suite 400
4   Cupertino, CA  95014
    Tel.: (408) 873-0110
5   Fax: (408) 873-0220

6
    Attorneys for Plaintiff
7   SYMANTEC CORPORATION

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  **SYMANTEC CORPORATION,**          Case No. C07 04731 JW

14                Plaintiff,           **SYMANTEC CORPORATION'S OPPOSITION TO
                                       DEFENDANT'S MOTION FOR PROTECTIVE
15       v.                            ORDER RE: SUBPOENA TO BURBIDGE,
                                       MITCHELL & GROSS**
16  **STORAGECRAFT TECHNOLOGY
    CORPORATION,**                     **DATE:      FEBRUARY 12, 2008**
17                                     **TIME:      10:00 A.M.**
18                Defendant.           **COURTROOM: 2**
                                       **JUDGE:     HONORABLE HOWARD R. LLOYD**
19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ........................................................................................................ 2

    A.    2003: Symantec's Acquisition of PowerQuest Corporation............................ 2

    B.    2003-2004: The Formation by Former PowerQuest Employees of ShadowStor, Inc. and Later StorageCraft Technology Corporation................ 3

    C.    2005: StorageCraft's Denial That Any "Use of Confidential Information Belonging to PowerQuest Has Occurred" ..................................... 4

    D.    December 2006: NetJapan Holdings, Inc. Files Suit Against StorageCraft and the Four Former PowerQuest Employees Alleging Fraud ........................................................................................... 5

    E.    August 24, 2007: Symantec First Learns That its Confidential Information—Including Employee Social Security and Salary Information—Was Stolen by StorageCraft.......................................... 7

    F.    September 13, 2007- Present: StorageCraft Seeks at Every Turn to Avoid Providing Symantec With Discovery Concerning its Conduct ................................................................................................. 8

III. ARGUMENT .......................................................................................................... 10

    A.    The Scope of Symantec's Subpoena is Appropriate, as the Burbidge Documents Comprise Information Likely to Lead to Admissible Evidence in this Case................................................................. 10

        1.    Legal Standard ............................................................................. 10

        2.    The Discovery Provided by StorageCraft to NetJapan is Relevant to This Action, Because the Facts, Conduct and Legal Theories Alleged by NetJapan Overlap Completely With This Action ........................................................................ 11

        3.    Each of the Categories of Documents Identified by StorageCraft as Comprising its Production to NetJapan is Reasonably Calculated to Lead to the Discovery of Admissible Evidence in this Action................................................. 13

    B.    The Burbidge Documents are a Proper Subject for Subpoena, in Light of StorageCraft's Repeated Efforts to Delay Discovery and Symantec's Urgent Need to Obtain Discovery and Verify its Completeness ................................................................................................ 16

    C.    Symantec Will Agree to Maintain the Confidentiality of the StorageCraft Documents ...................................................................................... 20

IV. CONCLUSION........................................................................................................ 21

## TABLE OF AUTHORITIES

Page

**Cases**

*Beinin v. Ctr. for the Study of Popular Culture*,
   No. C 06-2298 JW (RS), 2007 U.S. Dist. LEXIS 22518 (N.D. Cal. Mar. 16, 2007) ............... 11

*DIRECTV, Inc. v. Richards*,
   No. Civ. 03-5606 (GEB), 2005 WL 1514187 (D. N.J. 2005) ................................................... 11

*Foltz v. State Farm Mut. Auto Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ............................................................................................ 11

*Micron Tech. v. Tessera*,
   No. C06-80093 MISC. JW (HRL), 2006 U.S. Dist. LEXIS 42076 (N.D. Cal. Jun. 14,
   2006) ........................................................................................................................... 10, 11

*New Park Entm't. L.L.C. v. Elec. Factory Concerts, Inc.*,
   No. Civ. A. 98-775, 2000 WL 62315 (E.D. Pa. Jan. 13, 2000) ................................................ 17

*Truswal Sys Corp. v. Hydro Air Eng'g Inc.*,
   813 F.2d 1207 (Fed. Cir. 1987) ............................................................................................ 11

*Wells v. GC Services LP*,
   No. C06-03511, 2007 WL 1068222 (N.D. Cal. Apr. 10, 2007) ................................................. 1

**Statutes**

Fed R. Civ. P. 26(b) ....................................................................................................... 10, 11

I.    **INTRODUCTION**

StorageCraft's motion for a protective order against third-party discovery is but the latest round in its desperate, months-long effort to prevent Symantec from initiating discovery regarding StorageCraft's acts of trade secret misappropriation and unfair competition. At every turn since Symantec filed this litigation five months ago—on the basis of remarkable evidence of StorageCraft's misconduct *derived from the very document pool that StorageCraft seeks to conceal from Symantec with this motion*—StorageCraft has sought to delay the onset of discovery. StorageCraft has moved to transfer this action to Utah. It has unilaterally cancelled the scheduled Rule 26(f) conference, forcing Symantec to file a motion for expedited discovery. It has filed a motion to stay discovery that is now before the District Judge. It has refused to enter into a protective order for this case, a refusal it now uses as a basis to oppose third-party discovery. And now, StorageCraft has filed this motion for a protective order.[1]

Apart from its desperation to avoid discovery, there is no basis for StorageCraft's motion. Symantec's subpoena to Burbidge Mitchell & Gross ("Burbidge") seeks only information that is likely to lead to the discovery of admissible evidence in this action. Indeed, the very few documents Symantec has seen from the document collection it now seeks to obtain in its entirety provide the direct evidence of trade secret misappropriation and unfair competition that motivated Symantec's filing of its complaint.

StorageCraft's motion rests on the demonstrably false premise that Symantec's subpoena is somehow overbroad, because StorageCraft's production of documents to NetJapan Holdings, Inc. ("NetJapan") in connection with its litigation with NetJapan contains documents with no relevance

---

[1] StorageCraft's motion repeatedly urges the Court to "quash" Symantec's subpoena to third party Burbidge, Mitchell & Gross. As this Court has previously ruled, it has no authority to quash a subpoena issued from a different federal district court, as is the case here. *Wells v. GC Services LP*, No. C06-03511, 2007 WL 1068222 at *1 (N.D. Cal. Apr. 10, 2007) (attached as Declaration of Paul S. Grewal in Support of Symantec's Opposition to StorageCraft's Motion for Protective Order ("Grewal Decl."), Ex. A). However, it is within this Court's authority to issue a protective order in connection with such a subpoena. *Id.* Indeed, in light of StorageCraft's unwillingness to enter into a protective order for this case, Symantec urges the Court to issue an interim protective order mandating treatment of the Burbidge production on an "outside counsel eyes only" basis pending entry of a proper protective order in this action.

1   to this litigation. Yet StorageCraft's own motion demonstrates that the entirety of that production is
2   in fact well within the scope of discoverable information in this litigation. NetJapan's complaint
3   against StorageCraft alleges facts regarding StorageCraft's conduct, in particular the conduct of four
4   StorageCraft executives who are former employees of PowerQuest Corporation (now a Symantec
5   company), that overlap completely with facts and legal theories that are a key basis for Symantec's
6   complaint in this action. Perhaps unsurprisingly, given that Symantec's complaint also alleges
7   serious misconduct by StorageCraft and the former PowerQuest employees during the same time
8   frame, each and every one of the six categories of information identified by StorageCraft as
9   comprising its production to NetJapan are directly relevant to this litigation and are therefore
10  discoverable.

11         StorageCraft's other litany of complaints about Symantec's subpoena to Burbidge are
12  similarly meritless. There is nothing inappropriate about the timing of either Symantec's subpoena
13  or notice of that subpoena to StorageCraft—StorageCraft received notice of the subpoena within a
14  day of its service. By detailing StorageCraft's unfair competition with Symantec, the declaration
15  and supporting exhibits submitted by one of the StorageCraft executives, purporting to demonstrate
16  that the documents he misappropriated were not in fact trade secrets, serve only to underscore the
17  urgency of Symantec's need for the discovery it now seeks. Finally, Symantec is willing to maintain
18  the confidential status of the subpoenaed documents by treating them on an "outside counsel eyes
19  only" basis pending the entry of the protective order in this case that StorageCraft has thus far
20  refused to negotiate—just as Symantec has done for Symantec documents marked "highly
21  confidential" produced in connection with StorageCraft's litigation with NetJapan.

22         After months of delay by StorageCraft, it is time for discovery in this action to begin.
23  Symantec's subpoena to Burbidge is proper, and StorageCraft's motion should be denied.

24  **II.    BACKGROUND**

25         **A.    2003: SYMANTEC'S ACQUISITION OF POWERQUEST CORPORATION**

26         Headquartered in Cupertino, California, Symantec is the world's leading provider of
27  infrastructure and computer security software for enterprise and personal use. Ninety-nine percent
28  of the companies listed in the Fortune 1000 do business with Symantec. Symantec products such as

1    Norton Antivirus, Norton Internet Security, and Norton 360 protect millions of consumers from the

2    threat of malicious software, spam email, and online attacks.  In the past year, Symantec was named

3    one of IT Week's "Top 50 Technology Innovators."

4         On December 8, 2003, Symantec completed its acquisition of PowerQuest Corporation,

5    including PowerQuest's line of system imaging products known collectively as "V2i Protector."[2]

6    Such products enable the recovery of a computer system from an "image" of that computer's hard

7    drive in the event of a hardware failure.  In the months leading up to the acquisition, Symantec and

8    PowerQuest engaged in extensive planning activities related to the integration of the PowerQuest

9    employees and product line with the rest of Symantec.[3]

10         One product of these planning activities was an electronic "Employee Data List" titled

11    "Master emp list 12_18v1" comprising a series of spreadsheets created using the Microsoft Excel

12    program.[4]  The purpose of the Employee Data List was to memorialize Symantec's strategic

13    decision-making concerning the proposed staffing and organization of the new Symantec business

14    unit to be formed from the PowerQuest acquisition.[5]  The spreadsheets in the workbook depict a

15    variety of confidential and trade secret information concerning the more than 270 PowerQuest

16    employees, including each employee's targeted salary, bonus, commission, hire date, proposed

17    Symantec job code, proposed Symantec job title, home addresses, home phone number, birthdate,

18    gender, and Social Security numbers.[6]

19

20    **B.    2003-2004: The Formation by Former PowerQuest Employees of ShadowStor, Inc. and Later StorageCraft Technology Corporation**

21         Among those PowerQuest employees electing to terminate their employment upon or prior to

22    the completion of Symantec's acquisition of PowerQuest were Thomas (Russ) Shreeve, Brandon

23    Nordquist, Curt James, Scott Barnes, and Mike Kunz.  As alleged in Symantec's complaint, each of

24

25    [2] *See* Grewal Decl., Ex. B at ¶ 4.

26    [3] *See id.*

27    [4] *See id.* at ¶¶ 4-5.

   [5] *See id.* at ¶¶ 5-6.

28    [6] *See id.* at ¶¶ 7-8.

1  these individuals enjoyed both exposure to and access to PowerQuest trade secret information during

2  the course of his employment. Each individual also signed employment and confidentiality

3  agreements that bound them to a duty to maintain the confidentiality of PowerQuest's confidential

4  information, and not to use or disclose that information except in connection with their duties as

5  PowerQuest employees.[7]

6      Unbeknownst to Symantec, on or before terminating their employment with PowerQuest,

7  Messrs. Shreeve, Nordquist, James, and Barnes formed ShadowStor Incorporated ("ShadowStor"), a

8  company similarly engaged in developing and licensing backup and restoration software.[8] On

9  September 7, 2004, ShadowStor merged with StorageCraft, Incorporated, a company that had

10  previously licensed source code to PowerQuest in 2002 used to develop PowerQuest's V2i Protector

11  product.[9] The company resulting from the ShadowStor-StorageCraft, Incorporated merger is now

12  known as StorageCraft Technology Corporation, or simply StorageCraft.

13

14  ### C.    2005: STORAGECRAFT'S DENIAL THAT ANY "USE OF CONFIDENTIAL INFORMATION BELONGING TO POWERQUEST HAS OCCURRED"

15      In November 2004, StorageCraft's founder and former CEO, Jamey Kirby, wrote to

16  Symantec and revealed that Russ Shreeve, Mr. Nordquist, Mr. James, and Mr. Barnes were

17  employed at StorageCraft, and were working on "producing a competing product to V2i Protector"

18  (referring to PowerQuest's V2i product), in violation of non-compete agreements they signed while

19  at PowerQuest.[10] Kirby's email further stated that the "new product requirements specifications" for

20  StorageCraft's planned competitor product "were the V2i Protector documentation," and that "I am

21  sure Scott Barnes is using PowerQuest knowledge" to build the competing StorageCraft product.[11]

22      Kirby's e-mail triggered concern that StorageCraft had misappropriated Symantec trade

23

---

24  [7] See, e.g., Grewal Decl., Ex. C at ¶ 19.

25  [8] Id. at ¶¶ 20-21.

26  [9] See, e.g., Declaration of Christopher J. Martinez in Support of Motion for Protective Order re: Subpoena to Burbidge, Mitchell & Gross ("Martinez Decl.") (Document No. 58), Ex. A; Grewal Decl., Ex. D.

27

28  [10] Grewal Decl., Ex. E.

[11] Id.

1   secrets through the employment of the former PowerQuest employees, and used those trade secrets

2   to develop a competing product.  Symantec immediately contacted StorageCraft in writing with a

3   letter dated December 23, 2004 to request an explanation.[12]  In response, on January 6, 2005,

4   StorageCraft denied that any former PowerQuest employee had violated his PowerQuest

5   employment agreement or had otherwise made use of any PowerQuest confidential information:

6   "[N]o . . . use of confidential information belonging to PowerQuest has occurred."[13]  StorageCraft

7   further represented it was "incorrect" that any of the former PowerQuest employees had "created a

8   product designed to compete with Symantec's V2i Protector:"

> Prior to [September 7, 2004], these former PowerQuest employees
> were employed by ShadowStor.  At ShadowStor, they were involved
> in the development and marketing of . . .system security and disaster
> prevention products.  ***Prior to, and since the merger, they have been,
> and are, involved in the development and marketing of updated
> versions of [these] products,*** which will be released this month.  ***None
> of these products is competitive with V2i*** or uses any confidential
> information which belonged to PowerQuest.[14]

14   Although the parties exchanged further letters, including a letter from Thomas J. Shreeve

15   (now StorageCraft CEO and father to Russ Shreeve) on March 15, 2005 threatening the right to

16   terminate Symantec's rights under StorageCraft's source license agreement with PowerQuest,[15]

17   StorageCraft continued to deny that it had acquired any PowerQuest or Symantec confidential

18   information.  Following a further exchange of letters, all communications on these topics ceased

19   thereafter for more than two years, based on Symantec's reliance in good faith on StorageCraft's

20   representation that it had not misappropriated trade secrets.

21   **D.    DECEMBER 2006: NETJAPAN HOLDINGS, INC. FILES SUIT AGAINST
22         STORAGECRAFT AND THE FOUR FORMER POWERQUEST EMPLOYEES ALLEGING
        FRAUD**

23   In December 2006, NetJapan Holdings, Inc. ("NetJapan"), a Japanese corporation, filed suit

24   in Utah state court against StorageCraft, and Messrs. Shreeve, Barnes, James, Nordquist and others

25   _____

26   [12] Grewal Decl., Ex. F.

27   [13] Grewal Decl., Ex. G.

     [14] *Id.* at 3-4 (emphasis supplied).

28   [15] Grewal Decl., Ex. D.

1 (including StorageCraft CEO Thomas J. Shreeve) as individual defendants, alleging fraud, negligent

2 misrepresentation, and breach of contract.[16]  As alleged in NetJapan's complaint, beginning in

3 March 2004 and continuing through November 2006, StorageCraft and the former PowerQuest

4 employees fraudulently induced NetJapan to invest or loan StorageCraft well over a million dollars,

5 by promising—but ultimately failing—to timely develop and market a viable competitor product to

6 PowerQuests's V2i Protector product.[17]

7          NetJapan's complaint alleges facts that are sharply at odds with StorageCraft's

8 representations to Symantec in 2005 about whether the former PowerQuest employees were

9 developing a competitor product to V2i using PowerQuest confidential information.  Paragraph 14 of

10 that complaint alleges that on May 13, 2004, NetJapan met with former PowerQuest employees

11 Shreeve, Barnes, and James, as well as StorageCraft executive Thomas J. Shreeve.  At the meeting,

12 "NetJapan discussed its need for software to substitute for Symantec's V2i protector software."[18]  In

13 response, eight months before StorageCraft flatly denied to Symantec in January 2005 that the

14 former employees had ever worked on a competing product, ***"ShadowStor advised NetJapan of its***

15 ***plans to develop a product similar to V2i protector called 'Shadowback.'"***[19]  Paragraph 16 of the

16 NetJapan complaint alleges that on July 1, 2004, Thomas J. Shreeve, on behalf of ShadowStor:

17              requested that NetJapan help ***finance "the development cost for a V2i***
               ***protector-like product."***  In particular, ShadowStor requested that
18              NetJapan loan ShadowStor $150,000 so that ShadowStor could
               complete and release the ShadowBack software and so that NetJapan
19              could release the product in Japan in early December 2004.[20]

20 Shreeve's request for funding to develop a competitor product was made six months before

21 StorageCraft represented to Symantec that ShadowStor's development efforts had been limited to

22 "system security and disaster prevention products," and had ***not included any work on a competitor***

23

24 _____

25 [16] Martinez Decl., Ex. A.

26 [17] *Id.* at ¶¶ 13-41.

27 [18] *Id.* at ¶ 14.

   [19] *Id.*

28 [20] *Id.* at ¶ 16.

1 | *to V2i Protector.*[21]  If true, NetJapan's allegations demonstrate that not only did StorageCraft and the

2 | former PowerQuest employees plan to develop a competitor product at least as early as March 2004,

3 | they intended to do so on a tight time schedule—by December 2004.

4 |       **E.**      **AUGUST 24, 2007: SYMANTEC FIRST LEARNS THAT ITS CONFIDENTIAL**

           **INFORMATION—INCLUDING EMPLOYEE SOCIAL SECURITY AND SALARY**

5 |            **INFORMATION—WAS STOLEN BY STORAGECRAFT**

6 |       On July 23, 2007, more than two and one half years after Symantec initially raised its trade

7 | secret concerns with StorageCraft, Symantec was served with a subpoena issued by the Superior

8 | Court of California, County of Santa Clara as part of the dispute pending in Utah between

9 | StorageCraft and NetJapan.[22]  On August 23, 2007, Symantec appeared for the deposition at the

10 | Cupertino, California offices of its counsel.[23]

11 |       During the deposition, Symantec was presented with documents, ***all of which were part of***

12 | ***StorageCraft's document production to NetJapan*** (the same document collection Symantec now

13 | seeks), showing that StorageCraft had illegally acquired Symantec's "Employee Data List," the

14 | confidential and trade secret series of Microsoft Excel worksheets prepared by Symantec to

15 | memorialize key strategic decisions surrounding Symantec's late 2003 acquisition of PowerQuest

16 | Corporation, including recommended positions, pay, and bonus structures for the newly acquired

17 | employees.[24]  The Employee Data List also included sensitive personal information, such as Social

18 | Security numbers, for more than 270 current and former employees.[25]

19 |       The Cupertino deposition also revealed that StorageCraft stole these trade secrets in

20 | coordination with Messrs. Shreeve, James, Barnes, and Nordquist, the former PowerQuest

21 | employees who declined offers to stay with Symantec after the acquisition, and who now comprise

22 | StorageCraft's senior management.  In particular, on March 23, 2004—the same time period in

23 | which StorageCraft and ShadowStor were apparently in discussions with NetJapan to develop a

24 |

---

25 | [21] Grewal Decl., Ex. G at 3-4.

26 | [22] Grewal Decl. at ¶ 4.

27 | [23] *Id.*

[24] *Id.* at ¶¶ 6-7.

28 | [25] Grewal Decl., Ex. C at ¶¶ 26-28.

1   competitor product to V2i on a fast track—StorageCraft Vice President Brandon Nordquist

2   electronically transmitted the Employee Data List to Michael Kunz, another former PowerQuest

3   employee and current StorageCraft executive.  The file name of the document was altered from

4   "Master_emp_list" to "kidspics" in a transparent attempt to cover up the theft. Mr. Nordquist's one-

5   line cover email reflected that he clearly understood the sensitivity of the stolen trade secrets:  "Keep

6   this under control."[26]

7          Other documents used at the August 23 deposition—and produced by StorageCraft to

8   NetJapan in their litigation—strongly suggest that other Symantec trade secrets, including

9   proprietary marketing materials and software development documents, also were misappropriated

10   during this same time period.  For example, one StorageCraft email dated October 2004 that is part

11   of StorageCraft's production of documents to NetJapan discusses altering "V2i documents

12   forwarded from" one of the former PowerQuest employees.[27]  Another email suggests that

13   StorageCraft had altered PowerQuest/Symantec product documents to "ensure they are not too PQ

14   ish or that someone would recognize them if they saw them."[28]

15          Confronted with irrefutable proof that former StorageCraft CEO Kirby had told the truth in

16   2004 (and StorageCraft had not), and that Symantec's trade secrets and its employees' personal

17   information had been stolen by a direct competitor in close coordination with several former

18   employees, Symantec filed this action on September 13, 2007.

19
20   **F.     SEPTEMBER 13, 2007- PRESENT: STORAGECRAFT SEEKS AT EVERY TURN TO
           AVOID PROVIDING SYMANTEC WITH DISCOVERY CONCERNING ITS CONDUCT**

21          In the nearly five months since Symantec filed this action, StorageCraft has repeatedly

22   sought to delay the commencement of discovery.  First, rather than answer Symantec's complaint,

23   StorageCraft filed a transfer motion.[29]  In connection with that effort, StorageCraft also brought

24
      _____

25   [26] Grewal Decl., Ex. H.

26   [27] 1/18/08 Declaration of William P. Nelson in Support of Symantec Corporation's Opposition to
      StorageCraft's Cross-Motion to Stay Discovery, Initial Disclosures and Case Management, Ex. H
27   (filed under seal).

28   [28] *Id.*, Ex. I (filed under seal).

     [29] Defendant's Amended Notice of Motion and Motion to Dismiss or, in the Alternative, to Transfer

1  claims against Symantec in federal district court in Utah, thereafter filing a Notice of Pendency of

2  Other Action before this Court pursuant to Civil L.R. 3-13.[30]  StorageCraft also has refused to enter

3  into a protective order to govern discovery in this action until after its motion to transfer is

4  resolved.[31]

5      Even given the pendency of StorageCraft's transfer motion, discovery in this action would

6  have begun more than a month ago had StorageCraft timely renoticed hearing on its transfer motion,

7  in compliance with the October 31, 2007 Reassignment Order informing counsel that "ALL

8  MATTERS PRESENTLY SCHEDULED FOR HEARING ARE VACATED AND SHOULD BE

9  RENOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THE CASE HAS BEEN

10  REASSIGNED."[32]  Instead, StorageCraft renoticed the hearing on its motion—for a date three

11  months later than its original noticed date of December 4, 2007—only after it was informed by

12  Symantec in late November that there was no hearing set before the District Judge.[33]  StorageCraft

13  then unilaterally declined to participate in the Rule 26(f) conference, which had been scheduled for

14  December 21, 2007, following the District Judge's rescheduling of the Case Management

15  Conference in light of the new later date for StorageCraft's motion.[34]  Symantec immediately moved

16  for "expedited" discovery aimed at starting the delayed discovery process.

17      Following Symantec's filing of its motion, the District Judge's Order of January 4, 2008[35]

18  advanced "the Case Management Conference currently set for March 17, 2008 to February 4, 2008,"

19  and ordered that, "[p]ursuant to the Civil Local Rules of the Court, the parties shall meet and confer

20  and file a Joint Case Management Statement by January 25, 2008."[36]  In response, StorageCraft filed

21

22  _____

23  the Action (Document No. 28).

    [30] Notice of Pendency of Other Action or Proceeding (Document No. 31).

24  [31] See Joint Case Management Conference (Document No. 72), at 8.

25  [32] Grewal Decl., Ex. I (emphasis in original).

    [33] Grewal Decl., Ex. J.

26  [34] Grewal Decl., Ex. K.

27  [35] 1/4/08 Order Granting Plaintiff's Motion to Shorten Time; Advancing Hearing on Motions
    (Document No. 37), at 2.

28  [36] Id.

1   a motion to stay discovery, arguing that discovery, although already overdue, was "early" and

2   "premature" in light of its pending transfer motion.[37]   Nonetheless, as required by Fed. R. Civ. P.

3   26(f), the parties met and conferred on January 14, 2008, and on that same day Symantec served

4   discovery on StorageCraft, as permitted under Fed. R. Civ. P. 26(d)(1).   At the Rule 26(f)

5   conference, Symantec also informed counsel for StorageCraft of its intention to serve third-party

6   discovery.[38]   On January 15, 2008, Symantec served a subpoena for documents[39] on Burbidge,

7   Mitchell & Gross, counsel for NetJapan in the Utah state litigation between NetJapan and

8   StorageCraft.   That subpoena seeks production of the documents produced to NetJapan by

9   StorageCraft—the document pool from which the evidence revealed at the August 2007 deposition

10  derives—as well as pleadings and deposition and hearing transcripts.   One day later, counsel for

11  NetJapan provided a copy of the subpoena to StorageCraft; the day after that, Symantec did the

12  same.[40]   On January 18, StorageCraft brought this motion to prevent Burbidge from complying with

13  the subpoena.

14  **III.    ARGUMENT**

15      **A.    THE SCOPE OF SYMANTEC'S SUBPOENA IS APPROPRIATE, AS THE BURBIDGE**
16           **DOCUMENTS COMPRISE INFORMATION LIKELY TO LEAD TO ADMISSIBLE**
             **EVIDENCE IN THIS CASE**

17          **1.    Legal Standard**

18      The Federal Rules set out a "broad relevancy standard:"[41]   "Parties may obtain discovery

19  _____

20  [37] StorageCraft's Memorandum in Opposition to Plaintiff's Motion for Expedited Discovery and in
    Support of Defendant's Cross-Motion for a Stay of Discovery (Document No. 40), at 4.  Symantec
21  withdrew its motion for expedited discovery following the commencement of discovery under Fed.
    R. Civ. P. 26(d).

22  [38] Grewal Decl. at ¶ 8.

23  [39] Grewal Decl., Ex. L.  StorageCraft's Motion erroneously describes the subpoena to Burbidge as
    one seeking a "deposition," and on that basis suggests that Symantec violated Civil. L.R. 30-1 by
24  failing to "confer about the scheduling of the deposition with opposing counsel."  StorageCraft's
    Memorandum of Points and Authorities in Support of Motion for Protective Order re: Subpoena to
25  Burbidge Mitchell & Gross ("StorageCraft Memo.") (Document No. 55), at 2.  Symantec's subpoena
    to Burbidge seeks only documents, not a deposition (a fact apparently understood by StorageCraft,
26  given its use of quotation marks around the word "deposition" in its brief); as such, Civil. L.R. 30-1
    was not implicated.

27  [40] StorageCraft Memo at 2.

28  [41] *Micron Tech. v. Tessera*, No. C06-80093 MISC. JW (HRL), 2006 U.S. Dist. LEXIS 42076 at *4
    (N.D. Cal. Jun. 14, 2006) (attached as Grewal Decl., Ex. M).

1   regarding any matter, not privileged, that is relevant to the claim or defense of any party."[42]

2   Discovery requests are "relevant when they seek admissible evidence or evidence that is 'reasonably

3   calculated to lead to the discovery of admissible evidence,'"[43] and the "relevancy requirement has

4   been construed broadly and liberally in order to ensure mutual knowledge of all relevant facts."[44]

5   This same relevancy standard applies to third-party subpoenas.[45] The "factors required to be

6   balanced by the trial court in determining the propriety of a subpoena are the relevance of the

7   discovery sought, the requesting party's need, and the potential hardship to the party subject to the

8   subpoena."[46] In order to show good cause to grant its motion, StorageCraft "bears the burden, for

9   each particular document it seeks to protect, of showing that specific prejudice or harm will result if

10   no protective order is granted."[47]

11           **2.**     **The Discovery Provided by StorageCraft to NetJapan is Relevant to This Action, Because the Facts, Conduct and Legal Theories Alleged by**

12                     **NetJapan Overlap Completely With This Action**

13       Symantec's subpoena to Burbidge easily meets the "broad relevancy standard" of the Federal

14   Rules. In substantial part, Symantec's claims for trade secret misappropriation and unfair

15   competition in this action, and its theory of the case, arise out of facts and events that are at the core

16   of NetJapan's claims as well—namely, the unethical conduct of StorageCraft and the four former

17   PowerQuest employees who are now senior StorageCraft executives. Putting aside a key empirical

18   indicia of relevance—which is the fact that the documents Symantec now seeks in their entirety have

19   already proven to provide remarkable evidence of StorageCraft's misconduct after being revealed in

20   part—simple examination of the allegations made in Symantec's complaint in comparison with those

---

22   [42] Fed R. Civ. P. 26(b)(1).

23   [43] *Micron Tech.,* 2006 U.S. Dist. LEXIS 42076 at *4 (attached as Grewal Decl., Ex. M) (citing Fed. R. Civ. P. 26(b)(1)); *see also Beinin v. Ctr. for the Study of Popular Culture*, No. C 06-2298 JW

24   (RS), 2007 U.S. Dist. LEXIS 22518 at *4 (N.D. Cal. Mar. 16, 2007) (attached as Grewal Decl., Ex. N).

25   [44] *DIRECTV, Inc. v. Richards*, No. Civ. 03-5606 (GEB), 2005 WL 1514187 at *3 (D. N.J. 2005) (attached as Grewal Decl., Ex. O)).

26   [45] *See Micron Tech.*, 2006 U.S. Dist. LEXIS 42076 at *4 (citing *Truswal Sys Corp. v. Hydro Air*

27   *Eng'g Inc.*, 813 F.2d 1207, 1209-12 (Fed. Cir. 1987) (attached as Grewal Decl., Ex. M).

  [46] *Id.*

28   [47] *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

1  made by NetJapan demonstrates that the scope of relevant information produced by StorageCraft in

2  the NetJapan litigation is entirely within the scope of proper discovery in this action.

3        As discussed *supra,* NetJapan's complaint alleges that StorageCraft and the former

4  PowerQuest employees fraudulently induced NetJapan to invest in StorageCraft, on the basis of

5  promises to develop a competitor to PowerQuest and Symantec's V2i Protector product.  For

6  example, the NetJapan complaint alleges that former PowerQuest employee James contacted

7  NetJapan on March 10, 2004 "to promote software being developed by ShadowStor,"[48] and that on

8  May 13, 2004, "ShadowStor advised NetJapan of its plans to develop a product similar to V2i

9  protector called 'Shadowback.'"[49]  Similarly, in ***this*** action, Symantec's complaint alleges that

> 20.    On information and belief, prior to or following the termination of their employment with PowerQuest on December 8, 2003, Nordquist, Shreeve, James, and Barnes formed the entity known as ShadowStor Incorporated to carry out the plan to unfairly compete with PowerQuest and Symantec, in collaboration with StorageCraft Incorporated.

> 21.    On information and belief, both prior to and following the termination of their employment with PowerQuest, Nordquist, Shreeve, James, and Barnes, as well as ShadowStor CEO Thomas J. Shreeve (father of Thomas Russ Shreeve), jointly conspired with StorageCraft Incorporated, StorageCraft's predecessor-in-interest, to develop, market, and sell a system imaging and restoration software product to compete with the PowerQuest V2i Protector line of software.[50]

19        NetJapan's  complaint further alleges that on July 1, 2004 Thomas J. Shreeve, on behalf of

20  ShadowStor, solicited funding from NetJapan in connection with an aggressive schedule for the

21  development of a "V2i protector-like product" that would be released less than six months later, in

22  December 2004.[51]  This time period overlaps precisely with acts of trade secret misappropriation and

23  unfair competition alleged in Symantec's complaint and identified in Symantec's identification of

26  [48] Martinez Decl., Ex. A at ¶ 13.

27  [49] *Id.* at ¶ 14.

28  [50] Grewal Decl., Ex. C.
   [51] Martinez Decl., Ex. A at ¶ 16.

1    trade secrets pursuant to Cal. Code Civ. Pro. § 2019.210:[52]

2               29.     On March 15, 2004, former PowerQuest employee Nordquist,
            who, upon information and belief, was at that time a principal of
3           StorageCraft's predecessor-in-interest ShadowStor, electronically
            transmitted the Employee Data List to Mike Kunz.  According to
4           StorageCraft's web site, Mr. Kunz is currently Senior Director of Sales
            at StorageCraft.[53]
5

6    An important part of Symantec's case will be that StorageCraft and the PowerQuest employees

7    conspired to build a V2i competitor as early as late 2003, and agreed to an overly aggressive

8    schedule for the delivery of its V2i competitor to NetJapan in order to secure NetJapan's agreement

9    to fund that development effort.  In order to meet that schedule, StorageCraft, through the former

10   PowerQuest employees, misappropriated the trade secrets and other confidential information of

11   PowerQuest and Symantec.  For example, StorageCraft's misappropriation of Symantec's Employee

12   Data List provided it key information about salaries, bonuses, and job titles necessary to hire talent

13   away from Symantec in order to develop the competing product.

14         StorageCraft and ShadowStor's course of dealing with NetJapan, which is the subject of

15   NetJapan's complaint and the object of NetJapan's discovery upon StorageCraft, is therefore

16   necessarily at issue in this action, because it is the setting, and apparently a key motivation, for much

17   of the wrongful conduct alleged by Symantec.  As such, Symantec's subpoena, which seeks

18   StorageCraft's production of documents to NetJapan in response to NetJapan's discovery requests,

19   as well as pleadings and transcripts from that case, is "reasonably calculated to lead to the discovery

20   of admissible evidence."[54]

21         **3.      Each of the Categories of Documents Identified by StorageCraft as
                 Comprising its Production to NetJapan is Reasonably Calculated to Lead
22               to the Discovery of Admissible Evidence in this Action**

23         A key premise underlying StorageCraft's motion for a protective order is that Symantec's

24   subpoena to Burbidge seeking StorageCraft's document production is overbroad, because "many of

25

26   _____

27   [52] Grewal Decl., Ex. P.
     [53] Grewal Decl., Ex. C.
28   [54] Grewal Decl., Ex. L.

1    these documents are not in any manner relevant to Symantec or the litigation pending in this

2    Court."[55]  In light of the undeniable commonalities between the facts and conduct at issue in the

3    NetJapan litigation and those at issue in this litigation, this premise is demonstrably false.  All of the

4    documents described by StorageCraft as comprising its production are relevant to this action and

5    therefore discoverable.

6         Through a sworn declaration by counsel, StorageCraft describes its production to NetJapan,

7    as well as the deposition transcripts in that case, as comprising the following categories of

8    documents:

9    (a)    Communications with NetJapan concerning its investments in StorageCraft and
            distribution of StorageCraft's products in Japan;
10   (b)    Internal financial information including the companies' complete general ledger for
            certain time periods, billing and payment information, vendor information, corporate
11          tax returns and related materials; financial statements; revenue projections; and
            detailed sales date;
12   (c)    Substantial volumes of information concerning StorageCraft's marketing, business
            plan, and strategy;
13   (d)    Business plans, projections, and related communications;
14   (e)    Communications with StorageCraft's distributors, resellers, and customers;
     (f)    Internal product development information and communications, including portions of
15          the source code for StorageCraft's software products; and
16   (g)    Agreements with StorageCraft distributors and customers.[56]

17        Each of these seven categories of documents fall easily within the scope of proper discovery

18   in this action, in light of the allegations in Symantec's complaint, Symantec's identification of trade

19   secrets pursuant to § 2019.210, and the remarkable evidence of misconduct by StorageCraft

20   demonstrated by the very few documents that Symantec has already seen that were produced by

21   StorageCraft in the NetJapan litigation.

22        As to Category (a), the communications between NetJapan and StorageCraft regarding

23   NetJapan's investment in StorageCraft are plainly relevant to, among other things, both

24   StorageCraft's motivation to engage in trade secret misappropriation and unfair competition, as

25   discussed *supra,* and the issue of whether StorageCraft did in fact engage in this conduct.

26

27   [55] StorageCraft Memo. at 3, 8.

28   [56] Martinez Decl. at ¶ 9(a)-(g).

1    Category (b) of StorageCraft's production, concerning StorageCraft and ShadowStor's

2   finances, is again relevant to the same issues as Category (a), but also is directly relevant to the issue

3   of damages. In line with former StorageCraft CEO Kirby's November 2004 email, as well as other

4   evidence, Symantec's complaint alleges that "StorageCraft's ShadowProtect line of products, which

5   compete with Symantec's Backup Exec System Recovery products, have been developed, marketed,

6   and sold by and through StorageCraft's acts of unfair competition and misappropriation of trade

7   secrets."[57] Symantec is entitled to discovery concerning the financial dimensions of that conduct.

8    As to Categories (c) and (d), which concern StorageCraft's business plans, strategies, and

9   forecasts, Symantec has alleged that that a key component of StorageCraft's strategy was to unfairly

10  compete with Symantec by utilizing Symantec's confidential and trade secret information.

11  Symantec has submitted documents to this Court in support of that allegation. It is surely entitled to

12  seek further proof of that allegation through discovery of those planning documents. Moreover, as

13  demonstrated *infra* in connection with the declaration of former PowerQuest employee Nordquist,

14  submitted in support of StorageCraft's motion, substantial components of StorageCraft's business

15  and marketing plans appear to be copied from proprietary PowerQuest and Symantec materials

16  without authorization.

17    Categories (e) and (g) of StorageCraft's production, concerning StorageCraft's relationships

18  with its distributors and resellers, are relevant not only to damages in this action, but also to liability.

19  StorageCraft represented to NetJapan, one of its distributors, that in conjunction with the former

20  PowerQuest employees, it would develop a competitor to Symantec's V2i product in a short time

21  frame. Symantec is aware of specific evidence suggesting that StorageCraft did so through the

22  misappropriation of Symantec trade secrets. Symantec is entitled to discovery concerning what

23  similar representations and inducements StorageCraft may have made to other distributors and

24  resellers than NetJapan.

25    Finally, Category (f) of StorageCraft's production, concerning StorageCraft's internal

26  product development information, including source code, is indisputably relevant to this action.

27

28  [57] Grewal Decl., Ex. C at ¶ 34.

1  Symantec has alleged that StorageCraft developed products using Symantec's trade secret

2  information, and has identified the information contained in confidential "V2i Protector product

3  requirements specifications" in its identification of misappropriated trade secrets pursuant to

4  California Code of Civil Procedure § 2019.210.  The November 2004 email of former StorageCraft

5  CEO Kirby states that former PowerQuest employee Barnes was "using PowerQuest knowledge" to

6  build competing products at StorageCraft.  On those bases, Symantec is entitled to discovery aimed

7  at determining whether StorageCraft's development efforts were tainted by the confidential and trade

8  secret information misappropriated by StorageCraft.  StorageCraft has itself conceded the relevance

9  of source code discovery in this action, by offering to submit its code for analysis by a neutral third

10  party.[58]  This category of documents, as with each of the others, is squarely within the proper scope

11  of discovery in this action.

12    **B.**    **THE BURBIDGE DOCUMENTS ARE A PROPER SUBJECT FOR SUBPOENA, IN LIGHT OF
         STORAGECRAFT'S REPEATED EFFORTS TO DELAY DISCOVERY AND SYMANTEC'S**
13         **URGENT NEED TO OBTAIN DISCOVERY AND VERIFY ITS COMPLETENESS**

14    StorageCraft's motion complains that the timing of Symantec's subpoena is "inappropriate,"

15  and that Symantec has no "need for urgency" regarding this discovery.[59]  These complaints are

16  meritless.  There is nothing improper whatsoever to the timing of Symantec's subpoena.  Symantec

17  served this subpoena after discovery commenced in this action pursuant to Rule 26(d), and contrary

18  to StorageCraft's representation, Symantec informed StorageCraft during the Rule 26(f) conference

19  that it intended to commence discovery immediately, including third-party discovery.[60]  Moreover,

20  Symantec's subpoena complied with the timing requirements of Rule 45.  Symantec's subpoena

21  provided Burbidge, the subpoenaed party, ten days to comply, and not only has StorageCraft

22  conceded that "third party subpoenas need not be served immediately upon opposing counsel," it

23  admits that it received notice of the subpoena the day after it was served.

24    Indeed, the only relevant temporal aspect to this dispute is that nearly five months after

25

26  _____

27  [58] Grewal Decl. at ¶ 10.
    [59] StorageCraft Memo. at 5-7.
28  [60] Grewal Decl. at ¶ 8.

1  Symantec filed this action, on the basis of startling evidence of wrongful conduct by StorageCraft, in

2  the very pool of documents Symantec now seeks with its subpoena, Symantec has not yet obtained

3  any discovery regarding the full extent of that wrongful conduct.  This circumstance is the result of

4  StorageCraft's vigorous efforts to avoid providing that discovery, including its motion practice, its

5  refusal to enter into a protective order, its failure to comply with this Court's Reassignment Order,

6  and its unilateral cancellation of a Rule 26(f) conference that would have begun discovery more than

7  a month ago.

8          Moreover, StorageCraft's suggestion that Symantec has "not stated any need for urgency

9  regarding this subpoena or any of the discovery in this case"[61] is disingenuous.  Symantec has

10 repeatedly demonstrated that it urgently needs discovery regarding the extent of StorageCraft's

11 misappropriation of trade secrets and unfair competition.  Symantec did so when it filed its motion

12 before the District Judge for expedited discovery,[62] again when it opposed StorageCraft's motion to

13 stay discovery,[63] and it does so again here.  In August of 2007, Symantec was presented with

14 specific evidence, detailed in its complaint, its § 2019.210 statement, and in this pleading, that

15 StorageCraft had engaged in multiple acts of trade secret misappropriation and unfair competition,

16 and had not been truthful in its earlier denials of such conduct.  Symantec promptly brought this

17 action in order to assess the extent to which its confidential information has been compromised.

18 After months of delay, Symantec served its discovery on the first day of discovery, and its sense of

19 urgency remains undiminished.  Symantec's discovery included a subpoena to Burbidge because it

20 has determined, in light of StorageCraft's aggressive steps to delay discovery, that production from

21 Burbidge will be the most expeditious means of evaluating the extent of StorageCraft's misconduct.

22 Moreover, Symantec is entitled to obtain broad discovery from a third party such as Burbidge, even

23 if redundant of party discovery, to verify that all relevant documents have been produced to it.[64]

24 _____

25 [61] StorageCraft Memo. at 7.

26 [62] Symantec's Memorandum in Support of Its Motion For Expedited Discovery (Document No. 35).

27 [63] Symantec's Memorandum in Support of Its Opposition to StorageCraft's Motion to Stay
   Discovery (Document No. 49).

28 [64] *New Park Entm't. L.L.C. v. Elec. Factory Concerts, Inc.*, No. Civ. A. 98-775, 2000 WL 62315, *5
   (E.D. Pa. Jan. 13, 2000) (attached as Grewal Decl., Ex. Q) (Defendant's objection to subpoenas

894418_1.doc  SYMANTEC'S OPP'N TO STORAGECRAFT'S          17          CASE NO. C07 04731 JW
           MOTION FOR PROTECTIVE ORDER

1    Perhaps the most telling demonstration of the relevance of the discovery Symantec seeks

2    through its subpoena to Burbidge—and the urgency with which Symantec needs it—is found in

3    StorageCraft's pleadings before this Court.  In its Reply in Support of StorageCraft's Cross-Motion

4    to Stay Discovery, submitted to the District Judge, StorageCraft submitted the declaration of one of

5    its principals and founders, Brandon Nordquist.[65]  Mr. Nordquist attached as Exhibit A to his

6    declaration a PowerQuest data sheet which he asserts was downloaded from a publicly available

7    PowerQuest website in 2004, and is "similar to (if not the same as)" the 'V2i documents'"

8    referenced in one of the emails revealed at the August 2007 deposition in Cupertino.  Mr. Nordquist

9    then asserts documents such as Exhibit A were intended to be used to create a "Product Overview"

10    for a forthcoming StorageCraft product, but that "the final version of the Product Overview which

11    was ultimately used by StorageCraft did not include any information from any Symantec document,

12    whether publicly available or not."[66]

13    Mr. Nordquist's declaration appears to be directed to arguing that certain trade secrets

14    identified in Symantec's identification of trade secrets pursuant to California Code of Civil

15    Procedure § 2019.210 do not meet the legal definition of a trade secret.[67]  Of course, the fact that

16    StorageCraft has revealed an intended defense to a trade secret misappropriation claim does not halt

17    discovery; discovery exists so both parties may investigate their claims and defenses.

18    Remarkably, Mr. Nordquist's sworn statement in his affidavit that "the final version of the

19    Product Overview which was ultimately used by StorageCraft did not include any information from

20    any Symantec document, whether publicly available or not"[68] is directly contradicted by his Exhibit

21    B, which is the "StorageCraft Product Overview" that was "used by StorageCraft."  In fact, Exhibit

22

23    "because many of the documents plaintiff seeks from the third parties have allegedly been supplied
     previously to plaintiff by defendants" is "meritless,"  since plaintiff "needs the third parties'
24    documents, not only as a supplement to defendants' productions, but also to test the veracity of
     defendants' assertions that they have produced all the documents they were required to produce.").
25
     [65] Declaration of Brandon Nordquist in Support of Defendant's Reply Memorandum for a Stay of
26    Discovery ("Nordquist Decl.") (Document No. 65).

27    [66] *Id.* at ¶ 4.

     [67] *Id.* at ¶¶ 3-4.
28
     [68] *Id.* at ¶ 4.

SYMANTEC'S OPP'N TO STORAGECRAFT'S          18          CASE NO. C07 04731 JW
     MOTION FOR PROTECTIVE ORDER

1  B includes information *that is indisputably copied from the PowerQuest data sheet in Exhibit A.*

2  **Nordquist Exhibit A: PowerQuest Data Sheet**[69]

3  Based on its disk-to-disk method of backup and recovery, PowerQuest V2i Protector cuts hours off of recovery times when
   compared to other traditional backup and restore methods. When a server experiences a failure, a typical solution is to reinstall
4  or refresh the system operating system. However, this process on average can take four or more hours to complete. The table
   below compares the steps involved with restoring a server using a Traditional method vs. the PowerQuest V2i Protector method.

| | Traditional Methods | | PowerQuest V2i Protector Method |
|---|---|---|---|
| 1 | Repair hardware (if necessary) | 1 | Repair hardware (if necessary) |
| 2 | Collect all necessary OS media | 2 | Reboot using PowerQuest V2i Protector CD |
| 3 | Reload OS from CD-ROM or Floppies | 3 | Restore selected volume or files |
| 4 | Reboot | 4 | Reboot |
| 5 | Apply Service Packs (multiple in most cases) | | **RESULT = Restoration in MINUTES** |
| 6 | Reboot (multiple reboots based on service packs applied) | | |
| 7 | Reload backup software from CD-ROM | | |
| 8 | Get backup software patched to the latest support level (can be multiple patches) | | |
| 9 | Reboot (can be several reboots based on patches applied) | | |
| 10 | Reboot | | |
| 11 | Load recovery tape and restore | | |
| | **RESULT = Restoration in HOURS** | | |

Using PowerQuest V2i Protector will not only cut hours off of your server recovery, but your server will be essentially rolled
back to the exact state of when the backup took place - with all system optimizations, hidden and encrypted files, and data in
place.

**Nordquist Exhibit B: StorageCraft Product Overview that supposedly "did not include any information from any Symantec document"**[70]

| | Traditional Methods | | StorageCraft ShadowProtect |
|---|---|---|---|
| 1 | Repair hardware if necessary | 1 | Repair hardware if necessary |
| 2 | Collect all necessary OS media | 2 | Boot from recovery CD |
| 3 | Reload OS from CD | 3 | Restore entire system or selected files |
| 4 | Reboot | 4 | Reboot |
| 5 | Apply service packs (multiple) | | |
| 6 | Reboot (this could take several reboots) | | |
| 7 | Reload backup software from CD | | |
| 8 | Patch backup to latest support level | | |
| 9 | Reboot | | |
| 10 | Load recovery tapes and restore data | | |

Figure2. Bare-metal recovery

Despite this obvious copying from Symantec, StorageCraft has marked Exhibit B with its own

---

[69] Nordquist Decl., Ex. A at 7.

[70] Nordquist Decl., Ex. B at 13.

SYMANTEC'S OPP'N TO STORAGECRAFT'S          19          CASE NO. C07 04731 JW
MOTION FOR PROTECTIVE ORDER

1  copyright. What is more, despite Mr. Nordquist's sworn statement, StorageCraft's acts of unfair

2  competition are ***ongoing.*** StorageCraft copied the same PowerQuest chart for several of their

3  current products' user manuals, which are publicly available today on StorageCraft's website.[71]

4  ### StorageCraft ShadowProtect Desktop Edition User Guide[72]

**Table 3:  Bare Metal Recovery Comparison of ShadowProtect Versus Traditional Methods**

| | Traditional Method | | ShadowProtect |
|---|---|---|---|
| 1 | Repair hardware if necessary | 1 | Repair hardware if necessary |
| 2 | Collect all necessary OS media | 2 | Boot from Recovery CD |
| 3 | Reload OS from CD-ROM | 3 | Restore entire system or selected files |
| 4 | Reboot | 4 | Reboot |
| 5 | Apply multiple service packs | | ⭐ **FULLY RESTORED IN MINUTES** |
| 6 | Reboot (this could take several reboots) | | |
| 7 | Reload backup software from CD-ROM | | |
| 8 | Patch backup software to the latest support level | | |
| 9 | Reboot | | |
| 10 | Load recovery tape and restore | | |

**FULLY RESTORED IN HOURS**

Copyright © StorageCraft Technology Corporation, 2006                          23

19  Symantec urgently needs the discovery it has sought from Burbidge and from StorageCraft to assess

20  the extent of this and other misconduct, of which there is substantial and undeniable evidence.

**C.     SYMANTEC WILL AGREE TO MAINTAIN THE CONFIDENTIALITY OF THE
STORAGECRAFT DOCUMENTS**

23      StorageCraft's motion expresses substantial concern over the production of documents it has

24  designated "Confidential" or "Highly Confidential" in the absence of a protective order in this

25  case.[73] In light of the history of this dispute, discussed *supra*, Symantec is perhaps uniquely

_____

[71] Grewal Decl., Ex. R at 23; Grewal Decl., Ex. S at 23.

[72] Grewal Decl., Ex. R.

[73] StorageCraft Memo. at 8-10.

1  sensitive to such a concern.  Indeed, Symantec has sought without success to enter into a stipulated

2  protective order with StorageCraft to govern discovery in this action.[74]  StorageCraft has declined to

3  engage in negotiations over a protective order, claiming it would be a "waste of client resources"

4  while its transfer motion is pending,[75] although it has not articulated what efficiencies will

5  characterize those negotiations once its transfer motion is resolved; presumably the parties can

6  negotiate a protective order now that is suitable for any court that hears this dispute.

7       For its part, Symantec is willing to quickly negotiate a mutually agreeable protective order.[76]

8  Pending such negotiation, and in order to accommodate StorageCraft's concerns, Symantec is

9  willing to treat all of the documents produced to NetJapan by StorageCraft on an "outside counsel

10  eyes only" basis, and examine them only for purposes related to this litigation.  Indeed, these are the

11  very terms under which Symantec made available its highly confidential documents to counsel for

12  StorageCraft and NetJapan in response to the August 2007 subpoena served on it in connection with

13  that litigation.[77]  This level of protection should amply address StorageCraft's legitimate concerns.

14  **IV.    CONCLUSION**

15       For the reasons stated above, StorageCraft's motion should be denied.

16

17  Dated: January 28, 2008

By:  /s/ Paul S. Grewal
Paul S. Grewal (CSB# 196539)
William P. Nelson (CSB# 196091)
Day Casebeer Madrid & Batchelder LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110
Fax: (408) 873-0220

*Attorneys for Plaintiff Symantec Corporation*

---

[74] Joint Case Management Conference Statement (Document No. 72) at 8.

[75] StorageCraft Memo. at 7.

[76] Joint Case Management Conference Statement (Document No. 72) at 8.

[77] Grewal Decl. at ¶ 5.

1

### CERTIFICATE OF SERVICE

2        I hereby certify that a copy of the foregoing document was filed electronically in

3    compliance with Local Rule CIV 5-5(b). Therefore, this document was served on all counsel

4    who are deemed to have consented to electronic service. Local Rule CIV 5-5(b).  Pursuant to

5    Fed.R.Civ.P. 5(d) and Local Rule CIV 5-5, all other counsel of record not deemed to have

6    consented to electronic service were served with a true and correct copy of this document via

7    email, facsimile and/or U. S. First Class Mail.

8

9    Dated:  January 28, 2008                    _____/s/_____
                                                                Paul S. Grewal
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28