# Exhibit D

**StorageCraft Technology Corporation**
180 West Election Rd., Suite 230
Draper, UT 84020
Tel: (801) 545-4700 Fax: (801) 382-1823

THOMAS J. SHREEVE
CEO/PRESIDENT
STORAGECRAFT TECHNOLOGY CORPORATION

### VIA FACSIMILE TRANSMISSION & CERTIFIED MAIL

John Schwarz, President and Chief Operating Officer
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Fax: (408) 517-8186

Attention: Director of Legal Affairs
PowerQuest Corporation
1359 North Research Way, Building K
Orem, Utah 84097
Fax: (801) 437-7909

**CONFIDENTIAL**

Art Courville
Senior Vice President and General Counsel
Symantec Corporation
20330 Stevens Creek Blvd.
Cupertino, CA 95014
Fax: (408) 517-8186

RE:  Notification of Termination of Software License and Services Agreement dated June 14, 2002

Gentlemen:

This letter serves as written notice of termination, under paragraphs 12.2 and 14.7 of the Software License and Services Agreement dated June 14, 2002, between StorageCraft, Inc. as Licensor (now StorageCraft Technology Corporation, or "STC") and PowerQuest Corporation as Licensee (now Symantec Corporation, or "Symantec"), relating to the Volume Snapshot, Persistent Differentials and Hot Rollback software (the "Agreement"). This termination results from various breaches of the Agreement as further set forth herein. Paragraph 12.2 of the Agreement provides a thirty day period for you to cure such breaches. However, as also discussed below, we do not expect that the breaches which have occurred are capable of cure, though we are prepared to discuss and fully consider any reasonable curative measures Symantec may propose.

This termination will require that Symantec cease the production and offering of products that contain "Licensed Software," as defined by the Agreement, including all object and source code licensed under the Agreement and any derivative works based upon the Licensed Software and/or source code, and to return to STC or certify the destruction of

March 15, 2005
Page 2

all copies of STC's Confidential Information, including object and source code, compiled or noncompiled, within 30 days, pursuant to paragraph 12.3 of the Agreement. We understand that Symantec products containing code licensed under this Agreement include but are not limited to V2i Protector Desktop Edition, V2i Protector Server Edition, V2i Protector Small Business Edition, V2i Protector Management Console, LiveState Recovery Advanced Server, LiveState Recovery Standard Server, LiveState Recovery Desktop, Norton Ghost 9, System Works Premier, any OEM versions of these products, and may include LiveState Recovery Manager. Further, as discussed elsewhere in this letter, these products would include any unauthorized derivatives developed by Symantec.

Further, any unauthorized derivative products are, under the Agreement, owned by STC, and we hereby demand return of all object and source code relating to such unauthorized derivatives. Finally, we demand a detailed report of any and all use of STC's Confidential Information, Licensed Software and Source Code, including any and all derivative works based on STC's Source Code, and any modifications, adaptations, compilations, and derivatives that may be in progress. This report should include a statement as to whether Symantec contends that any such derivative works, or works in progress, fall within the provisions of paragraph 7.2(b) of the Agreement.

STC also preserves any and all other rights, claims, remedies and causes of action for damages relating to Symantec's breach of the Agreement.

By way of background, formal written notice was provided by STC to Symantec that it is the successor in interest under the agreement by a facsimile sent February 22, 2005 and certified mail confirmation sent February 23, 2005. This notice followed a series of correspondence between our counsel, H. Dickson Burton at TraskBritt, PC, and your attorney, Robert O. Rice of Ray, Quinney & Nebeker. By a letter dated January 6, 2005, Mr. Burton responded to the concerns raised by Mr. Rice in his December 23, 2004 letter and presented STC's serious concerns regarding PowerQuest's and Symantec's compliance with their obligations under the Agreement. These concerns included PowerQuest's and Symantec's contractual obligation to exercise reasonable precautions to protect STC's Confidential Information, to not divulge the Confidential Information to any third person, and to not make any use of the Confidential Information other than those allowed by the License Agreement. Mr. Burton's letter described a process employed by Symantec that gave unrestrained access to STC's Confidential Information to a number of individuals, both inside and outside the company, including independent contractors, developers and testers working on products not requiring access to the Confidential Information. Mr. Burton further expressed our concern that this practice may have exposed STC's Confidential Information in an unprotected circumstance to all of these parties. An additional concern was the creation and offering of V2i SDK by PowerQuest which appears to violate Section 2.1 of the Agreement.

In a letter dated January 25, 2005, Mr. Rice replied to the concerns raised in Mr. Burton's letter by (1) denying that STC's licensed software was offered on a stand-alone basis in

2

March 15, 2005
Page 3

any instance by Symantec, and specifically denying that V2i SDK had been offered; and (2) rejecting STC's concerns that the software had been exposed in certain unprotected circumstances, noting that investigation of these matters did not show any circumstance of improper use of STC code and that Symantec has fully complied with the requirements to protect STC's Confidential Information by "maintaining elaborate security protocols and subjecting developers to rigorous confidentiality restrictions." Mr. Rice's letter failed to respond to a number of STC's concerns regarding unrestrained access to STC's Confidential Information provided to a number of individuals, both inside and outside the company, including independent contractors, developers and testers working on products not requiring access to the Confidential Information, and the concern that this practice may have exposed STC's Confidential Information in an unprotected circumstance to all of these parties. Rather than address these issues Mr. Rice merely noted that the "parties have engaged in only an informal dialogue" and that his client is not "inclined to provide the extensive, confidential information requested." In subsequent conversations between Mr. Rice and Mr. Burton, Symantec (through Mr. Rice) has flatly declined to discuss these issues further.

Based on Symantec's unwillingness to engage in discussion regarding its actual practice with respect to protecting STC's Confidential Information, STC has pursued its own review of this matter. The results of this review substantiate many of the concerns noted in Mr. Burton's letter of January 6, 2005. Further, this review has disclosed many additional and serious violations by Symantec of STC's rights under the Agreement. Based on this review, our conclusion is that STC Confidential Information has been and continues to be inadequately protected as required under the terms of the Agreement. We have concluded that based on the serious concerns described below, STC has no choice but to exercise the provisions of Section 12.2 to terminate the Agreement. The bases for this termination are that:

(1) contrary to the requirements of Section 11.2 (i), Symantec has failed to hold STC's Confidential Information in confidence and to take all reasonable precautions to protect such Confidential Information (including, without limitation, all precautions Symantec employs with respect to their own confidential materials);

(2) contrary to the requirements of Section 11.2 (ii), Symantec has divulged STC's Confidential Information to third persons; and

(3) contrary to the requirements of Section 11.2 (iii) Symantec made use of STC's Confidential Information not authorized or permitted by the License Agreement.

These conclusions are based on the facts discussed in the following paragraphs as follows:

3

March 15, 2005
Page 4

At some point in time, at least by 2002, PowerQuest developed a program referred to as "Get All/Build All."[1] This system functioned in conjunction with Symantec's source repository to deliver source code, build tools, libraries and other information to fully reproduce executables to Symantec programmers and testers. It is our understanding that the "Get All/Build All" system delivered all of the source code held in Symantec's source code repository to a requesting developer or tester, even if the developer or tester only required a subset or small portion of such source code. Symantec's source repository contained Symantec's own source code, the source code of other companies provided under licenses and nondisclosure agreements, and eventually included STC's source code. The peculiarities of the "Get All/Build All" system resulted in STC source code as well as source code of other companies being delivered on request to all programmers and testers without any constraints as to project, need to know, permissions or user authorization. An explanation of the "Get All/Build All" system is attached to this letter as Appendix A. This unrestrained and unprotected access enabled by the "Get All/Build All" system provided full STC source code to developers and testers both inside and outside Symantec, including contractors and third persons, without regard to whether the particular developers or testers had any need for access to the code. For example, the "Get All/Build All" system delivered STC source code to contract developers in India, on site, and elsewhere. Moreover, numerous programmers and testers within the company had unnecessary but unrestrained access to STC code.

If access to STC source code had been strictly limited to developers on a need to know basis, rather than this large group of individuals, the exposure of STC's Confidential Information would have been substantially reduced. On the other hand, the unrestrained approach allowed by Symantec has greatly multiplied STC's risk to its Confidential Information.

We further understand that, contrary to the requirements of Section 11.2 (ii) of the Agreement, Symantec has also specifically divulged STC's Confidential Information to third persons including:

---

[1] As you know some members of STC management are former employees of PowerQuest. They became members of STC management when it was formed as the successor company to StorageCraft, Inc., in September 2004. Following that time, including after being prompted to carefully review STC's activities by Mr. Rice's December 23, 2004 letter, STC management had occasion to review the License Agreement with PowerQuest (now Symantec) which is in question here. It is at that time that the former PowerQuest employees who are now part of STC management first became aware of Symantec's obligations under the Agreement and immediately became concerned about Symantec's compliance with the Agreement. Accordingly, STC is aware of the likely breaches by PowerQuest/Symantec of the Agreement as described herein based, at least in part, upon the knowledge of these former PowerQuest employees gained while employees of PowerQuest. I wish to confirm, however, that to the best of STC's knowledge, no former PowerQuest/Symantec employee has used or disclosed any information belonging to PowerQuest/Symantec to any party other than STC management or to counsel, and the limited disclosures which have been made concern only the "Get All/Build All" system and related issues, and were made only for the purposes of considering Symantec's compliance with the Agreement and not for any competitive or other purpose.

4

March 15, 2005
Page 5

(1) An India-based contract software developer contracted by Symantec to produce portions of V2i Protector. As explained in Appendix A, the "Get All/Build All" system created linked dependencies as part of fulfilling its information requests. Accordingly, the dependencies of the project on the Engine and the Engine's dependency on STC's source code caused delivery of all STC source code to any and all programmers making a "Get All/Build All" request, whether or not there was a need for that code.

(2) Contractors working on the ServerMagic for Netware version 6.5. Again, for the reasons stated above and in Appendix A, these individuals would have received all STC source code for each request made through the "Get All/Build All" system. This product is not a Windows based product, but rather is a Novell operating system product. The STC source code is not viable or useable in the Novell environment. Thus, the "Get All/Build All" system is so indiscriminate that it delivers STC source code to individuals working on non-compatible operating systems.

(3) Numerous contractors (both programmers and testers) engaged to work on projects requiring Engine source code. They have received STC's full source code as part of their requests using the "Get All/Build All" system.

We note that Paul Winn, CEO of PowerQuest at the time the License Agreement was signed, gave widely disseminated directives within PowerQuest that PowerQuest source code comprising the Engine not be transferred to third person off-shore contractors. Mr. Winn characterized this source code as the "crown jewels" of the company. Contrary to Mr. Winn's directive, the PowerQuest crown jewels, STC's source code licensed under the agreement, and the source code of other third parties, were made available to third person off-shore contractors. In this manner, Mr. Winn's stated internal standard for protection of PowerQuest source code was almost certainly violated repeatedly, including by providing the source code to outside contractors.

As discussed above, contrary to the requirements of Section 11.2 (iii), we understand that Symantec has made use of STC's Confidential Information not authorized or permitted by the License Agreement. Specifically, PowerQuest developed unauthorized Class II derivative works and continues to make use of such unauthorized derivatives, which violates the provisions of Section 7.2 (b) of the Agreement. It is believed that one such unauthorized Class II derivative is the modification made to STC's VSnap incorporated in a range of products taken to market in mid 2003 with continuing use of such unauthorized class II derivatives to the present, which modification was developed by PowerQuest using Confidential Information acquired from Microsoft under an NDA. PowerQuest was not authorized by any of the provisions of 7.2 (b) (i through vi) to develop this derivative and, accordingly, has no ownership rights in that and any other such derivatives. PowerQuest/Symantec continues to benefit from this unauthorized derivative and such derivative is included in Symantec products currently being shipped. Such unauthorized derivatives, have rendered Symantec products, including Ghost 9 and

March 15, 2005
Page 6

---

Live State Recovery unstable and subject to a higher rate of "blue screening" in the marketplace. Further, Symantec has not contacted STC with respect to these problems or issues but instead continues to maintain these class II derivatives on their own with continuing damage to STC.

Symantec's apparent failure to take reasonable precautions to protect source code, including the STC source code, and the recurring disclosure of STC's Confidential Information including its source code to third persons have placed STC's Confidential Information at risk and constitute breaches of the Agreement, including of sections 11.2(i), (ii) and (iii). Since Symantec has refused to provide any information or to otherwise address these concerns, STC has no reasonable option other than termination. A thirty day period for cure of the breaches is provided though we have substantial doubts that these breaches can be cured. Nonetheless, we invite you to contact us through our counsel, Mr. Burton, to discuss these important issues. Mr. Burton's contact information is listed below.

Sincerely,

*Thomas J. Shreeve*

Thomas J. Shreeve

cc:    President, PowerQuest Corporation
       20330 Stevens Creek Blvd.
       Cupertino, CA 95014
       Fax: (408) 517-8186

       Robert O. Rice, Esq.
       RAY, QUINNEY & NEBEKER
       36 South State Street, Suite 1400
       Salt Lake City, Utah 84111
       Fax: (801) 532-7543

       Don Kleinschnitz, Vice President Product Delivery
       Symantec Corporation
       1359 North Research Way, Building K
       Orem, Utah 84097
       Fax: (801) 437-7909

       H. Dickson Burton, Esq.
       TraskBritt, P.C.
       230 South 500 East Suite 300
       Salt Lake City, Utah 84102
       Tel: (801) 532-1922
       Fax: (801) 531-9168

Highly Confidential

Exhibit A

Brief Explanation of the "Get All/Build All" System

1. Overview

   This explanation is based on our current understanding of the "Get All/Build All" system, from the recollection of former PowerQuest employees, who are now STC management personnel. The "Get All/Build All" system was internally developed by PowerQuest and was in place as early as August 2002. The "Get All/Build All" system is designed to operate in conjunction with a source code repository. Initially, Microsoft Source Safe was used and was eventually replaced with a Perforce Server.

   The "Get All/Build All" system functions as a front-end to the source code repository. The source code repository contains PowerQuest/Symantec source code, source code of other companies based on licenses and non-disclosure agreements, and STC's source code made available under the June 14th, 2002 Software License Agreement.

   PowerQuest/Symantec maintains a collection of source code referred to as the Engine. The Engine source code relates to many of their principal software products. Furthermore, the Engine source code has a linked dependency for other source code within the "Get All/Build All" system, including STC's licensed source code. This linked dependency causes any request made through the "Get All/Build All" system that includes the Engine source code to deliver STC's licensed software as well.

2. Characteristics

   The "Get All/Build All" system has the following characteristics:
   - Provides complete source code, object code, build tools and other information necessary to the user's machine and equips him to build executable versions of the requested software.
   - The "Get All/Build All" system determines all of the source code and file dependencies (information including source code required to build the software executable) and delivers all of this information to the local users' machine upon request.
   - With respect to the information delivered under the "Get All/Build All" system, the receiving user is able to make copies, save information to removable media, burn information to CD or DVD media or even email information, subject only to limitations imposed by PowerQuest/Symantec on a "machine by machine" basis.
   - Access to the "Get All/Build All" system was provided to the "development group" as defined by an Active Directory group. Such

A-1

Highly Confidential

- group included developers, builders and testers Access to the "Get All/Build All" was made available via local area network connection or remote access by means such as VPN.
- As implemented, unrestrained access to source code was granted to developers, builders and testers via the "Get All/Build All" system with little if any restraint. Rather than restricting access based on a need to know and a functional requirement to modify the source code as part of an individual's assignment, the "Get All/Build All" system provided unreasonable access.

3. Purpose and How it was Used

It is believed that the "Get All/Build All" system was developed and operated as a means to deliver all associated source code, object code, build tools and other information to the requesting user, enabling such user to fully reproduce the executable for the requested project and to do so with minimal effort and with a limited understanding of the build process and the source code and other file dependencies required to make such builds. Because of the dependency relationship discussed in the "Overview," STC's licensed source code was delivered to requesting users without any pre-requirement that the STC source code was either necessary or an appropriate delivery to such user.

The "Get All/Build All" system was widely deployed and used by the members of the development and testing group (both employees and contractors, both on-site and off-site) to request full source code and related information and the associated build environments on a regular and routine basis. Typically a pre-access requirement on an individual basis was not needed. Rather, full access was provided to all members of the development and testing group.

In actual practice, this full access was granted to all members of the Development and Testing groups without satisfying any pre-access requirements that were based on a threshold, such as a reasonable need to know or reasonable grant of access based on the nature of project duties, the employee's established reliability, etc. This full access was required by the "Get All/Build All" system, because restricting access to files or specific source code on an individual basis would have rendered the "Get All/Build All" system inoperable with respect reproducibility on a local machine. By opting to maintain operability, PowerQuest/Symantec was required to make source code contained in the source code repository available to all these users, thus, placing it at risk since a "need to know" or other criteria could not be established as access thresholds.

This broad access produced a number of unreasonable outcomes resulting from the operation of the "Get All/Build All" system, including but not limited to the following:

Highly Confidential

- In the initial development stages of ServerMagic for Netware version 6.5, the Engine source code was being utilized in the project. Because of the Engine source code's dependency relationship to the STC licensed software, STC's source code was delivered in response to "Get All/Build All" requests pertaining to ServerMagic for Netware. The ServerMagic for Netware project employed contract developers and the STC source code was provided to them. Provision of STC's source code to these developers was unreasonable as STC's licensed software does not operate on or support the Netware operating system for which ServerMagic for Netware was designed. Thus, the STC licensed source code was provided to these developers without need or benefit to PowerQuest/Symantec and in total disregard for the security of STC's licensed source code.

  We note that eventually, the Engine source code was split to provide separate Engines for Netware and Windows as a result of the engineers working on the Netware project modifying the Engine in a manner that was incompatible with the windows projects and, likewise, engineers working on windows-based projects making changes that were incompatible to the Netware operating system. However, this modification was made only after STC's licensed software was unnecessarily made available, causing substantial and unnecessary exposure risks.

- PowerQuest/Symantec maintains a typical division of function within its development and testing groups. Only a few of these developers have legitimate need for access to the STC licensed source code, while most do not have a legitimate need for such access. These developers and testers could be categorized by function into the following groups:
    - Driver Team – a highly specialized and typically externally trained team of developers, who can program, modify and understand kernel device drivers. This team of 2 or 3 developers required access to STC's Confidential Information.
    - Engine Team – a large group of programmers who only required STC's licensed software in a .sys form. There was no requirement by this team to access STC source code and certainly no requirement to access STC source code on a frequent and continuing basis.
    - Product Team – a large group of programmers who only required the licensed software in a .sys form. There was no requirement by this team to access STC source code and certainly no requirement to access STC source code on a frequent and continuing basis.
    - Build Team – the team responsible for building executables from source code. This team is very limited in size and required access to STC's source code. However, it now

A - 3

Highly Confidential

appears that the traditional role of the build team was modified as result of the "Get All/Build All" system and certain build functions were shifted down to testers who built the executable they were assigned to test.
- o Testers – Large group responsible for testing executable code for stability, functionality and defects. This group only requires STC's licensed software in a .sys form. There is no requirement by this team to access STC source code. The tester group typically includes short-term, entry level employees.

The actual operation of the "Get All/Build All" system disregarded the functional specializations of these teams and their respective "need to know" requirements by providing full source code upon request made by all members of each of these groups. Thus a substantial majority of these team members were unnecessarily given full access to STC's licensed source code. Contract testers, many with limited history with PowerQuest/Symantec, were granted unrestricted access to STC's source code. This unreasonable outcome resulted from the operation of the "Get All/Build All" system.

- Contractors both on-site and off-site, tasked to perform development or testing functions were provided access to source code, build tools and other information including STC's licensed source code by operation of the "Get All/Build All" system. Although strictly prohibited from having access to STC's licensed source code by the License Agreement, such third persons nevertheless had access to STC's source code. Furthermore, this access was granted even though their duties did not require access to STC's source code. This unnecessary and unrestricted access granted to third persons demonstrates the unreasonableness of how the "Get All/Build All" system operated and failed to meet reasonable standards of source code protection.

A - 4