# Exhibit Q

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))



Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

**NEW PARK ENTERTAINMENT L.L.C.**
v.
**ELECTRIC FACTORY CONCERTS, INC.**
and
**SPECTRUM ARENA LIMITED PARTNERSHIP**
and
**PAVILION PARTNERS d/b/a the Blockbuster Sony Music Entertainment Center**
No. Civ.A. 98-775.

Jan. 13, 2000.

Robert E.J. Curran, Curran & Byrne, P.C., Media, PA, for New Park Entertainment Ltd., Plaintiff.

Robert E.J. Curran, John G. McCormick, James J. Rodgers, Dilworth, Paxson, LLP, Phila, PA, Edward T. Lawlor, Jr., (See above), for New Park Entertainment Ltd., Plaintiff.

Wendelynne J. Newton, Buchanan Ingersoll Professional Corp., Pittsburgh, PA, Charlotte E. Thomas, Alan C. Kessler, Wolf, Block, Schorr and Soliscohen LLP, Philadelphia, PA, for Electric Factory Concerts, Inc., Defendant.

Richard P. McElroy, Ann B. Laupheimer, Brian S. Paszamant, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, for Spectrum Arena Limited Partnership, Defendant.

Wilbur L. Kipnes, Wendy Beetlestone, Rolin Plumb Bissell, Diane L. Lisowski, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Pavillion Partners d/b/a the Blockbuster/Sony Music Entertainment Center, Defendant.

MEMORANDUM OF DECISION

RUETER, Magistrate J.

*1 Presently before the court are Plaintiff's Motion to Compel Discovery (Document No. 45), Defendants' Opposition thereto (Document Nos. 46 and 48), Defendants' Joint Motion for Protective Order [FN1] (Document No. 37), Plaintiff's Memorandum of Law in Opposition thereto (Document No. 38), and Defendants' Reply. (Document No. 40). [FN2] The motions concern numerous objections to (1) plaintiff's interrogatories addressed to defendants; (2) its request for documents to defendants; and (3) subpoenas duces tecum to six nonparties. [FN3] There are approximately eleven objections or issues that are applicable to these discovery requests. These are as follows: 1) much of the information requested is irrelevant because it concerns conduct of the defendants prior to 1997, when plaintiff came into existence; 2) the interrogatories exceed the limit of Fed.R.Civ.P. 33(a); 3) defendants have no standing to challenge the subpoenas issued to six nonparties; 4) many of the documents requested from third parties have already been provided by the defendants; 5) documents requested from defendants' accountants are protected by accountant-client privilege recognized by Pennsylvania law; 6) certain of the information sought from the defendants and nonparties constitutes trade secrets; 7) information relating to events other than concerts is irrelevant; 8) plaintiff's request for contracts, between the cities of Camden, New Jersey and Philadelphia, Pa, and certain arenas, should be denied because the information is irrelevant; 9) plaintiff's request that defendants identify "all formal claims or lawsuits which have been filed against" Electric Factory Concerts, Inc. ("EFC") "involving antitrust issues" should be denied because the information is irrelevant; 10) plaintiff's request that EFC identify the computer programs it uses in its business should be denied because this information is irrelevant; and 11) some of the requested documents or information are protected by the attorney-client privilege or the work product doctrine.

FN1. Defendants filed the instant motion for a Protective Order pursuant to Fed.R.Civ.P. 26(c).

FN2. The Honorable Jan E. DuBois referred these motions to this court for disposition by order dated December 10, 1999. (Document No. 44.)

FN3. Plaintiff served subpoenas upon ARA Leisure Services, Kinney Parking Services, Deloitte and Touche, Ticketmaster of Delaware Valley, Inc., Stephanie L. Franklin-Suber on behalf of the City of Philadelphia, and the City of Camden.

In the interest of achieving an expeditious resolution of the present discovery disputes, the court now addresses these eleven issues, instead of proceeding line by line through each interrogatory and document request. As further explained below, the court will order the parties to meet within ten (10) days of the date of this order as required by Loc. R. Civ. P. 26.1(f) to attempt to resolve any remaining objections, such as objections stating that certain requests are overly broad, or that compliance with specific requests would be burdensome or oppressive. [FN4] Should there remain any outstanding disputes between the parties, the plaintiff shall promptly send a letter to the court outlining those disputes, and, if

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

necessary, the court will schedule a hearing.

    FN4. The defendants have attacked specific interrogatories and requests for production of documents arguing that they are overly broad and production would be oppressive. See e.g. EFC's Memo. in Opposition to Motion to Compel Discovery at 13-17. It appears that the parties have not dedicated time to resolve these discrete issues, but rather have focused on the more general objections, which are addressed by the court today. The court is hopeful that this court's disposition of some of the larger issues will cause the parties to be more disposed to work out their differences with respect to the specific interrogatories and document requests. The parties must use their best efforts to resolve these issues, rather than burdening the court with such minutia.

The court makes the following rulings on the eleven issues:

1. Pre-1997 Conduct

On February 17, 1998, plaintiff, New Park Entertainment, Ltd. ("plaintiff") filed a complaint against Spectrum, EFC, and Pavilion (collectively, "defendants") alleging claims based on the Sherman Act. 15 U.S.C. §§ 1, 2. [FN5] On or about August 18, 1998, plaintiff filed an Amended Complaint (Doc. No. 14.) In the Amended Complaint, plaintiff alleges that defendants conspired to restrain trade and commerce in the market for the promotion of popular music concerts in the Philadelphia area.

    FN5. 15 U.S.C. §§ 1 and 2 provide: § 1. Trusts, etc., in restraint of trade illegal; penalty Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court. § 2. Monopolizing trade a felony; penalty Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

**\*2** As a result, plaintiff contends that EFC has developed a monopoly in the relevant market, and that plaintiff has been unable to compete since it attempted to enter the market in 1997. Specifically, plaintiff alleges that Spectrum and Pavilion gave EFC more favorable access to their venues than that given to plaintiff. Plaintiff further avers that defendants have conspired to put plaintiff at a competitive disadvantage to EFC, with the ultimate goal of forcing plaintiff out of business. (Amended Complaint at ï 33.) In support of its allegations, plaintiff maintains that Spectrum has performed the following acts in furtherance of the conspiracy: (1) offered concert dates to EFC which were previously denied to plaintiff; (2) failed to respond in a timely fashion to requests by plaintiff for price and date availability; (3) charged plaintiff prices higher than those charged to EFC for the use of Spectrum-owned facilities; (4) informed promoters and acts in 1997 that the charges for use of the Spectrum would increase if plaintiff co-produced the acts; and (5) refused to provide plaintiff with advances. (Amended Complaint at ï 35.)

Plaintiff further avers that in an attempt to monopolize popular music promotion, defendants conspired to restrain trade, and have prevented plaintiff from promoting concert events. (Amended Complaint ïï 51-52, 56, 68.) Moreover, plaintiff alleges that the actions of Spectrum substantially reduced the profit margins for the few concert events which plaintiff was able to promote at a facility owned by Spectrum. (Amended Complaint at ïï 53, 60, 70.)

On June 23, 1999, plaintiff served a Request for Production of Documents and Interrogatories on each defendant. On or about October 22, 1999, plaintiff issued third-party subpoenas to the custodian of records of the following nonparties: ARA Leisure Services ("ARA"), Kinney Parking Services ("Kinney"), Deloitte and Touche, L.L.P. ("Deloitte"), Ticketmaster of Delaware Valley, Inc. ("Ticketmaster"), Stephanie L. Franklin-Suber on behalf of the City of Philadelphia, and the City of Camden (hereinafter "Third-Party Subpoenas"). Each of the subpoenas requested the production of numerous documents.

Defendants object to the production of any information regarding their activities prior to 1997, when plaintiff first entered the market. Plaintiff requests information from ARA, Kinney, Ticketmaster and the City of Camden dated from January 1, 1994 until the present; from Deloitte, information dated from 1990 to present; and from the City of Philadelphia, information dated from the year the First Union Spectrum was constructed through the present. Defendants argue that "any information sought which predates January 1, 1997, the date on which Plaintiff was formed, can shed absolutely no light on the issues in this case." (Spectrum's Mem. Of Law Opp. Pl.'s

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

Mot. To Compel Disc. at 8.)

Even though the injury plaintiff complains of occurred in 1997 and forward, the activities of the defendants prior to 1997, during which time plaintiff alleges defendant EFC obtained its monopoly power, are relevant to the proof of plaintiff's claim. Although the contracts between the defendants and their related activities may be themselves be legal, they may be illegal should plaintiff be able to show that the arrangements among the defendants prior to 1997 created a monopoly which stifled competition. The history of the defendants' activities will shed light upon their illegality. Justice Brandeis made this point when he set forth the criteria for scrutinizing the legality of a restraint on trade under the "rule of reason":

> *3 The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts.

Bd. of Trade of City of Chicago v. United States, 246 U.S. 231, 238 (1918).

In Caldwell-Clements, Inc. v. McGraw Hill Pub. Co., Inc., 12 F.R.D. 531 (S.D.N.Y.1952), the court rejected an argument identical to that made by the defendants here. In Caldwell-Clements, defendant made a motion to strike interrogatories served upon it by the plaintiff, in an action where defendant was accused of monopolization. Plaintiff was founded in 1935. Plaintiff sought information on defendant's activities from 1910. Defendant objected to any information which pre-dated 1935 when plaintiff entered the relevant market. When rejecting defendant's objection, the district court stated the following:

> Defendant's suggested time limit of 1935 is perhaps based on the fact that plaintiff came into being at about that time. Information antedating plaintiff's existence, however, is relevant in this type of action and can very well be admissible at the trial. Baush Machine Tool Co. v. Aluminum Co. of America, 2 Cir., 72 F.2d 236, 239, certiorari denied 293 U.S. 589, 55 S.Ct. 104, 79 L.Ed. 683, made it clear that evidence of transactions occurring long before the injury complained of and of the history of an organization is admissible upon the trial of monopolization cases.
>
> ....
> In dealing with a similar problem Judge Rifkind has said that 'The asserted history of the conspiracy and not the scope of plaintiff's damage provides the temporal boundary for the discovery.' Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D.C., 7 F.R.D. 260, 262.

12 F.R.D. at 536. Accordingly, for all the above reasons, defendants' objection to the production of information predating 1997 is meritless. The pre-1997 conduct is relevant and defendants and third-parties cannot withhold information solely on this basis. This court is mindful that producing the pre- 1997 information may be onerous, but as one court has noted, "discovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases." United States v. Int'l Bus. Mach. Corp., 66 F.R.D. 186, 189 (S.D.N.Y.1974) (quotation omitted). See also Callahan v. A.E.V. Inc., 947 F.Supp. 175, 179 (W.D.Pa.1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships.") (citations omitted).

2. Number of Interrogatories

*4 Defendants object to the interrogatories propounded by the plaintiff because they exceed the number permitted by Federal Rule of Civil Procedure 33(a), which provides that interrogatories shall not exceed "25 in number including all discrete subparts." The court finds that plaintiff has propounded only 24 interrogatories, including any subparts. The court does not view subsidiary instructions to the interrogatories as propounding additional interrogatories, but merely specifying to the defendants the type of information plaintiff is eliciting in the interrogatories. Defendants' Rule 33(a) objection is therefore overruled.

3. Defendants' Standing to Challenge Subpoenas Issued to Nonparties

Plaintiff contends that defendants do not have standing to object to the issuance of the subpoenas served upon the nonparties. Typically, a motion for a protective order or a motion to quash subpoenas served on nonparties should be made by the party from whom the documents are sought. Fed.R.Civ.P. 45(c)(3)(A). However, an exception to this rule exists where a party claims that it has some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty. Davis v. Gen. Accident Ins. Co., 1999 WL 228944, at *2-3 (E.D. Pa. April 15, 1999). Defendants further argue that a party has standing to seek a protective order if it believes that its interests are "jeopardized by discovery

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

sought from a third person." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2035 (2d ed.1994); Norris Mfg. Co. v. R.E. Darling Co., 29 F.R.D. 1 (M.D.Md.1961).

Defendants initially argue that the third party subpoenas are overly broad and seek information and documentation that are not reasonably calculated to lead to the discovery of admissible evidence. Specifically, defendants aver that the documents sought from the cities of Philadelphia and Camden bear no relevance whatsoever to any of the allegations in the Complaint, and are not calculated to lead to the discovery of admissible evidence. Defendants contend that the documents sought from the suppliers will be or have been provided to plaintiff in summary form by defendants, and the requests, therefore, are unnecessary, unduly burdensome, overly broad, expensive, and harassing. Defendants further aver that the documents sought from Deloitte are irrelevant, overly broad, confidential, and are subject to the accountant-client privilege. In their reply brief, defendants also argue that the information sought by the subpoenas contains confidential research, development and commercial information. [FN6]

   FN6. Defendants argue that the documents sought, such as advertisement and marketing materials which describe Spectrum's capabilities, are "precisely the type of trade secrets, confidential research, development and commercial information afforded protection by Rule 26(c)." (Defs.' Reply Br. at 5-6.)

Plaintiff counters that defendants have no standing to object to third party subpoenas since the reasons cited for a protective order are not grounds upon which a party may move to quash a subpoena directed to a nonparty. Therefore, plaintiff argues that defendants have no standing to challenge the subpoenas.

**\*5** After a review of the submissions of the parties, this court finds that defendants allege some personal right in the requested documentation, i.e., that the documents contain confidential research, development and commercial information. Accordingly, this court is satisfied that defendants have standing to challenge the subpoenas issued by plaintiff. See Davis v. Gen. Accident Ins., 1999 WL 228944, at \*3. [FN7]

   FN7. The court further rejects plaintiff's argument that defendants' motion for a protective order is untimely. The fourteen day requirement for the service of a written objection to a subpoena duces tecum applies to the parties subject to the subpoena, not to the opposing party in the litigation. Neither Fed.R.Civ.P. 26(c) nor Rule 45, contains any fourteen day requirement for service of a motion for protective order.

4. Documents Requested from Third Parties Have Been Provided to Plaintiff

Defendants have moved to quash the subpoenas because many of the documents plaintiff seeks from the third parties have allegedly been supplied previously to plaintiff by defendants. This objection is meritless. While there may be some duplication between defendants' and the third parties' production of documents, there are sure to be many other documents in the possession of the third parties not in the possession of the defendants. Practically, there is no way for the plaintiff to frame its request to eliminate the possibility of duplication and at the same time ensure that it receives all of the documents it seeks from third parties. Moreover, plaintiff asserts that the defendants have not produced all of the documents it requested. Thus, plaintiff claims that it needs the third parties' documents, not only as a supplement to defendants' productions, but also to test the veracity of defendants' assertions that they have produced all the documents they were required to produce.

Finally, the defendants will not be over burdened by any duplication of production. Any prejudice with respect to time or cost will not be borne by defendants. The defendants are not producing duplicate documents, rather, the defendants are producing the documents and the third parties are producing some of them again. While plaintiff may have to bear the burden of paying for certain documents to be copied and produced more than once, plaintiff is obviously willing to assume that cost. For all of these reasons, defendants' motion to quash the subpoenas because some of the production might be duplicative, is denied.

5. Accountant-Client Privilege

Defendants contend that the documents requested from Deloitte should not be produced because they are protected by the accountant-client privilege recognized by Pennsylvania law. 63 Pa. Cons.Stat. Ann. § 9.11a (West Supp.1999). However, since this action is based solely on this court's federal question jurisdiction, and no accountant-client privilege exists under federal law, Deloitte cannot refuse production of the documents on the grounds of Pennsylvania's accountant-client privilege. See United States v. Arthur Young & Co., 465 U.S. 805, 817, cert. denied, 466 U.S. 936 (1984); Couch v. United States, 409 U.S. 322, 335 (1973); Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc., 671 F.Supp. 100, 103-04 (3d Cir.1982); United States v. Keystone Sanitation Co., Inc., 899 F.Supp. 206, 208 (M.D.Pa.1995); Am. Health Sys., Inc. v. Liberty Health Sys., 1991 WL 42310, at \*2 (E.D.Pa. March 26, 1991).

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

6. Trade Secrets

**\*6** Defendants argue that production of documents by the third parties subpoenaed by the plaintiff should be precluded because some of the documents constitute "trade secrets." Before this court can bar discovery, the defendants must demonstrate that the information requested constitutes trade secrets, and that disclosure of the information would be harmful. Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir.1989); Kaufman v. Nationwide Mut. Ins. Co., 1997 WL 703175, at \*2 n. 3 (E.D.Pa. Nov. 12, 1997). "Actually, orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." Federal Open Market Committee v. Merrill, 443 U.S. 340, 362 n. 24 (1979). Defendants have pointed to broad categories of the requested documents that, in their view, constitute trade secrets. Assuming that some of the materials requested are trade secrets, the court will require plaintiffs and defendants to agree to the terms of a protective order, if defendants believe the existing confidentiality agreement is insufficient to protect their interests. The provisions of the protective order shall be agreed upon by counsel and approved by the court, to provide adequate safeguards for the defendants' confidential materials. As set forth below, the court will require the parties to meet within ten (10) days from the date of this order to agree upon the language of the protective order. After the agreement is executed, and approved by the court, the third parties shall promptly produce the documents to plaintiff in accordance with the protective order.

7. Events Other Than Concerts

In its Amended Complaint, plaintiff states that New Park was a new entity that sought to establish its presence in the Philadelphia Metropolitan area "in the business of promotion of concerts of popular music, including rock and roll, country western, rhythm and blues, folk and other popular music. The popular music concert promotion business is the relevant market in this litigation." (Amended Complaint ï 9.) Plaintiff does not allege any other market. Notwithstanding this narrow definition of the relevant market set forth in its pleadings, plaintiff seeks information from the defendants regarding "all entertainment events, including but not limited to ice shows, monster truck shows, dance shows, rodeos and circuses." (Pl.'s Req. for Production of Documents at ï 8.) This court agrees with the defendants that information regarding nonmusical events is not relevant to plaintiff's allegations. If it has some marginal value, the burden and expense of producing the information outweighs the likelihood of finding relevant material. Fed.R.Civ.P. 26(b)(2); City of Waltham v. U.S. Postal Serv., 11 F.3d 235, 243 (1 st Cir.1993) ("The court has broad power to control discovery. In doing so, it can weigh discovery burdens against the likelihood of finding relevant material.") (citation omitted). Accordingly, plaintiff's request for these materials is denied.

8. Plaintiff's Requests to the Cities of Camden, NJ and Philadelphia, PA

**\*7** As noted earlier, plaintiff has served subpoenas duces tecum upon the City of Philadelphia and the City of Camden. The documents sought relate to the two Spectrum facilities and the E-Center from the dates of their construction. In response to defendants' motion for a protective order, plaintiff argues that the documents requested from the cities are relevant in that "to the extent these venues received public funds, they may be obligated to provide open and equal access to promoters of entertainment events." (Pl.'s Br. Opp. Mot. For Prot. Order at 8.) Plaintiff alleges that these documents may establish that the defendants violated these municipalities' equal opportunity policies. Defendants correctly point out that plaintiff has filed a pure antitrust case, and advances no claim "for equal opportunity policy or violation of any city ordinance or law requiring equal access." (Reply Mem. Supp. Mot. For Prot. Order at 3.) Accordingly, this court is constrained to agree that the reasons advanced by plaintiff to justify its broad document requests to the two cities is not sufficient to overcome defendants' relevance objections. Accordingly, the subpoenas issued to the City of Philadelphia and the City of Camden are hereby quashed.

9. Plaintiff's Request that EFC Identify All Formal Claims or Lawsuits Asserted Against EFC Involving Antitrust Issues

Plaintiff seeks information regarding other formal claims or lawsuits filed against EFC involving antitrust issues. Defendants argue that the antitrust allegations in this litigation are specific to plaintiff, and that the identification of other lawsuits, if any, would not impact on the acts which led to plaintiff's claimed damages. This court finds that information regarding other claims or lawsuits involving antitrust issues, if any, are relevant to the antitrust action before this court. First, plaintiff's discovery request is narrow. Plaintiff asks only for the identification of "formal claims or lawsuits which have been filed against" EFC involving antitrust issues. Moreover, in order to establish its conspiracy claim against EFC, plaintiff must prove that EFC acted with a specific intent to destroy competition or to build a monopoly. The Supreme Court has held that the intent which a plaintiff must show to warrant a finding of attempt to monopolize is not merely an intent to do acts which can be objectively analyzed as tending toward

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

monopoly, but a specific intent to destroy competition or to build a monopoly. Times- Picayune Pub. Co. v. United States, 345 U.S. 594, 626 (1953). In that case, the Supreme Court stated that while monopolization "demands only a general intent to do the act, 'for no monopolist monopolizes unconscious of what he is doing,' a specific intent to destroy competition or build a monopoly is essential" before a defendant can be found guilty of an attempt to monopolize. Id. (citations omitted). See also Fleer Corp. v. Topps Chewing Gum, Inc., 658 F.2d 139, 153-54 (3d Cir.1981), cert. denied, 455 U.S. 1019 (1982). Information concerning other formal claims and lawsuits brought against EFC involving antitrust issues is relevant to its intent to engage in improper business conduct, and may lead to the discovery of other relevant evidence concerning the allegations raised by plaintiff. Plaintiff's motion is granted with respect to this area of discovery.

10. Plaintiff's Request for Identification of Computer Programs

*8 Plaintiff seeks to ascertain which computer programs EFC uses in its business. Defendants argue that the request should be denied because the identification of EFC's software is irrelevant. Defendants contend that while this information may be relevant in certain types of cases, such as intellectual property cases asserting ownership of computer software, it is not relevant in this case. This court agrees with defendants. Plaintiff has offered no reason why this information would be relevant, nor can this court imagine one. See Harris Mkt. Research v. Marshall Mktg. Communications, Inc., 948 F.2d 1518, 1526 (10 th Cir.1991) (in a breach of license agreement and copyright infringement case, court affirmed denial of discovery of information concerning the "internal workings of [party's] computer program"). Plaintiff's motion is denied with respect to its request for information concerning the software used by EFC in its business.

11. Defendants' Claims of Attorney-Client Privilege and Work Product Doctrine

Defendants claim that certain of the documents and information requested by plaintiff are subject to the attorney-client privilege and/or the work product doctrine and, therefore, need not be produced. It does not appear that defendants have provided plaintiff with the information required by Fed.R.Civ.P. 26(b)(5) which states as follows:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Courts in this district have held that parties must comply with the requirements of Fed.R.Civ.P. 26(b)(5) by providing a privilege log. See Northwood Nursing & Convalescent Home, Inc. v. The Continental Ins. Co., 161 F.R.D. 293, 299 (E.D.Pa.1995). The court will order defendants to provide the privilege log.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of January, 2000, upon consideration of Plaintiff's Motion to Compel Discovery, (Document No. 45), Defendants' Opposition thereto, (Document Nos. 46 and 48), Defendants' Joint Motion for Protective Order (Document No. 37), Plaintiff's Memorandum of Law in Opposition thereto (Document No. 38), and Defendants' Reply, (Document No. 40), it is hereby

### ORDERED

1. Plaintiff's motion to compel discovery (Document No. 45) is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's motion to compel is DENIED in the following respects:

(a) Defendants need not respond to Interrogatory no. 23 which seeks information relating to computer programs used by EFC in its business as this material is irrelevant;

(b) Defendants need not produce information outside of plaintiff's narrow definition of the relevant market, i.e., the popular music concert promotion business (Amended Complaint ï 9);

*9 (c) Defendants need not produce documents subject to the attorney-client privilege or work product doctrine. Defendants must produce a privilege log in accordance with Fed.R.Civ.P. 26(b)(5) to plaintiff within ten (10) days of the date of this order. This order is without prejudice to plaintiff's right to contest any claim of privilege or protection asserted by defendants;

(d) Within ten (10) days of the date of this order, the parties shall agree to the terms of a protective order, to be approved by the court, to provide adequate safeguards for the defendants' confidential materials, including materials which defendants contend constitute trade secrets; and

(e) In all other respects, and consistent with the accompanying Memorandum of Decision, plaintiff's

(C) 2008 West Group
(Cite as: 2000 WL 62315 (E.D.Pa.))

motion to compel is GRANTED;

3. Defendants' joint motion for protective order is GRANTED IN PART and DENIED IN PART;

4. Defendants' joint motion for protective order is GRANTED to the extent that the subpoenas issued by plaintiff to the City of Philadelphia and the City of Camden are hereby QUASHED. In all other respects, and consistent with the accompanying Memorandum of Decision, defendants' joint motion for protective order is DENIED;

5. The parties shall meet with ten (10) days from the date of this order to resolve any remaining discovery disputes as required by Local Rule 26.1(f). The court cautions the parties that Local Rule 26.1(f) requires the parties to make a reasonable effort to resolve their disputes. Courts have held that "[t]his Rule is not merely a formalistic requirement', but was in fact 'intended to reduce the unnecessary burden on the Court' and opposing counsel." Clymer v. Attorney General's Office, 1999 WL 269930, at *3 (E.D. Pa. April 21, 1999) (quoting Crown Cork & Seal Co., Inc. v. Chemed Corp., 101 F.R.D. 105, 106-07 (E.D.Pa.1984)). Also, the parties are reminded that discovery in an antitrust action is "most broadly permitted" and the cost or burden of providing the requested information is less weighty a consideration than in other cases. Should there still remain any outstanding discovery disputes between the parties, plaintiff shall promptly send a letter to the court outlining those disputes, and, if necessary, the court will schedule a hearing.

6. Plaintiff's request for sanctions and an award of attorneys' fees against defendants for failure to respond to the discovery requests is DENIED WITHOUT PREJUDICE, and plaintiff may renew the request should defendants fail to comply with this court's order.

2000 WL 62315 (E.D.Pa.)

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.