IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Symantec Corp., <br><br>      Plaintiff, <br>  v. <br><br>Storagecraft Technology Corp., <br><br>      Defendant. <br>_____/ | NO. C 07-04731 JW <br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE; GRANTING DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)** |

## I. INTRODUCTION

Symantec Corporation ("Plaintiff") brings this diversity action against StorageCraft Technology Corporation ("Defendant") for alleged misappropriation of trade secrets under California Civil Code §§ 3426 *et seq.*, and for unfair competition under California Business and Professional Code §§ 17200 *et seq*. Plaintiff alleges that Defendant illegally acquired and used Plaintiff's trade secret information as part of an effort to unfairly compete with Plaintiff in the development and sale of system imaging and recovery software.

Presently before the Court is Defendant's Motion to Dismiss for Improper Venue, or in the alternative, Motion to Transfer to the District of Utah. (hereafter, "Motion," Docket Item No. 15.) The Court conducted a hearing on February 4, 2008. Based on the papers submitted to date and oral arguments of counsel, the Court DENIES Defendant's Motion to Dismiss and GRANTS Defendant's Motion to Transfer to United States District Court, District of Utah pursuant to 28 U.S.C. § 1404(a).

## II. BACKGROUND

In a Complaint filed on September 14, 2007, Plaintiff alleges as follows:

Plaintiff is a Delaware corporation with its principal place of business in California. (Complaint for Misappropriation of Trade Secrets, and Unfair Competition ¶ 8, hereafter, "Complaint," Docket Item No. 1.) Plaintiff is a world leader in providing infrastructure and computer security software for enterprise and personal use. (Complaint ¶ 2.) Defendant is a Delaware corporation with its principal place of business in Utah. (Complaint ¶ 10.) Both companies are involved in the development, marketing, and selling of system imaging and restoration software. (Complaint ¶¶ 2, 21.)

On December 8, 2003, Plaintiff completed its acquisition of PowerQuest Corporation ("PowerQuest"), a Utah corporation. This included PowerQuest's line of system imaging and restoration products known collectively as V2i Protector ("V2i"), which Plaintiff renamed as Backup Exec System Recovery. (Complaint ¶ 15.) The V2i and Backup Exec System Recovery line of products utilize a software component originally licensed to PowerQuest by StorageCraft Inc., the predecessor-in-interest to Defendant. (Complaint ¶ 17.) Plaintiff is the successor-in-interest to that license. (Id.)

On the same date as the completion of Plaintiff's acquisition of PowerQuest, four important contributors to the V2i system, Brandon Nordquist ("Nordquist"), Thomas Russ Shreeve ("Shreeve"), Curt James ("James"), and Scott Barnes ("Barnes") (collectively, the "Employees") voluntarily terminated their employment with PowerQuest. (Complaint ¶ 18.)

The Employees had each signed an "Employment Agreement" or an "Employee Confidentiality and Non-compete Agreement," (collectively, "Agreements") which bound them to a duty not to use or disclose PowerQuest's confidential information. (Complaint ¶ 19.) The Agreements explicitly assigned the benefit of those obligations to PowerQuest's successors-in-interest, in this case, Plaintiff. (Id.)

On December 8, 2003, prior to or following the termination of their employment with PowerQuest, the Employees formed the entity known as ShadowStor Inc. and worked in collaboration with StorageCraft Inc. to develop products that would compete with V2i or Backup Exec System Recovery products. (Complaint ¶¶ 20, 21.)

In mid-to-late 2004, ShadorStor merged with StorageCraft Inc. to form Storagecraft Technology Corporation—Defendant. (Complaint ¶ 23.) Defendant is the successor-in-interest to the activities and obligations of both ShadowStor and StorageCraft Inc. (Id.) The Employees are currently principals of Defendant. (Complaint ¶ 24.)

Prior to Plaintiff's acquisition of PowerQuest, Plaintiff created post acquisition strategic plans for the integration of PowerQuest employees. (Complaint ¶ 26.) These plans resulted in an Employee Data List ("List"), which contains current and proposed positions, current and proposed salaries, bonuses, and stock awards for over 270 of PowerQuest's employees. (Complaint ¶ 27.) The List also contains personal confidential information including social security numbers, home addresses, and telephone numbers. (Id.) The List was Plaintiff's trade secret information that derived independent economic value from not being generally known to the public or others who can obtain economic value from its disclosure or use. (Complaint ¶ 38.)

On March 15, 2004, Nordquist, without permission, electronically transmitted the List to Mike Kunz ("Kunz"), currently Defendant's Senior Director of Sales. (Complaint ¶ 29.) Prior to this transmission, the List was renamed "kidspics.xls" and the accompanying email directed Kunz to "[k]eep this under control." (Id.)

Additionally, Defendant, without authorization, used confidential PowerQuest documentation for its system imaging and recovery product line called ShadowProtect. (Complaint ¶¶ 33, 34.) Defendant, without consent, has used trade secrets and other confidential information of PowerQuest and Plaintiff. (Complaint ¶¶ 33, 34.) This use led to the development, marketing, and selling of the ShadowProtect line of products to compete with Defendant's Backup Exec System Recovery products. (Id.)

3

On the basis of the allegations outlined above, Plaintiff alleges two causes of action: (1) Misappropriation of Trade Secrets under California Civil Code §§ 3426 *et seq.*; and (2) Violation of California's Unfair Competition Act under California Business and Professional Code §§ 17200 *et seq.*

Presently before the Court is Defendant's motion to dismiss for improper venue, or in the alternative, to transfer this case to the District of Utah.

### III.  STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a complaint may be dismissed if it is brought in an improper venue. The plaintiff bears the burden of showing that venue is proper in the chosen district. Koresko v. Realnetworks, Inc., 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003); McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); American Homecare Fed'n v. Paragon Sci. Corp., 27 F. Supp. 2d 109, 112 (D.Conn. 1998).

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleadings need not be accepted as true and the court may consider supplemental written materials and consider facts outside of the pleadings in deciding a Rule 12(b)(3) motion. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1337 (9th Cir. 2004); Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1137 n. 2 (N.D. Cal. 2000). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. Murphy, 362 F.3d at 1138-1140. Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. Id. at 1139.

Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992); District No. 1 Pacific Coast District v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982); Citizens For A Better Environment v. Union Oil Co., 861 F. Supp. 889, 897 (N.D. Cal. 1994). In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on

4

the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. See Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 588 (9th Cir. 1992). "A determination of improper venue does not go to the merits of the case and therefore must be without prejudice." See In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802, 804 (9th Cir. 1991).

Whether a transfer or a dismissal is in the interest of justice rests within the discretion of the district court. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) (citing Cook v. Fox, 537 F.2d 370, 371 (9th Cir.1976)).

## IV.  DISCUSSION

### A.  Motion To Dismiss for Improper Venue

Defendant moves to dismiss on the ground that venue in the Northern District of California is improper because the events giving rise to the Plaintiff's Complaint occurred in Utah. (Motion at 1.)

In civil actions where jurisdiction is found solely on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a). This statutory provision provides in relevant parts:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Furthermore, a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

A defendant submits to the court's jurisdiction either by expressly consenting thereto or by failing to raise the defense of lack of jurisdiction in its initial motion or responsive pleading. Fed. R. Civ. P. 12(h)(1); Schnabel v. Lui, 302 F.3d 1023, 1033 (9th Cir. 2002). In this case, Defendant has failed to raise the defense of lack of personal jurisdiction in its motion to dismiss for improper

5

venue. Accordingly, Defendant is deemed to have waived this defense and thus, implicitly consents to the Court's jurisdiction.

In addition, for purposes of establishing personal jurisdiction in a misappropriation of trade secrets case, a corporation's principle place of business determines the location where corporate injury is felt as a result of the misappropriation. Portrait Displays, Inc. v. Speece, WL 1964506 (N.D. Cal. 2004); see Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1113-14 (9th Cir. 2002). A forum has a significant interest in protecting the intellectual property of its citizens and businesses from infringement by foreign defendants. Integral Development Corp. v. Weissenbach, 99 Cal. App. 4th 576 (Ct. App. 2002).

Here, Plaintiff's personnel created and maintained the List to aid Plaintiff's acquisition and integration of PowerQuest into its organization.[1] The List was developed by Plaintiff's personnel in the finance, human resources, business development, and IT departments, which are all based in Plaintiff's headquarters in Cupertino, California. (Opposition at 6.) The corporate injury is felt in California as a result of the alleged misappropriation. The enactment of the Uniform Trade Secrets Act in California indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets. Integral Development, 99 Cal. App. 4th at 592. Thus, since Plaintiff alleges harms committed against it by a foreign Defendant, California has an interest in adjudicating the matter.

In sum, the Court finds that venue is proper under both § 1391(a)(1) and (2). Accordingly, the Court DENIES Defendant's motion to dismiss for improper venue.

**B.     Motion to Transfer Pursuant to § 1404(a)**

In the alternative, Defendant moves to transfer the case to the District of Utah pursuant to 28 U.S.C. § 1404(a). (Motion at 3.)

Under 28 U.S.C. § 1404(a), a district court may transfer a case pending before it to "any other district or division where it might have been brought." A plaintiff's choice of forum, however,

---

[1] (Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the alternative, to Transfer the Action at 6, hereafter, "Opposition," Docket Item No. 20.)

6

is accorded substantial weight, and a court will not grant a motion under 1404(a) unless the defendant makes a strong showing of inconvenience. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The decision whether to grant a motion under § 1404(a) turns on the facts of the particular case. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Factors to be weighed in deciding such a motion include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contact relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state. Id. at 498-99.

The Court proceeds to consider whether these factors weigh in favor of transferring this case to the District of Utah.

**1.    Forum Selection Clause**

Defendant moves to transfer on the ground that there is a forum selection clause in the Agreements signed by principals of Defendant while they were employees of Plaintiff's predecessor-in-interest, PowerQuest. (Motion at 7; Declaration of Thomas Russell Shreeve in Support of Defendant's Motion to Transfer or, in the alternative, to Dismiss the Action, Ex. A ¶ 29, hereafter, "Shreeve Decl.," Docket Item No. 16.)

Under federal law, a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 14 (1972). However, while the existence of the forum selection clause is one factor in deciding a motion to dismiss or transfer for improper venue, it is not the only factor, nor is it dispositive. Jones, 211 F.3d at 498.

The first issue is whether Plaintiff is bound by the provisions of the Agreements. The Ninth Circuit has held that a forum selection clause could be applied to non-signatories to the contract where the alleged conduct of those non-parties is closely related to the contractual relationship. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 fn 5 (9th Cir. 1988). Here, in one of the Agreements, the text clearly provides that: "this agreement shall be binding upon and continue to benefit of the successors and assigns of PowerQuest. . . . " (Shreeve Decl., Ex. A ¶ 29.) Plaintiff acknowledges that it is the successor-in-interest to all rights and obligations of PowerQuest. (Complaint ¶ 19.) Since Plaintiff's misappropriation of trade secrets claim is derived from the Employees' alleged breach of their contractual obligations with PowerQuest and Plaintiff is PowerQuest's successor-in-interest, the Agreements signed by PowerQuest are also binding on Plaintiff.

The second issue is whether the forum selection clause is binding on both Employees and Plaintiff. Defendant contends that both the signatories to the contract as well as Plaintiff, as successor-in-interest to rights and obligations of that contract, are bound to the forum selection clause designating Utah as the exclusive venue for any litigation related to the Agreements. (Motion ¶ 7.) Plaintiff contends that while the explicit language of the Agreements restricts the former employees to litigating related disputes in Utah, the Agreements impose no such restriction on Plaintiff as PowerQuest's successor-in-interest. (Opposition at 7.) One of the Agreements provides in relevant parts:

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Utah, without giving effect to principles of conflicts of law. You consent to the personal jurisdiction of the state and federal courts located in the state of Utah for any litigation related to this Agreement and **agree that the exclusive venue for any such litigation shall be in such courts located in the state of Utah.**

(Shreeve Decl., Ex. A ¶ 29.) (emphasis added). Since the Agreements are mutual as to Employees and PowerQuest, both are bound to the forum selection clause.[2]

---

[2] (Compare Silverman v. Carvel Corp., 192 F. Supp. 2d 1, 5 (W.D. N.Y. 2001) (the court found that non-mutuality of forum selection clauses does not necessarily render it invalid. However, the agreement at issue named the venue specifically for when one party was the defendant, but not when the other party was the defendant.)

8

The final issue is whether this litigation is "related" to the Agreements and thus subject to the forum selection clause. Whether a forum selection clause in a contract applies to claims depends on whether resolution of the claims relates to interpretation of contract. Manetti-Farrow, 858 F.2d at 509. Here, the Agreements which Plaintiff bases its claim are the same Agreements that include the forum selection clause. (Motion at 7.) Thus, it follows that Plaintiff's claim that the Employees breached their confidentiality agreement by misappropriating trade secrets, is related to the interpretation of the Agreements.

In sum, the Court finds that Plaintiff has failed to show that enforcement of the forum selection clause would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. Accordingly, the existence of a valid forum selection clause weighs in favor of transferring the case to the District of Utah.

**2.     The First to File Rule and Plaintiff's Choice of Forum**

Defendant contends that the Plaintiff's choice of venue and the first-to-file rule should be disregarded in the interest of convenience of the parties and witnesses. (Motion at 5-6.)

The "first-to-file" rule is a well-established doctrine which allows a district court to give preference to the first-filed plaintiff's choice of forum when a complaint involving similar parties and issues has been filed in another district. Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991); Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 269 (C.D. Cal 1998). Three threshold issues should be considered when deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. Guthy-Renker, 179 F.R.D. at 270 (citing Alltrade, Inc. 946 F.2d at 625). While the rule should not be disregarded lightly, it is left to the discretion of the court whether to dispense of the rule on equitable grounds or convenience. Alltrade, Inc. 946 F.2d at 628. Exceptions to the first-to-file rule typically include bad faith, anticipatory suit, and forum shopping. Id.

Here, Plaintiff filed suit in this district on September 14, 2007. Defendant followed by filing a complaint against Plaintiff in United States District Court of Utah on November 5, 2007. In that

9

complaint, Defendant alleges claims for copyright infringement, breach of contract and violation of Utah Uniform Trade Secrets Act by Symantec Corporation. All of the claims in the Utah Action stem from the business relationship involving the original licensing agreement between the parties. (Declaration of H. Dickson Burton in Support of Defendant's Motion to Transfer or, in the Alternative, to Dismiss the Action, Ex. B ¶¶ 4, 29, hereafter, "Burton Decl.," Docket Item No. 26.)

While both the California and Utah actions involve the same parties, the Utah Action centers around the treatment of the source code licensed to Plaintiff by Defendant, Plaintiff's breach of that licensing contract, and subsequent copyright infringement and misappropriation of the code. The California action claims pertain to Defendant's alleged misappropriation of Plaintiff's Employee Data List and strategic planning regarding the integration of PowerQuest into Symantec.

The Court finds that the issues in the two cases are not similar. Defendant's contention that Plaintiff seeks to inconvenience Defendant by litigating the case in California is unsupported. Further, Defendant has proffered no evidence that Plaintiff engaged in bad faith, anticipatory suit, or forum shopping. Accordingly, Plaintiff's choice of forum and the first-to-file rule weigh in favor of denying Defendant's motion to transfer.

### 3. Ease of Access to Sources of Proof

Defendant contends that sources of proof, including a majority of witnesses and documents, are more easily accessible in Utah. (Motion at 5.)

With respect to documents, Plaintiff contends that the documents are maintained in the custody of Plaintiff's personnel in California.[3] While the original documents are maintained in California, the documents in question were transferred between current StorageCraft employees in Utah and proof of their existence and content is located there. Even considering that the List is maintained in California, electronic copies of the documents are available and could be accessible in Utah as easily as California. Plaintiff concedes that documents pertaining to this case can be provided through electronic production. (Opposition at 13.)

---

[3] (Declaration of Kerre Slayton in Support of Symantec Corporation's Opposition to Motion to Dismiss or, in the Alternative, to Transfer ¶ 9, hereafter, "Slayton Decl.," Docket Item No. 21.)

10

With respect to potential witnesses, Defendant has submitted a list of potential witnesses which is composed of former employees of PowerQuest who currently live in Utah, including Brandon Nordquist, Michael Kunz, and Thomas J. Shreeve, among others. These individuals represent the leadership of StorageCraft and are key to proving allegations that Defendant misappropriated Plaintiff's trade secrets. All except one of these witnesses are believed to currently reside in Utah. (See Second Declaration of Thomas Russell Shreeve in Support of Defendant's Motion to Transfer or, in the Alternative, to Dismiss the Action, hereafter, "2nd Shreeve Decl.," Docket Item No. 27.) Plaintiff contends this is merely a speculative list of witnesses. (Opposition at 14.) However, it is undisputed that some of these witnesses were specifically named in the Complaint. In addition, Plaintiff continues to employ former PowerQuest employees that may be called as witnesses who still work in Utah. (Motion at 2.) In contrast, Plaintiff has identified one potential witness, Kerre Slayton, a Senior Director in Plaintiff's Human Resources Group who handles mergers and acquisitions.

Further, it is undisputed that Defendant has a small management team and less than 10 employees. (2nd Shreeve Decl. ¶¶ 10-11.) Requiring even one or two employees of Defendant to travel to California would create severe hardship for Defendant. (Shreeve Decl. ¶ 9.) In contrast, Plaintiff is a multi-national corporation with offices throughout the United States with over 2,500 employees in the Bay Area alone. (Slayton Decl. ¶ 2.)

Accordingly, the Court finds that easier access to sources of proof, including relevant documents and witnesses, weighs in favor of transferring the case to the District of Utah.

**4.      The respective parties' contacts with the forum**

Plaintiff contends that Defendant's strategic partnerships with companies which reside in this forum, including Hewlett-Packard, VMWare, and Seagate, support California as a venue. (Declaration of Paul S. Grewal in Support of Plaintiff Symantec Corporation's Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Transfer the Action, Ex. D, hereafter, "Grewal Decl.," Docket Item No. 20.) However, Defendant has no further business activity with Hewitt-Packard or Seagate. (2nd Shreeve Decl. ¶ 6.) Both the Hewitt-Packard and Seagate

11

1 partnerships were remnants from Defendant's predecessor-in-interest, StorageCraft Inc. (Id.)
2 Defendant has only made two visits to California since working with VMWare. (Id.) Defendant
3 does not maintain nor has ever had a place of business in California or otherwise have employees or
4 agents in California. (Id.) In contrast, Plaintiff still operates a significant portion of the acquired
5 PowerQuest business in Utah. (See transcript of February 4 hearing; see also Shreeve Decl. ¶¶ 4-5.)
6 The Court finds this factor weighs in favor of transferring the case to the District of Utah.

### 5. Availability of Compulsory Process to Compel Attendance

Availability of a compulsory process to compel attendance of unwilling non-party witnesses is a factor that must be weighed when considering a motion to transfer a case due to inconvenience of the parties. Federal courts have the ability to subpoena non-party witnesses and compel them to testify or provide discovery. Fed. R. Civ. P. 45. However, the court by which a subpoena was issued shall quash or modify the subpoena if it requires a non-party witness to travel to a place over one-hundred miles from their place of residence or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(ii), (iv). In the case of a witness living over one-hundred miles away, the deposition of a witness may be used in lieu of personal testimony. Fed. R. Civ. P. 32(a)(3)(B).

Here, litigating the case in Utah would eliminate the need to modify subpoenas since there is a likelihood that the majority of witnesses will be within 100 miles of the court. If the case were to be litigated in California, the potential for the use of depositions instead of testimony would deprive parties of further examination and deprive the fact-finder of personal observance of the witnesses. Thus, the Utah district court's ability to provide in-person testimony at a lower expense weighs in favor Defendant's motion to transfer by limiting litigation costs.

In sum and on balance, weighing the above factors favors transferring the case to the District of Utah.

12

## V. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss and GRANTS Defendant's Motion to Transfer the Action to the District of Utah pursuant to 28 U.S.C. § 1404.

The Clerk shall transfer this case to the District of Utah and close this file.

Dated:  February 22, 2008

JAMES WARE
United States District Judge

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Dickson H Burton hdburton@traskbritt.com
Edgar R. Cataxinos ercataxinos@traskbritt.com
3  Kimberly Ann Donovan kdonovan@gcalaw.com
Paul Singh Grewal pgrewal@daycasebeer.com
4  William Patrick Nelson wnelson@daycasebeer.com

**Dated: February 22, 2008**                    **Richard W. Wieking, Clerk**

                                                **By:   /s/ JW Chambers**
                                                        **Elizabeth Garcia**
                                                        **Courtroom Deputy**

**United States District Court**
For the Northern District of California